**E-FILED on**   6/8/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVE TRACHSEL et al., <br><br> Plaintiffs, <br><br> v. <br><br> RONALD BUCHHOLZ et al., <br><br> Defendants. | No. C-08-02248 RMW <br><br> ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER <br><br> **[Re Docket No. 22]** |

On June 3, 2008, plaintiffs, three individuals and three fictitious entities, filed (1) a notice of *ex parte* application for temporary restraining order ("TRO Application") and (2) an application for a right to attach order and an order for issuance of writ of attachment after hearing ("Attachment Application"). The Attachment Application was filed with notice to defendants pursuant to N.D. Cal. L.R. 7-3(b); the TRO Application was not.[1] Defendants Solomon Towers, Ronald Buchholz, Charice Fischer, RDB Development, LLC received a copy of the TRO Application on June 4, 2008 and submitted an opposition on June 5, 2008.

---

[1] The case was originally assigned to Magistrate Judge Seeborg, however, because not all parties have been served and provided consent to proceed before a magistrate judge, the case was reassigned to the undersigned upon the filing of plaintiffs' TRO and Attachment Applications.

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER—No. C-08-02248 RMW
MAG

In their TRO Application, plaintiffs ask that the court, without notice to all parties under Fed. R. Civ. P. 65(b), to (1) enjoin defendants' continued expenditure of Solomon Towers, LLC funds; (2) prevent the alteration or destruction of evidence; and (3) prevent the use of Solomon Towers, LLC funds or other investor funds for the defense of this action. As set forth above, all defendants have now had notice of plaintiffs' TRO Application. For the reasons set forth below, the court denies plaintiffs' TRO Application.

## I. BACKGROUND

Plaintiffs are investors in an investment opportunity offered by Solomon Capital, Solomon Towers, LLC, a high-rise condominium investment ("Solomon Towers project"). Defendant Ronald Buchholz is allegedly the president of Solomon Capital and defendant Charice Fischer is its CFO.

Plaintiffs allege that in February 2005, the Solomon Towers project was presented to them as an investment opportunity. Compl. ¶ 44. As part of the Solomon Towers project, defendants were to purchase land in downtown Phoenix, Arizona using investors' funds, then develop the land into upscale condominiums, with investors eventually receiving return on the sale of the condominiums. Decl. Steve Trachsel Supp. TRO Application ("Trachsel Decl.") ¶ 3. The presentation given to investors was a PowerPoint presentation and was accompanied by "pro forma" financial statements. Compl. ¶¶ 44-45. Investors were allegedly not provided with a private placement memorandum at the presentation or thereafter. *See, e.g.*, Trachsel Decl. ¶ 3. In March 2005, plaintiffs and other investors executed an Operating Agreement with Solomon Towers, LLC. The Operating Agreement includes 18 initial members who contributed a total of $4,169,400.00.[2] *Id.* ¶ 47, Ex. C. Together with loans set forth in the Operating Agreement, the total investment by investors in the Solomon Towers project is allegedly $5,100,000.

In July 2002, a company owned by defendant Donald Zeleznak purchased property at 625-643 N. 2nd Avenue, Phoenix, Arizona ("the Property") for $14.00 per square foot. Trachsel Decl. ¶ 4. In April 2005, defendants Zeleznak and Vento sold the Property to Solomon Towers at $178.75 per square foot. *Id.* Defendants Buchholz and Fischer paid for the Property using the investment

---

[2] Based on the Operating Agreement, plaintiff Sun City Towers contributed $200,000, plaintiff Cirrito Holdings contributed $150,000 and plaintiff Atocha Land contributed $650,000. Trachsel Decl., Ex. A.

funds contributed by investors. *Id.* Zeleznak allegedly received a commission of $1,000,000 for the sale. *Id.* According to plaintiffs, the actual market rate for comparable land was $33.19 per square foot and Zeleznak's commission of approximately 20% of the sale price was well above the prevailing commission rate of 5-6%. *Id.*

To date the Solomon Towers project has not been built and plaintiffs allege that the financial statements disseminated by Solomon Capital, Buchholz and Fischer on February 29, 2008 indicate that the project is in severe financial distress and overleveraged in an amount in excess of $2,400,000. *Id.* ¶ 5. Plaintiffs allege that defendants have not applied the investment funds toward the development of the Property but have instead divided the investment funds among themselves and left the investors holding the overleveraged property. They refer to this as a "pump and dump" scheme. Plaintiffs claim to have learned of defendants' fraudulent scheme after July 2007, when authorities raided Solomon Capital's San Jose offices due to allegations of fraudulent investment schemes. *Id.* ¶ 6.

On April 30, 2008, plaintiffs filed a complaint against numerous individuals and companies involved in Solomon Capital, Inc., and the transactions surrounding the Solomon Towers project for RICO violations, federal securities violations, breach of fiduciary duty, breach of contract, negligent and intentional misrepresentation, conspiracy, fraud and violation of Cal. Bus & Prof. Code § 17200. Plaintiffs also seek damages and rescission of sale under California securities laws, specifically Cal. Corp. Code §§ 25102, 25110, 25501, 25503, 25401, and 25504.

## II. ANALYSIS

Under Fed. R. Civ. P. 65(b), plaintiffs must make a showing that immediate and irreparable injury, loss or damage will result to plaintiff if the order is not issued to support their motion for a temporary restraining order. Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order."). The standard for obtaining *ex parte* relief under Rule 65 is very stringent. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006).

The Ninth Circuit has set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* "They are not separate tests but rather outer reaches of a single continuum." *Id.*

**B.      Likelihood of Success on the Merits**

For purposes of obtaining a temporary restraining order, plaintiffs assert that their claim for rescission of their investment contracts under the California Corporations Code is likely to succeed on the merits. Under Cal. Corp. Code § 25019 the definition of "security" includes an "investment contract." It certainly appears that the investment in the condominium project described in this action involves a security under California law. *See People v. Coster*, 151 Cal. App. 3d 1188, 1193 (1984) ("For the purpose of both the federal and the California securities law, an investment contract means a contract or transaction whereby a person invests money in a common enterprise with the expectation of deriving a profit solely from the efforts of a promoter or a third person.").

Cal. Corp. Code § 25110 makes it illegal to offer or sell an unqualified security in the state unless the security is exempt. Plaintiffs, relying on Steve Trachsel's declaration, assert conclusorily that defendants neither qualified nor exempted themselves in accordance with these securities. Trachsel Decl. ¶ 3 ("Further, as I subsequently learned, Defendants neither qualified nor exempted themselves to be issuers or broker-dealers of securities in accordance with the requirements of California Corporations Code section 25510.").[3] In a reply declaration, plaintiffs present evidence that they have conducted searches to determine whether defendants Bucholz, Fischer, RDB

---

[3] Defendants further object to this statement in Trachsel's declaration as hearsay, lacking foundation (because it does not explain how Trachsel came to this knowledge), failing to display personal knowledge and stating a legal conclusion.

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER—No. C-08-02248 RMW
MAG                                                     4

Development and Solomon Capital were qualified to sell securities. Their searches at the SEC and California Department of Corporations website returned no results. *See* Decl. Jesshill Love Supp. Plfs' Reply ¶ 4, Ex. A. However, plaintiffs present no concrete information regarding whether defendants' sale of the security was exempt. *See also* Compl. ¶ 50 ("Based on information and belief, [defendants] have neither qualified for nor exempted themselves from qualification of the 'securities' in accordance with California Corporations Code § 25110."). Although plaintiffs' allegations raise serious questions, the court does not have sufficient information based on plaintiffs' sparse allegations on "information and belief" about the sale of the investment contracts to conclude that plaintiffs' have a strong likelihood of success on the merits.

### C.  Irreparable Harm

In support of their motion for an *ex parte* temporary restraining order, plaintiffs state only that they are seeking to enjoin defendants' alleged "continued expenditure of fraudulently obtained investor funds." TRO Application at 6. They assert that the requested temporary restraining order may be granted *ex parte* because they were allegedly deprived of investment funds in the amount of $5,100,000 and that defendants are now on notice of a lawsuit and "based on their prior dishonest business dealings and concealment of funds" are thus inclined to "spend conceal or disperse the investment funds to frustrate Plaintiffs' legal efforts." *Id.* at 7; Trachsel Decl. ¶ 9. This is insufficient to establish the requisite great and irreparable injury for the grant of an *ex parte* restraining order. It is also insufficient to raise a possibility of irreparable injury sufficient to tip the balance of harms in plaintiffs' favor given the court's conclusion regarding plaintiffs' likelihood of success on the merits of their rescission claim as discussed above.

Although the facts as pleaded certainly do not paint defendants in a favorable light, plaintiffs have failed to show any imminent additional injury sufficient to warrant the grant of the requested temporary restraining order. This is particularly true in light of plaintiffs' submission of the Trachsel declaration stating that plaintiffs have known about "defendants' fraudulent enterprise" since July 2007, but did not act to file a complaint until April 30, 2008. Further, as pointed out by defendants, Trachsel's Declaration is dated April 30, 2008. There is no explanation for the 5 week delay in filing the TRO Application. Finally, the facts asserted do not show the threat of further dissipation of

1 funds or that any evidence is being destroyed. On the facts before it, the court does not find a
2 sufficient showing of irreparable injury and therefore declines to issue the requested temporary
3 restraining order.

### III.  ORDER

5 Plaintiffs' application for a temporary restraining order is denied without prejudice. Plaintiffs
6 may refile an application that demonstrates a need for immediate temporary relief pending the
7 hearing on their application for a right to attach order. The parties should note that due to the
8 reassignment of the case, the hearing on plaintiffs' Attachment Application shall be renoticed from
9 July 9, 2008 on Judge Seeborg's calendar to July 18, 2008 at 9:00 in courtroom 6 before the
10 undersigned.

13 DATED:     6/6/08

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Jesshill E. Love         jlove@ropers.com
Todd Andrew Roberts      troberts@ropers.com

**Counsel for Defendants:**

Michael George Descalso   mgd@greenechauvel.com
William W. Schofield      wschofield@pinnaclelawgroup.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     6/8/08                         /s/ MAG
                                       **Chambers of Judge Whyte**