DION N. COMINOS  (SBN: 136522)
MEAGEN E. LEARY  (SBN: 233103)
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054

Attorneys for Defendant
KELLER WILLIAMS REALTY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE TRACHSEL, an individual, SUN CITY
TOWERS, LLC, a California corporation, THOMAS
CIRRITO, and individual, ATOCHA LAND, LLC,
a Delaware limited liability company, MICHAEL
CIRRITO, and individual, and CIRRITO
HOLDINGS, LLC, a Delaware limited liability
company,

     Plaintiffs,

  vs.

RONALD BUCHHOLZ, CHARICE FISCHER,
RDB DEVELOPMENT, LLC, a Nevada limited
liability company, SOLOMON CAPITAL, LLC, a
Nevada limited liability company, JONATHON
VENTO, GRACE CAPITAL, LLC, dba GRACE
COMMUNITIES, an Arizona limited liability
company, DONALD ZELEZNAK, Z-LOFT, LLC,
an Arizona limited liability company, ZELEZNAK
PROPERTY MANAGEMENT, LLC dba KELLER
WILLIAMS REALTY, INC., a Texas corporation,
and DOES 1-50,  inclusive,

     Defendants.

CASE NO. C08 2248

**NOTICE OF MOTION AND
MOTION TO DISMISS COUNTS 3,
4, 5, 6, 11, 16 AND 18 OF
PLAINTIFFS' COMPLAINT
[Fed. R. Civ. Pro. 12(b)(6)]**

Hearing Date: September 5, 2008
Time:   9:00 A.M.
Location:  Courtroom 6
Judge:   Hon. Ronald Whyte

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:

  NOTICE IS HEREBY GIVEN that Defendant KELLER WILLIAMS REALTY, INC. ,

through its attorneys of record herein, will on the date referenced above, before this Court, move

the Court for an order dismissing Plaintiffs' Complaint as to KELLER WILLIAMS REALTY,

INC.

　　Said Motion will be made on the grounds that claims for relief as against KELLER WILLIAMS REALTY, INC. are fatally deficient on their face, fail to sufficiently plead claims for relief against KELLER WILLIAMS REALTY, INC., and Counts 4 and 5 as stated are time-barred.

　　This Motion is based upon this notice, the attached Declaration of Meagen E. Leary, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, and upon the complete files, records and papers on file in this matter, and on such other oral and documentary evidence as may be presented at the hearing of this motion.

GORDON & REES LLP

Dated: July 30, 2008                  By: _____
                                            DION N. COMINOS
                                            MEAGEN E. LEARY
                                            Attorneys for Defendant KELLER
                                            WILLIAMS REALTY, INC.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  :  Steve Trachsel, et al. v. Ronald Buchholz, et al.
2     United States District Court Northern District of California, San Jose Division
      Case No. No. C08 02248

3                              **PROOF OF SERVICE**

4          I am a citizen of the United States.  My business address is 275 Battery Street, San
   Francisco, CA    94111.  I am employed in the City and County of San Francisco where this
5  service occurs.  I am over the age of 18 years and not a party to the within action.

6          On July 30, 2008, following ordinary business practice, I served a true copy of the
   foregoing document(s) described as:
7
8          **NOTICE OF MOTION AND MOTION TO DISMISS COUNTS 3, 4, 5, 6, 11, 16 AND 18 OF
           PLAINTIFFS' COMPLAINT [Fed. R. Civ. Pro. 12(b)(6)]**

9  **X**   **BY (CM/ECF) ELECTRONIC CASE FILE SYSTEM**: with the United States
          District Court, Northern District, to all parties listed on the court's proof of electronic
10         service.

11  ☐     **BY FACSIMILE**:  by transmitting by facsimile to the number(s) listed above to the
          fax number(s) set forth below, or as stated on the attached service list, on this date
12         before 5:00 p.m.

13  ☐     **PERSONAL SERVICE**:  I caused such envelope(s) to be delivered by hand this date
          to  the offices of the addressee(s).

14  ☐     **MAIL**: I caused such envelope(s) with postage thereon fully prepaid to be placed in
          the United States mail at Sacramento, California to the offices of the addressee(s)
15         listed   below:

16  ☐     **OVERNIGHT DELIVERY**: I caused such envelope(s) to be delivered to an
          overnight delivery carrier with delivery fees provided for, addressed to the person(s)
17         on whom it is to be served.

18
          I declare under penalty of perjury under the laws of the State of California that the
19  foregoing is true and correct.

20         Executed on July 30, 2008 at San Francisco, California.

21

22         _____
                          Sandra Sarmiento

23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

KWRI/1051542/5802734v.1

1  DION N. COMINOS  (SBN: 136522)
   MEAGEN E. LEARY  (SBN: 233103)
2  GORDON & REES LLP
   Embarcadero Center West
3  275 Battery Street, Suite 2000
   San Francisco, CA  94111
4  Telephone:  (415) 986-5900
   Facsimile:  (415) 986-8054
5
   Attorneys for Defendant
6  KELLER WILLIAMS REALTY, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  STEVE TRACHSEL, an individual, SUN CITY      )  CASE NO. C08 2248
    TOWERS, LLC, a California corporation, THOMAS )
12  CIRRITO, and individual, ATOCHA LAND, LLC,   )  **DEFENDANT KELLER WILLIAMS**
    a Delaware limited liability company, MICHAEL )  **REALTY, INC.'S MEMORANDUM**
13  CIRRITO, and individual, and CIRRITO         )  **OF POINTS AND AUTHORITIES**
    HOLDINGS, LLC, a Delaware limited liability   )  **IN SUPPORT OF MOTION TO**
14  company,                                     )  **DISMISS COUNTS 3, 4, 5, 6, 11, 16**
                                                 )  **AND 18 OF PLAINTIFFS'**
15                     Plaintiffs,               )  **COMPLAINT**
                                                 )  **[Fed. R. Civ. Pro. 12(b)(6)]**
16        vs.                                    )
                                                 )
17  RONALD BUCHHOLZ, CHARICE FISCHER,            )
    RDB DEVELOPMENT, LLC, a Nevada limited        )
18  liability company, SOLOMON CAPITAL, LLC, a    )  Hearing Date: September 5, 2008
    Nevada limited liability company, JONATHON    )  Time:          9:00 A.M.
19  VENTO, GRACE CAPITAL, LLC, dba GRACE          )  Location:      Courtroom 6
    COMMUNITIES, an Arizona limited liability     )  Judge:         Hon. Ronald Whyte
20  company, DONALD ZELEZNAK, Z-LOFT, LLC,        )
    an Arizona limited liability company, ZELEZNAK )
21  PROPERTY MANAGEMENT, LLC dba KELLER           )
    WILLIAMS REALTY, INC., a Texas corporation,   )
22  and DOES 1-50,  inclusive,                   )
                                                 )
23                     Defendants.               )
                                                 )
24

25

26

27

28

## Table of Contents

Page

I. INTRODUCTION ...................................................................................................1

II. FACTUAL & PROCEDURAL HISTORY ...........................................................1

III. RULE 12(b)(6) STANDARDS..............................................................................3

IV. ARGUMENT ........................................................................................................5

A. Plaintiffs' Complaint is Fatally Deficient as to KWRI ............................5

B. Plaintiffs' RICO Count Is Improperly Pled (Count 3)..............................6

    1. Plaintiffs Have Not Adequately Pled the Necessary Elements of a RICO Predicate Act ......................................................................7

    2. Plaintiffs Have Not Properly Pled a RICO "Enterprise" .............8

    3. Plaintiffs Have Not Pled a Pattern of Racketeering Activity.......9

    4. Plaintiffs Have Not Sufficiently Pled Damages.........................10

C. Plaintiffs' Claims for Violation of the 1933 and 1934 Acts are Barred by Statute of Limitations (Counts 3 and 4)...............................................11

D. Plaintiffs Fail to Sufficiently Plead Violation of 1934 Act (Count 4)...................12

E. Plaintiffs Fail to Sufficiently Plead Violation of 1933 Act (Count 5) ..................14

F. Plaintiffs Fail to State a Claim under Business & Professions Code section 17200 (Count 6) ...................................................................................15

G. Plaintiffs' Fail to State a Cause of Action for Conspiracy (Count 11) .................16

H. Plaintiffs Have Failed to State Claims for Joint and Several Liability Pursuant to California Corporations Code Sections 25501, 25401, 25504, 25503, 25102(F) and 25110 (Counts 16 and 18)...................................................16

V. CONCLUSION....................................................................................................18

Table of Authorities

Page

**Cases**

*Anza v. Ideal Steel Supply Corp.,*
126 S.Ct. 1991 (2006)..................................................................................... 11

*Balistreri v. Pacifica Police Dep't.,*
901 F.2d 696 (9th Cir. 1990) ............................................................................ 3

*Barron v. Reich,*
13 F.3d 1370 (9th Cir. 1994) ............................................................................ 3

*Cislaw v. Southland Corp.*
4 Cal.App. 4th 1284 (1992) .............................................................................. 5

*Clegg v. Cult Awareness Network,*
18 F.3d 752 (9th Cir. 1994) .............................................................................. 3

*Com-Tech Assocs. v. Computer Assocs. Int'l,*
753 F. Supp. 1078 (E.D.N.Y. 1990) ................................................................ 7

*Dakis on behalf of Dakis Pension Plan v. Chapman*
574 F. Supp. 757 (1983) ................................................................................... 6

*Decker v. Massey-Ferguson, Ltd.,*
681 F.2d 111 (C.A.N.Y.1982) ........................................................................ 13

*Del Campo v. Kennedy,*
491 F.Supp.2d 891 (N.D. Cal. 2006) .............................................................. 16

*Employers Ins. of Wausau v. Musick, Peeler & Garrett,*
871 F.Supp.381 (S.D. Cal.1994)...................................................................... 17

*Epstein v. Itron, Inc.,*
993 F. Supp. 1314 (E.D. Wash. 1998) ............................................................ 13

*Finkel v. Stratton Corp.,*
962 F.2d 169 (2d Cir. 1992) ............................................................................ 12

*Flores v. Emerich & Fike,*
416 F.Supp.2d 885 (E.D.Cal. 2006) ................................................................. 4

*Furman v. Cirrito*
828 F.2d 898 (2d. Cir. 1987) ............................................................................ 8

*Gilligan v. Jamco Dev. Corp.,*
108 F.3d 246 (9th Cir. 1997) ............................................................................ 3

*Gottreich v. San Francisco,*
552 F.2d 866 (9th Cir. 1977) ............................................................................ 5

ii

Table of Authorities
(continued)

Page

*H.J. Inc. v. Northwestern Telephone* Co.,
  492 U.S. 229 (1989)............................................................................................9, 10

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984)..................................................................................................3

*Howard v. America Online, Inc.,*
  208 F.3d 741 (4th Cir. 2000) ................................................................................4

*In re Activision Securities Litigation,*
  621 F.Supp.415 (N.D.Cal. 1985) ........................................................................18

*In re Aetna Inc. Securities Litigation,*
  34 F. Supp. 2d 935 (E.D. Pa. 1999) ....................................................................13

*In re Diasonics Securities Litigation,*
  599 F.Supp. 447 (N.D. Cal. 1984) ......................................................................17

*In re GlenFed, Inc. Securities Litig.,*
  42 F.3d 1541 (9th Cir. 1994) ................................................................................4

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.,*
  32 F.3d 697, (2d Cir. 1994) ................................................................................12

*Jennings v. Emry,*
  910 F.2d 1434 (7th Cir. 1990) ..............................................................................4

*Jones v. Nat'l. Commun. and Surveillance Networks,*
  409 F.Supp.2d 456 (S.D.N.Y. 2006) ....................................................................4

*Kahn v. Kohlberg, Kravis, Roberts & Co.,*
  970 F.2d 1030 (2d Cir. 1992) ..............................................................................12

*Kaplan v. Coldwell Banker Residential*
  59 Cal.App.4th 741 (1997) ....................................................................................6

*May v. U.S. Chamber of Commerce*
  1996 WL 116829 ....................................................................................................7

*Moore v. Kayport Package Express, Inc.,*
  885 F.2d 531 (9th Cir. 1989) ................................................................................5

*Morse v. Lower Merion School Dist.,*
  132 F.3d 902 (3d Cir. 1997) ..................................................................................4

*North Star Int'l v. Arizona Corp. Comm'n,*
  720 F.2d 578 (9th Cir. 1983) ................................................................................4

*Orloff v. Metropolitan Trust Co.,*
  17 Cal.2d 383 (1941) ............................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table of Authorities
(continued)

Page

*Pinter v. Dahl*
    486 U.S. 622 (1988)...........................................................................................................15

*Rae v. Union Bank,*
    725 F.2d 478 (9th Cir. 1984) ...............................................................................................9

*Richards v. Harper,*
    864 F.2d 85 (9th Cir. 1988)..................................................................................................4

*Santa Fe Industries v. Green*
    430 U.S. 462 (1977)............................................................................................................13

*Schlaifer Nance & Co. v. Estate of Andy Warhol,*
    119 F.3d 91 (2d Cir.1997) ..................................................................................................10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,*
    806 F.2d 1393 (9th Cir. 1986) .............................................................................................4

*Schrieber Dist. Co. v. Serve-Well Furniture,*
    806 F.2d 1393 (9th Cir. 1998) .............................................................................................9

*Sedima S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985)..........................................................................................................7, 9

*Sever v. Alaska Pulp Corp.,*
    978 F.2d 1529 (9th Cir. 1992) .............................................................................................9

*Sheldon v. Vermonty,*
    31 F. Supp. 2d 1287 (D. Kan. 1998)..................................................................................13

*Smegen v. Weidner,*
    780 F.2d 727 (9th Cir. 1985) ...............................................................................................5

*Starfish Investment Co. v. Hansen,*
    370 F.Supp.2d 759 (N.D.Ill. 2005) ......................................................................................4

*Stone v. Baum,*
    409 F.Supp.2d 1164 (D.Ariz. 2005) .....................................................................................4

*Summer v. Land & Leisure, Inc.,*
    664 F.2d 965 (5th Cir.1981) ...............................................................................................12

*Thrailkill v. Champion Ford, Inc.*
    776 F. Supp. 1486 (D.N.M 1991) .........................................................................................6

*Toombs v. Leone*
    777 F.2d 465 (9th Cir. 1985) .............................................................................................12

*Uni\*quality, Inc. v. Infotronx,*
    974 F.2d 918 (7th Cir.1992) .............................................................................................10

iv

Table of Authorities
(continued)

Page

1   *United Centrifugal Pumps v. Schotz,*
      1991 WL 274232 *4 (N.D. Cal.) ................................................................. 6
2
    *United States v. Turkette*
3     452 U.S. 576 (1981)................................................................................... 9

4   *Unruh v. Truck Insurance Exchange*
      7 Cal.3d 616 (1972) ................................................................................. 16
5
    *Vess v. Ciba-Geigy Corp.,*
6     317 F.3d 1097 (9ᵗʰ Cir. 2003) ............................................................ 15, 16

7   *Vietnam Veterans of Am., Inc. v. Guerdon Indust.,*
      644 F. Supp. 951 (D. Del. 1986)................................................................ 7
8
    *Wagh v. Metris Direct,*
9     348 F.3d 1102 (9ᵗʰ Cir. (Cal.) 1993) ......................................................... 7

10  *Western Mining Counsel v. Watt,*
      643 F.2d 618 (9th Cir. 1981) .................................................................... 3
11
    *Wool v. Tandem Computers Inc.*
12    818 F.2d 1433 (9th Cir.1987) .................................................................... 5

13  **Statutes**

14  15 U.S.C. § 77................................................................................... 11, 12

15  15 U.S.C.. § 78j................................................................................. 12, 13

16  17 C.F.R. § 240.10b-5............................................................................ 13

17  18 U.S.C. § 1962(c) ............................................................................... 7

18  18 U.S.C. § 1964(c) ............................................................................. 10

19  8 U.S.C. § 1961(5) ................................................................................ 9

20  Business & Professions Code
      section 17200 ................................................................................. 15, 16
21
    **Other Authorities**
22
    *11 Causes of Action 2d 1, Cause of Action for Securities Fraud under Section 12(2) of the*
23    *1933 Securities Act,* § 4 (2008)............................................................15

24  *9 Causes of Action 2d 271, Cause of Action for Securities Fraud Under Section 10(b) of*
      *the 1934 Securities Exchange Act and/or Rule 10B-5,* § 4 (2008) .......................... 13
25
    ABA Task Force Report, Report of the ABA Ad Hoc Civil RICO Task Force (March 28,
26    1985 ..............................................................................................6

27

28

v

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## I.    INTRODUCTION

Plaintiffs' claims against defendant KELLER WILLIAMS REALTY, INC. ("KWRI") must be dismissed with prejudice as they fail to constitute a valid basis for a legal action against this entity.  Although Plaintiffs assert numerous allegations and plead a number of different legal theories (including RICO and securities fraud claims), they fail to specify any allegedly wrongful conduct on the part of KWRI which would give rise to an actionable claim for relief.  Further, all of Plaintiffs' claims for relief suffer from fatal pleading deficiencies.  Accordingly, a dismissal without leave to amend is warranted.

KWRI is a Texas-based real estate company with more than six hundred offices located across the United States and Canada.  Despite the fact that KWRI is not alleged to have an agency relationship with any of the parties currently named in the lawsuit, Plaintiffs attempt to link KWRI to the allegedly wrongful conduct by asserting the unsubstantiated allegation that KWRI is somehow  vicariously liable for the acts of the other defendants.  Standing alone, this lone conclusory allegation is woefully insufficient to state a proper claim for relief against KWRI, even at the pleadings stage.  Since Plaintiffs have failed to state any legally cognizable claims for relief against KWRI, their Complaint should be dismissed with prejudice as to this entity.

## II.    FACTUAL & PROCEDURAL HISTORY

Plaintiffs filed their Complaint on or about April 30, 2008.  The Complaint was served upon KWRI on or about May 6, 2008.  Plaintiffs' Complaint alleges eighteen causes of action against thirteen different defendants. (Request for Judicial Notice ("RJN"), Exhibit A.)  As against KWRI, Plaintiffs allege the following counts:

- Count 3 for Violation of Section 1962(d) of the RICO Act
- Count 4 for Violation of Section 10B and Rule 10B-5 of the 1934 Act
- Count 5 for Violation of Section 12(a) of the 1933 Act
- Count 6 for Violation of California Business & Professions Code Section 17200, et seq.
- Count 11 for Conspiracy
- Count 16 for Joint and Several Liability of Management Principals and Materially Aiding

-1-

1    Personnel Pursuant to California Corporations Code sections 25501, 25401 and 25504

2    •   Count 18 for Joint and Several Liability of Management Principals and Materially Aiding

3    Personnel Pursuant to California Corporations Code section 25503, 25102(f) and 25510.

4    Defendants Jonathan Vento, Grace Capital LLC dba Grace Capital, LLC, Donald

5 Zeleznak, Z-Loft, and Zeleznak Property Management LLC dba Keller Williams Realty, an

6 Arizona limited liability company have also filed a Motion to Dismiss, highlighting the myriad

7 deficiencies in Plaintiffs' Complaint which is set for hearing on August 8, 2008.[1]

8    Plaintiffs allegedly invested a real estate development called the Solomon Towers

9 project, located in Arizona (hereinafter "project."). The investments for the project were made

10 through defendant Solomon Capital, LLC, an investment firm. According to the Complaint,

11 defendants Ronald Buchholz, Charice Fischer and RDB Development, LLC all worked with or

12 for Solomon Capital in connection with obtaining investment capital from Plaintiffs (collectively

13 the "Solomon Capital defendants"). Request for Judicial Notice ("RJN"), Exhibit A, ¶¶ 31-43. In

14 February 2005, the Solomon Capital defendants allegedly gave a presentation to Plaintiffs

15 regarding the project, wherein they represented that the project constituted a viable investment

16 opportunity. *Id.* at ¶ 46. In March 2005, Plaintiffs allegedly entered into an Operating

17 Agreement whereby they agreed to invest funds with Solomon Towers, LLC for the project. *Id.*

18 at ¶ 47. The project is now reportedly in financial distress and Plaintiffs allege that the Solomon

19 Capital defendants misrepresented the investment opportunity, to Plaintiffs' detriment. *Id.* at

20 ¶75.

21    In April 2005, Solomon Towers, LLC purchased property for the project from defendant

22 Z-Loft, LLC. Z-Loft LLC is apparently owned and managed by defendant Donald Zeleznak. Z-

23 Loft, formerly known as Soho Lofts, LLC, had allegedly purchased the subject property in July

24 2002. Exhibit A, ¶¶ 55, 56. According to the Complaint, Z-Loft sold the property for a

25 significant amount more than what it had paid three years prior, and realized a sizeable profit.

26

27  [1] KWRI attempted to meet and confer with Plaintiffs' counsel regarding the Complaints' failure to properly allege claims for relief against KWRI. Declaration of Meagen E. Leary ("Decl. of MEL"), ¶¶ 2-4, Exhibits 1,3. However

28 Plaintiffs' counsel has refused to amend its pleadings or dismiss KWRI, leaving KWRI no choice but to file the instant motion. Id., Exhibit 2.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    *Id.* at ¶¶ 55-57. ZPM and Zeleznak are alleged to have acted as both the real estate agent and the

2    broker in connection with the April 2005 sale. Due to the increased property price and the large

3    commissions received by ZPM and Zeleznak, the Complaint labels the sale of the property as a

4    "pump and dump" transaction and/or a "wash sale." *Id.* at ¶¶ 59, 78. Aside from Mr. Zeleznak's

5    alleged involvement with the Solomon Towers presentation, it is not clear from the Complaint

6    how the Solomon Capital defendants had any other involvement with the Z-Loft, ZPM, or Grace

7    Capital defendants prior to the sale of the Solomon Towers property in April 2005. However,

8    Plaintiffs allege that defendants Buchholz, Fischer and Solomon Capital "shared in the ill-gotten

9    gains from the 'pump and dump' transaction to the detriment of the Plaintiff investors." Exhibit

10    A, ¶ 58. Plaintiffs' Complaint asserts no specific facts regarding *any* allegedly wrongful acts or

11    omissions on the part of KWRI.

12    **III.    RULE 12(B)(6) STANDARDS**

13    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be

14    dismissed if it fails to state a relief upon which relief can be granted. Dismissal under Rule

15    12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of

16    sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901

17    F.2d 696, 699 (9th Cir. 1990); Schwarzer, et al.; *California Practice Guide – Federal Civil*

18    *Procedure Before Trial* (2008 Ed.), at 9-53, ¶ 9:187. The issue on a motion to dismiss for failure

19    to state a valid claim is not whether the plaintiff ultimately will prevail, but whether he is entitled

20    to offer evidence to support the putative claims asserted. *Hishon v. King & Spalding,* 467 U.S.

21    69, 73 (1984); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

22    While the Court must accept as true all material allegations in the complaint in evaluating

23    a Rule 12(b)(6) motion, *e.g., Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994), the Court need

24    not accept conclusory legal allegations "cast in the form of factual allegations if those

25    conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness*

26    *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Similarly, the Court is not bound to accept

27    unreasonable inferences or unwarranted deductions of fact. *Western Mining Counsel v. Watt*,

28    643 F.2d 618, 624 (9th Cir. 1981); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 n.8

(3d Cir. 1997). Dismissal is proper if a complaint is vague, conclusory, or fails to set forth any material facts in support of the allegation. *See North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 583 (9th Cir. 1983). Plaintiff bears the burden of pleading facts sufficient to state a claim; courts will not supply essential elements of a claim that were not initially pled. *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

In the RICO context, "conclusory allegations are insufficient to preclude dismissal." *Howard v. America Online, Inc.*, 208 F.3d 741, 750 (4th Cir. 2000), citing *Associated Gen. Contractors of America v. Metropolitan Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). *See also Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) ("In pleading [RICO] predicate acts, conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations"); *Flores v. Emerich & Fike*, 416 F.Supp.2d 885, 911 (E.D.Cal. 2006) (conclusory allegations of a "laundry list of purported predicate acts" insufficient to sustain a RICO claim); *Stone v. Baum*, 409 F.Supp.2d 1164, 1173 (D.Ariz. 2005) (motion to dismiss granted and sanctions awarded defendant, the court noting that "[c]onclusory and vague allegations will not support a cause of action … [t]he complaint must contain sufficient details so that th[e] court can determine whether or not a justifiable claim exists …); *Jones v. Nat'l. Commun. and Surveillance Networks*, 409 F.Supp.2d 456, 465 (S.D.N.Y. 2006) (allegations that "are largely conclusory, providing no factual or legal basis for defendants' liability" held to be insufficient to state RICO claim); *Starfish Investment Co. v. Hansen*, 370 F.Supp.2d 759, 768 (N.D.Ill. 2005) ("A RICO plaintiff is required, however, to allege sufficient facts to support each element of its RICO claim; '[i]t is not enough for plaintiff to simply allege these elements in boilerplate language.'")

Where causes of actions for fraud, or those premised upon fraud are alleged such as all claims asserted against KWRI herein, Federal Rule of Civil Procedure Rule 9(b) applies and requires "particularized allegations of the circumstances constituting fraud." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 15407 (9th Cir. 1994). Rule 9(b) requires the pleader to set forth the time, place, and specific content of the alleged fraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Gottreich v. San Francisco*, 552 F.2d

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-4-

1  866, 867 (9th Cir. 1977).  Conclusory or vague allegations are inadequate to satisfy the

2  "particularity" requirement of Rule 9(b).  *Moore v. Kayport Package Express, Inc.,* 885 F.2d

3  531, 540 (9th Cir. 1989).  Accordingly, the complaint must contain allegations that are "specific

4  enough to give defendants notice of the particular misconduct which is alleged to cause the fraud

5  so that they can defend against the charge and not just deny that they have done anything

6  wrong."  *Smegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985); *Wool v. Tandem Computers Inc.*

7  818 F.2d 1433, 1439-40 (9th Cir.1987) (Rule 9(b) requires that  the conduct of *each* defendant be

8  specified separately.)

## IV.    ARGUMENT

### A.    Plaintiffs' Complaint is Fatally Deficient as to KWRI

11         Plaintiffs' Complaint does not allege any wrongdoing on the part of KWRI that could

12  possibly serve as a basis for any of the counts asserted.  In fact, the *sole* alleged relationship of

13  KWRI to the operative facts in question is the conclusory allegation that KWRI is vicariously

14  liable for the other Defendants' actions.  However, the Complaint does not allege any legal

15  mechanism or factual bases through which KWRI could become vicariously liable for the claims

16  in question.

17         Specifically, Paragraphs 29, 3and 79 (which contain the <u>only</u> allegations of even minimal

18  substance relating to KWRI) do not, on their face, support any actionable claims against the

19  moving party.

20         For its part, Paragraph 29, conclusorily states that "KELLER WILLIAMS is vicariously

21  liable for the actions of its franchisee, ZPM which materially assisted Defendants to perpetuate

22  the fraudulent enterprise discussed herein upon the Plaintiffs for the purchase and sale

23  transaction for the Property for the over-inflated and above fair market value price."  Paragraph

24  29 clearly fails to set forth the essential elements of any claim against KWRI.  First, Paragraph

25  29's reference to vicarious liability is insufficient to subject KWRI to any claims in the

26  Complaint since, in order for vicarious liability of a franchisor to arise, a principal agency

27  relationship must be alleged and established.  *Cislaw v. Southland Corp*. 4 Cal.App. 4th 1284,

28  1288 (1992).  In the context of franchisors, a principal-agency relationship exists only when the

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

-5-

1  franchisor can exercise <u>complete</u> control over the franchisee. *Id., Kaplan v. Coldwell Banker*

2  *Residential* 59 Cal.App.4[th] 741, 745 (1997).  Plaintiffs have not alleged an agency relationship

3  between KWRI and its purported franchisee ZPM, let alone the existence of "complete" control.[2]

4  Due to the severe and punitive nature of RICO, claims of vicarious liability in connection with

5  RICO counts must additionally plead and prove (beyond the minimal requirements noted above),

6  that the principal was <u>actively</u> involved in the fraud of its agents.  *Dakis on behalf of Dakis*

7  *Pension Plan v. Chapman* 574 F. Supp. 757, 760 (1983); *United Centrifugal Pumps v. Schotz,*

8  1991 WL 274232 *4 (N.D. Cal.); *Thrailkill v. Champion Ford, Inc.* 776 F. Supp. 1486, 1488

9  (D.N.M 1991) (to impose liability "upon the mere presence of a franchisee/franchisor

10  relationship without more would be to 'defeat the structure established in the statute and to

11  convert it into a blunt instrument, contrary to the intent of Congress'"; where "a corporation

12  derive[s] a benefit from the illegal conduct without any knowledge or acquiescence…vicarious

13  liability is inappropriate.").[3]

14       Paragraphs 3 and 79 which attempt to label KWRI (along with ZPM and Zeleznak), as

15  the "agent and broker" for the transaction at issue do not rectify Paragraph 29's deficiencies  The

16  mere identification of a party as an agent or broker is not grounds for any claim asserted within

17  the Complaint.  Without more, Plaintiffs' Complaint as against KWRI is fatally deficient on its

18  face.  Beyond this, however, the claims for relief are each individually defective and thus

19  independently subject to dismissal.

20       **B.    <u>Plaintiffs' RICO Count Is Improperly Pled (Count 3)</u>**

21       To state a claim for relief under Racketeer Influenced and Corrupt Organizations Act

22  (RICO) the plaintiffs must meet two pleading burdens.  First, they must properly allege all of the

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

---

[2] Plaintiffs failure to do so is likely a result of the fact that ZPM is not even a franchisee of KWRI.

[3] The ABA Task Force Report has stressed that vicarious liability theories "must be applied cautiously" to civil RICO:

> Many of the perceived abuses of Civil RICO involve situations where a corporation is made a RICO defendant based upon acts of its employees or agents.  These acts may be contrary to corporate policy.  Any "benefits" accruing to the corporation from these acts are often at most secondary to the primary goal of the offender to benefit himself; sometimes the corporation itself is victimized by the offenses…It is particularly incongruous that a statute creates for the primary purpose of protecting legitimate business entities from infiltration by criminal elements should result in liability for treble damages by the infiltrated business. (ABA Task Force Report, Report of the ABA Ad Hoc Civil RICO Task Force (March 28, 1985).

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1 elements of a RICO violation, specifically, that (1) a "person," (2) through the commission of

2 two or more predicate acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly

3 or indirectly invests in or maintains an interest in, or participates in (6) an "enterprise" (7) the

4 activities of which affect interstate or foreign commerce.  Second, the plaintiffs must allege that

5 they were injured in their business or property by reason of the conduct constituting the RICO

6 violation.  18 U.S.C. §§ 1962(c), 1964(c); *Sedima S.P.R.L. v. Imrex* Co., 473 U.S. 479, 496

7 (1985).[4]

8      Plaintiffs' RICO claim against KWRI is for alleged violation of section 1962(d), or

9 conspiracy to commit RICO violations.  1962(d) states "[i]t shall be unlawful for any person to

10 conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."  Bare or

11 conclusory allegations of participation in a conspiracy under Section 1962(d) will not avail on a

12 motion to dismiss.  *Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F. Supp. 1078, 1092

13 (E.D.N.Y. 1990).  Conspiracy claims must state with specificity what the agreement was, who

14 entered into the agreement, and what actions were taken in furtherance of it.  *Vietnam Veterans*

15 *of Am., Inc. v. Guerdon Indust.*, 644 F. Supp. 951, 959 (D. Del. 1986).  Plaintiffs' Complaint is

16 devoid, however, of any specific allegations that KWRI violated or conspired to violate section

17 1962.  Rather Plaintiffs make blanket assertions that the defendants "conspired between

18 themselves to use or invest the proceeds from their activities to either acquire an interest in, or

19 establish, or operate an Enterprise, activities of which affect interests of intrastate commerce."

20 KWRI is left to guess as to what misconduct is being charged as against it.

     **1.**    **Plaintiffs Have Not Adequately Pled the Necessary Elements of a RICO Predicate Act**

22      Plaintiff has not, and cannot through amendment, plead the necessary elements of the

23 purported predicate acts upon which they attempt to rely in asserting a RICO claim.  Section

---

[4] The Ninth Circuit has approved of the Northern District's use of a RICO Standing Order, which prescribes the pleading standards specifically applicable to RICO claims.  *Wagh v. Metris Direct*, 348 F.3d 1102, 1108 (9th Cir. (Cal.) 1993) noting that many federal district courts, including individual judges in the Northern, Central Districts of California, "have issued standing orders in civil RICO cases requiring plaintiff's counsel provide certain details concerning their RICO claim, citing to *May v. U.S. Chamber of Commerce* 1996 WL 116829 (court ordered the plaintiff to "include a RICO statement consistent with the standing orders of the court").  The case statement requirements in *May v. U.S. Chamber of Commerce* are instructive here.

1961(1) of RICO lists as a "racketeering activity" "any act which is indictable under…Title 18

section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)…" Section1341

prohibits schemes or artifices to defraud conducted through the use of "any private or

commercial **interstate** carrier…." (emphasis added). Section 1343 prohibits schemes or artifice

to defraud executed through the use of wire, radio, or television communication in **interstate or**

**foreign commerce**…" (emphasis added). Plaintiffs make the conclusory assertion that the

defendants have engaged in mail and wire fraud. In relying upon mail or wire fraud, Plaintiffs

are charged with pleading and providing the criminal conduct that constitutes the fraud. *Furman*

*v. Cirrito* 828 F.2d 898, 900 (2d. Cir. 1987). No such conduct on the part of KWRI has been

alleged. Count 1, the claim for relief under which the mail and wire fraud allegations are

contained, is not even asserted against KWRI. Plaintiffs' Complaint does not allege any specific

telephone calls, letters, electronic correspondence, facsimile or other interstate communication in

order to demonstrate mail or wire fraud.

    Moreover, by their own allegations, Plaintiffs are foreclosed from asserting mail or wire

fraud as predicate acts because the Complaint alleges activities that affect *intrastate* commerce

rather than interstate commerce. Specifically, Paragraph 91, under Count 1, states:

> Defendants and DOES 1-50 have used or caused to be used the mails and wires
> and **intrastate** commerce in furtherance of their scheme and artifice to defraud
> purported investors…(emphasis added)

    Paragraph 97 under Count 1 states "[t]he Enterprise alleged herein, at all times mentioned

herein, engaged in activities which affect *intrastate* commerce." (emphasis added). Paragraph

111 under Count 3 states "Defendants and DOES 1-50 have conspired between themselves to use

or invest the proceeds from their activities to either acquire an interest in, or establish, or operate

an Enterprise, the activities of which affect interests of *intrastate* commerce." (emphasis added).

Plaintiffs' failure to sufficiently state a predicate act is grounds for dismissal pursuant to Rule

12(b)(6).

## 2.    Plaintiffs Have Not Properly Pled a RICO "Enterprise"

    It is axiomatic that there must be a distinction between the entity or individual charged

with the conduct that constitutes the RICO predicate act, and the alleged "enterprise." The two

-8-

1    cannot be one in the same. See *Sedima* 473 U.S. at 496-97; *Sever v. Alaska Pulp Corp.*, 978 F.2d

2    1529, 1534 (9th Cir. 1992); *Schrieber Dist. Co. v. Serve-Well Furniture*, 806 F.2d 1393, 1397

3    (9th Cir. 1998); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984). In the present Complaint,

4    the two are one in the same. Plaintiffs, in Paragraph 100 allege "Defendants used the proceeds

5    from their racketeering activity to further fund and operate Enterprises under Defendants' name.

6    The Enterprises were entitled, but not limited to, SOLOMON CAPITAL, Z-LOFT, ZPM,

7    GRACE CAPITAL, and RDB DEVELOPMENT…" This allegation alone precludes Plaintiffs'

8    RICO claim as a matter of law. Because Plaintiffs have alleged that SOLOMON CAPITAL, Z-

9    LOFT, ZPM, GRACE CAPITAL, and RDB DEVELOPMENT committed the acts that allegedly

10    violated Section 1341 and 1343, Plaintiffs cannot also point to these same parties as constituting

11    an "enterprise" for purposes of RICO. *Id.*

12         Furthermore, while an enterprise may consist of a group of persons or entities associated

13    together for a common purpose of engaging in a course of conduct prohibited under RICO,

14    Plaintiffs must allege specifically who or what the association in fact consisted of, and what

15    conduct was undertaken by such association-in-fact. *United States v. Turkette* 452 U.S. 576,

16    582-583 (1981). Although Paragraph 86 alleges an association in fact, no other specifics are

17    alleged. The enterprise cannot be defined solely by the wrongdoing. However, in Paragraph 78,

18    Plaintiffs do just that, defining the enterprise by defendants' wrongdoings, yet omitting any

19    specifics of who or what the association in fact consisted of. In sum, Plaintiffs have therefore

20    not pled a valid RICO enterprise.

21              **3.    Plaintiffs Have Not Pled a Pattern of Racketeering Activity**

22         Plaintiffs' Complaint fails to meet the "pattern" requirement of RICO. 18 U.S.C.

23    §1962(c). To allege a "pattern of racketeering activity" plaintiffs are required to allege at least

24    two predicate acts, within ten years of each other. 8 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern*

25    *Telephone* Co., 492 U.S. 229, 236-43 (1989). In *H.J. Inc. v. Northwestern Telephone Co.* the

26    Supreme Court established that besides showing a number of predicate acts, to establish a pattern

27    a plaintiff must also show that those acts were "related and continuous." In *H.J.*, the Court

28    described continuity as "both a closed-and-open-ended concept, referring either to a closed

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-9-

period of repeated conduct, or to past conduct that by its very nature projects into the future with a threat of repetition." *Id.* at 241. A plaintiff may demonstrate continuity over a closed period by "proving a series of related predicates over a substantial period of time." *Id.* at 242, 109. A plaintiff may also demonstrate continuity by showing that the predicate acts demonstrate "a specific threat of repetition extending indefinitely into the future, " or that the defendants' criminal activity is "a regular way of conducting defendants' ongoing legitimate business…" *Id.* **The pattern must be both backward and forward looking**. The Court also made clear, however, that "Congress was concerned in RICO with long-term criminal conduct." *Id.* Thus "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" RICO's continuity requirement. *Id.*

Plaintiffs' Complaint lacks allegations of forward looking conduct or a threat thereof. All conduct complained of occurred in the past, foreclosing a sufficient claim of pattern.

Applying the *H.J.* continuity standard, the courts routinely have rejected RICO claims predicated on a single, alleged transaction event or venture. E.g., *Uni*quality, Inc. v. Infotronx*, 974 F.2d 918, 922 (7th Cir.1992) (dismissal for failure to state a valid RICO claim where plaintiff "alleged but one scheme that lasted at most seven to eight months," and "[t]he only predicate acts alleged were mail and wire fraud"); *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir.1997) (upholding dismissal of RICO claim for lack of requisite continuity where fraudulent act alleged were "subparts" of "the one purportedly fraudulent act").

Plaintiffs' RICO claims are predicated on a single "pump and dump" transaction, or at best, two transactions which consist of Plaintiffs' investment in March 2005 and the "pump and dump" transaction one month later. Exhibit A, ¶¶47, 57, 78. At Paragraph 79, Plaintiffs' refer to a single "transaction at issue." Where allegations are limited to a single event or a discreet number of events occurring at most over a short amount of time, a pattern is simply not pled and the RICO count must be dismissed.

### 4.    Plaintiffs Have Not Sufficiently Pled Damages

Plaintiffs must plead and prove facts that they were injured in their business or property by reason of the conduct constituting the RICO violation. 18 U.S.C. §1964(c). The Supreme

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-10-

1   Court has held that "a plaintiff's right to sue under [Section 1964(c)] require[s] a showing that

2   the defendant's violation not only was a 'but for' cause of his injury, but was the proximate

3   cause as well." *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1996 (2006).  Plaintiffs have

4   not alleged any causal nexus between any misconduct to Plaintiffs' alleged damages.

5       **C.    Plaintiffs' Claims for Violation of the 1933 and 1934 Acts are Barred by**
           **Statute of Limitations (Counts 3 and 4)**
6

7       Plaintiffs' causes of action for Violation of the 1933 Act and 1934 Act are time barred.

8   Securities fraud claims under both the 1934 Act (Section 10 and Rule 10b-5) and the 1933 Act

9   must be brought within one year of the date on which plaintiff discovered, or in the exercise of

10  reasonable diligence should have discovered, the existence of its claim, **but in any event, no**

11  **later than three years after the offer or sale giving rise to the plaintiff's claim**.  15 U.S.C.

12  §§77m.

13      The Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson* confirmed

14  the three year outside limit 10B-5 violations, stating "[t]he 1-year period, by its terms, begins

15  after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year

16  limit is a period of repose inconsistent with tolling….. [b]ecause the purpose of the 3-year

17  limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that

18  period." 501 U.S. 350, 363 (1991 (quoting Bloomenthal, The Statute of Limitations and Rule

19  10b-5 Claims: A Study in Judicial Lassitude, 60 U.Colo.L.Rev. 235, 288 (1989) ("[T]he

20  inclusion of the three-year period can have no significance in this context other than to impose an

21  outside limit"); and ABA Committee on Federal Regulation of Securities, Report of the Task

22  Force on Statute of Limitations for Implied Actions 645, 655 (1986) (advancing "the inescapable

23  conclusion that Congress did not intend equitable tolling to apply in actions under the securities

24  laws")).

25      Plaintiffs' Complaint does not specify which section of the 1933 Act has allegedly been

26  violated; however it is alleged that Defendants violated 15 U.S.C. § 77l (1933 Act) in that they

27  "offered to sell a security by oral communication", which suggests that  the claim for relief is

28  being made under § 77l(a)(2) also known as Section 12(2) of the 1933 Act.  In an action under

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

-11-

the provision of the Securities Act of 1933 concerning liability for misrepresentations or omissions in a prospectus or oral communication, the plaintiff must plead facts indicating compliance with the applicable statutes of limitation. 15 U.S.C. §77l(a)(2); *Toombs v. Leone* 777 F.2d 465, 468 (9th Cir. 1985). Claims under Section 12(2) must comply with 15 U.S.C. § 77m; see *Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 32 F.3d 697, 700–702 (2d Cir. 1994); *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir. 1992); *Finkel v. Stratton Corp.*, 962 F.2d 169, 172 (2d Cir. 1992); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, (5th Cir.1981) (Investor's claims under sections 77k and 77l(2) were absolutely barred under three-year period of limitations).

Plaintiffs do not even attempt to allege that their claims under 1933 Act or the 1934 Act comply with the applicable statute of limitations, and indeed they cannot. That is because the limitations period runs from the sale of the security, i.e., the purchase of part of the Solomon Towers investment, which occurred no later **March 3, 2005**, the date on which the Operating Agreement was executed. Plaintiffs' Complaint was filed on **April 30, 2008** and not served on KWRI until May 6, 2008. The statute of repose has thus expired and Plaintiffs' claims are time-barred as a matter of law. Accordingly, Plaintiffs' causes of action for violations of the 1934 Act and 1933 Act should be dismissed with prejudice.

### D.   Plaintiffs Fail to Sufficiently Plead Violation of 1934 Act (Count 4)

Beyond the absolute time bar, Plaintiffs fail to state facts sufficient to constitute a cause of action for violation under the 1934 Act. The 1934 Act reads in pertinent part as follows:

> Section 10. It shall be unlawful for any person, directly or indirectly, by the used of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange…
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations at the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C.. § 78j(b).
>
> Rule 10b-5: It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails of or any facility of any national securities exchange,
>
> (a) to employ any device, scheme or artifice to defraud,

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-12-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.  17 C.F.R. § 240.10b-5.

Rule 10b-5 is an anti-fraud provision and therefore plaintiffs must plead the various elements required for a violation, and also must plead fraud with particularity.  15 U.S.C. § 78j(b); 17 C.F.R. §240.10b-5.  In alleging a violation of 10B and Rule 10b-5, Plaintiffs are required to plead (1) use of instrumentality of interstate commerce; (2) causation, including transaction causation and loss causation ; (3) scienter; (4) reliance; and (5) damages.  *9 Causes of Action 2d 271, Cause of Action for Securities Fraud Under Section 10(b) of the 1934 Securities Exchange Act and/or Rule 10B-5*, § 4 (2008), (citations omitted).  Conclusory allegations of conspiracy are insufficient.  *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (C.A.N.Y.1982).  Additionally, the Private Securities Litigation Reform Act requires that Plaintiffs plead a sufficient quantum of facts relating to the state of mind requirement relevant to the securities fraud claims alleged.  *Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998); *In re Aetna Inc. Securities Litigation*, 34 F. Supp. 2d 935, 941-942 (E.D. Pa. 1999) (Allegations made largely on information and belief are not sufficiently specific); *Sheldon v. Vermonty*, 31 F. Supp. 2d 1287 (D. Kan. 1998) (Complaint held not to be sufficiently particular).  Here, Plaintiffs' blanket allegations fall far short of the particular pleadings required.

Plaintiffs have failed to properly allege the requisite elements of a Rule 10b-5 claim.  As a threshold matter, Plaintiffs have not specified the "security" alleged to be involved in the transaction at issue.  The only attempt at identifying a security appears in Paragraph 49 stating "the investments sold *by the Plaintiff investors* qualify as 'securities'."  That allegation is fatally uncertain.  Moreover, Plaintiffs fail to allege what KWRI did "in connection" with the purchase or sale of any security.  Acts outside the sale of the security, i.e., mismanagement of the investment capital by entering into allegedly over-priced land sales, is beyond the scope of the statute.  See *Santa Fe Industries v. Green* 430 U.S. 462 (1977). (Held that mere instances of

-13-

corporate mismanagement are not within the Securities Exchange Act.)  The only transaction

Plaintiffs have linked to KWRI is the "wash sale" which is not covered by the statute.

Additionally, as outlined above Plaintiffs fail to allege the use any means or instrumentality of

interstate commerce in association with any potential predicate acts.  Nor does the complaint

allege that KWRI or any defendant utilized the national securities exchange in any alleged

misconduct.  Plaintiffs have not demonstrated how the facts that are alleged to have been false or

fraudulent were "material" as required under Rule 10b-5.  Further, the Complaint is devoid of

allegations of scienter as against KWRI or any alleged franchisees thereof.  Plaintiffs' conclusory

statement that they "suffered damages …. in reliance on Defendants' representations" is not

sufficient to satisfy the reliance requirement. Exhibit A, ¶ 120.  Plaintiffs' claim for violation of

the 1934 Act should be dismissed with prejudice.

## E.    Plaintiffs Fail to Sufficiently Plead Violation of 1933 Act (Count 5)

The 1933 Act, codified as Title 15 U.S.C. § 77*l*. "Civil liabilities arising in connection

with prospectuses and communications" states, in pertinent part, as follows:

Any person who—

>    (2) offers or sells a security (whether or not exempted by the provisions of
> section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of
> said section), by the use of any means or instruments of transportation or
> communication in interstate commerce or of the mails, by means of a prospectus
> or oral communication, which includes an untrue statement of a material fact or
> omits to state a material fact necessary in order to make the statements, in the
> light of the circumstances under which they were made, not misleading (the
> purchaser not knowing of such untruth or omission), and who shall not sustain the
> burden of proof that he did not know, and in the exercise of reasonable care could
> not have known, of such untruth or omission, shall be liable, subject to subsection
> (b) of this section, to the person purchasing such security from him, who may sue
> either at law or in equity in any court of competent jurisdiction, to recover the
> consideration paid for such security with interest thereon, less the amount of any
> income received thereon, upon the tender of such security, or for damages if he no
> longer owns the security…

To establish a prima facie case of securities fraud in violation of Section 12(2) of the

1933 Securities Act, 15 U.S.C. §§ 77*l*(a)(2), the plaintiff must plead and prove that: (1) the

defendant offered to sell or sold plaintiff a security; (2) the offer or sale was made by the use of

some means of interstate commerce or the mails; (3) the defendant made the offer or sale through

a written prospectus or some oral communication related to a prospectus; (4) the offer or sale

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

-14-

1  was made in connection with a public offering of securities; (5) the written prospectus or oral

2  communication included an untrue statement of material fact or omitted to state a material fact;

3  and (6) the plaintiff did not actually know of the untruth or omission at the time of the offer or

4  sale. *11 Causes of Action 2d 1, Cause of Action for Securities Fraud under Section 12(2) of the*

5  *1933 Securities Act,* § 4 (2008) (citations omitted).

6      Plaintiffs' allegations in Count 5 merely restate the language of the 1933 Act without any

7  tailoring to the facts of the instant dispute. In no way do Plaintiffs allege how KWRI "offered to

8  sell a security by oral communications", or "made untrue statements of material facts and

9  omitted to state material facts necessary in order to make the statements made, in light of the

10  circumstances under which they were made, not misleading."

11      As stated above, Plaintiffs also fail to allege the interstate commerce requirement.

12  Further, the 1933 Act requires the defendant to be a seller of security. Permissible defendants

13  are limited to defendants that have directly or actively participated in the sale in question. *Pinter*

14  *v. Dahl* 486 U.S. 622 (1988). As outlined above, no such facts are alleged here nor can they be.

15  Finally, Plaintiffs have not alleged that the Solomon Towers investment amounted to a public

16  offering of securities. Plaintiffs' claim for violation of the 1933 Act should therefore be

17  dismissed with prejudice.

18      **F.    Plaintiffs Fail to State a Claim under Business & Professions Code section**
        **17200 (Count 6)**

19

20      The California Business & Professions Code is inapplicable as all alleged misconduct

21  occurred in Arizona. Regardless, on its face, Count 6 fails. In federal court, §17200 claims that

22  are grounded in fraud must satisfy the particularity requirements of Federal Rule of Civil

23  Procedure ("FRCP") 9(b). *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003). In

24  *Vess*, a Ritalin patient brought an action against psychiatric associations and manufacturers of

25  prescription pharmaceuticals, alleging that defendants increased sales of particular prescription

26  drug in violation of California's unfair business practice laws, including § 17200. *Id*. at 1101.

27  The Ninth Circuit found that because the claimant did not provide the particulars of when,

28  where, or how the alleged conspiracy occurred, the claimant failed to comply with FRCP 9(b)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-15-

1    and the court affirmed the lower court's dismissal. *Id.* at 1100.

2           Here, Plaintiffs similarly present a generalized claim that lacks the necessary level of

3    particularity. Plaintiffs' Complaint does little more than allege that that the ten defendants

4    named in Count 6 lured Plaintiffs into transactions in order to defraud them and garner ill-gotten

5    gains for the defendants' benefit. Exhibit A, ¶ 128. None of this information is particular enough

6    as to the circumstances constituting the alleged fraud to "give defendants notice of the particular

7    misconduct ... so that they can defend against the charge and not just deny that they have done

8    anything wrong." *Vess* at 1106. Moreover in fraud actions with multiple defendants, the fraud

9    allegations need to be pled with particularity for each defendant. *Del Campo v. Kennedy*, 491

10   F.Supp.2d 891, 904 (N.D. Cal. 2006). Here, Plaintiffs fail to identify how KWRI specifically

11   violated Business and Professions Code section 17200. Without more, Count 6 as to KWRI

12   should be dismissed with prejudice.

13          **G.      Plaintiffs' Fail to State a Cause of Action for Conspiracy (Count 11)**

14          To state a cause of action for conspiracy the complaint must allege facts showing the

15   formation and operation of a conspiracy, defendant's knowledge of the conspiracy and its

16   unlawful purpose, and, as the cause of action is for damage suffered and not the mere conspiracy,

17   the complaint must state facts which show that a civil wrong was done resulting in damage.

18   *Orloff v. Metropolitan Trust Co.*, 17 Cal.2d 383, 388 (1941); *Unruh v. Truck Insurance*

19   *Exchange* 7 Cal.3d 616, 631 (1972). As Plaintiffs' conspiracy claim is premised on a conspiracy

20   to defraud and improperly profit from plaintiffs, the heightened pleading requirements of FRCP

21   9(b) are triggered. Here, Plaintiffs fail to sufficiently plead a conspiracy cause of action against

22   KWRI, alleging only that KWRI furthered the conspiracy by acting as the agent and broker in

23   the "wash sale" transaction. Exhibit A, ¶¶ 157, 160. No specific wrongdoing (or even

24   knowledge thereof) is alleged as to KWRI in connection with the formation, operation or result

25   of the alleged conspiracy. As such, Plaintiffs' claim for conspiracy is fatally insufficient.

26          **H.      Plaintiffs Have Failed to State Claims for Joint and Several Liability
                     Pursuant to California Corporations Code Sections 25501, 25401, 25504,**
27                   **25503, 25102(F) and 25110 (Counts 16 and 18)**

28          The California Corporations Code ("Corp. Code") is improperly alleged as all allegations

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

-16-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  involve misconduct within Arizona.  Further, the single security sale alleged occurred pursuant

2  to the Operating Agreement at section 13.2 requires the agreement be governed by Nevada law.

3  Exhibit A, ¶47.

4        Corp. Code Sections 25501, 25401, 25503, 25504, 25105(F) and 25110 comprise part of

5  the Corporate Securities Law of 1968.  Just as Plaintiffs fail to assert causes of action for

6  violation of the1933 Act and 1934 Act against KWRI, Plaintiffs similarly fail to assert state

7  securities fraud claims against KWRI.  The 1968 Corporate Securities Law is an anti-fraud

8  provision and thus the heightened pleadings requirement for fraud apply.

9        In support of the Corp. Code claims against KWRI, the Complaint asserts that nearly all

10  defendants including KWRI profited from the inflated sale of property involved in the "wash

11  sale", that KWRI had a pre-existing relationship with other defendants, and the commission

12  received by defendants ZPM and ZELEZNAK in connection with the property sale support the

13  conclusion that KWRI and ZELEZNAK aided and assisted other defendants to perpetuate fraud

14  against the Plaintiffs. Exhibit A, ¶¶ 199, 200, 203.  Again, no specifics are alleged and  the

15  Complaint falls far short of stating any actionable claim under the Corp.Code.

16  In asserting a cause of action under section 25401 which prohibits the sale of securities by means

17  of false statements or omissions, Plaintiffs are required to allege strict privity between the actual

18  seller of a security and the purchaser.  *In re Diasonics Securities Litigation*, 599 F.Supp. 447

19  (N.D. Cal. 1984); *Employers Ins. of Wausau v. Musick, Peeler & Garrett,* 871 F.Supp.381 (S.D.

20  Cal.1994).  Failure to allege strict privity is grounds for dismissal.  *Id*.  Section 25501 provides

21  grounds for relief as a result of a violation of section 25401.  Plaintiffs have not and cannot assert

22  strict privity between KWRI and Plaintiffs, therefore claims based on sections 25401 and 25501

23  fail.  Section 25110 prohibits selling or offering to sell securities in California in an issuer

24  transaction.  Plaintiffs have not asserted that KWRI was a seller of securities.  Moreover, the

25  Complaint is devoid of allegations that KWRI is an issuer as the term is defined in section

26  25010.  Plaintiffs have not alleged facts sufficient to state a cause of action for violation of

27  Section 25110.  It therefore follows that Section 25503, which provides for damages associated

28  with violations of section 25110, also fails.  Plaintiffs likewise cannot sustain a charge based

-17-

1    upon Section 25102(f) which regulates security sales exempted from section 25110 and governs

2    the actions of sellers, purchasers and issuers of securities. The Complaint fails to allege a claim

3    under section 25504. Section 25504 imposes liability on those who "control" persons in

4    violation of § 25501 and § 25503, and imposes liability on those who "materially assist"

5    violations of § 25401 "with intent to deceive or defraud." Plaintiffs' claims under section 25504

6    fail since the Complaint does not allege either control by or material assistance of KWRI as to

7    any other defendants. *In re Activision Securities Litigation*, 621 F.Supp.415, 427 (N.D.Cal.

8    1985) (claim under § 25504 dismissed with prejudice where complaint failed to allege "control

9    by or material assistance"). Plaintiffs' Complaint fails to assert any violations of the California

10   Corporations Code as against KWRI. Dismissal of Counts 16 and 18 is thus appropriate.

11                              **V.    CONCLUSION**

12          KWRI respectfully requests that the Court grant this motion to dismiss, in its entirety,

13   with prejudice.

14   Dated: July 3⁄2, 2008                           GORDON & REES LLP

15

16                                          By: _____
                                                 DION N. COMINOS
17                                               MEAGEN E. LEARY
                                                 Attorneys for Defendant
18                                               KELLER WILLIAMS REALTY, INC.

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    :    Steve Trachsel, et al. v. Ronald Buchholz, et al.
        United States District Court Northern District of California, San Jose Division
2       Case No. No. C08 02248

3                            **PROOF OF SERVICE**

4           I am a citizen of the United States.  My business address is 275 Battery Street, San
     Francisco, CA    94111.  I am employed in the City and County of San Francisco where this
5    service occurs.  I am over the age of 18 years and not a party to the within action.

6           On July 30, 2008, following ordinary business practice, I served a true copy of the
     foregoing document(s) described as:
7
8           **DEFENDANT KELLER WILLIAMS REALTY, INC.'S MEMORANDUM OF POINTS AND**
            **AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTS 3, 4, 5, 6, 11, 16 AND 18 OF**
9           **PLAINTIFFS' COMPLAINT [Fed. R. Civ. Pro. 12(b)(6)]**

10   **X**   **BY (CM/ECF) ELECTRONIC CASE FILE SYSTEM**: with the United States
           District Court, Northern District, to all parties listed on the court's proof of electronic
           service.

11   ☐    **BY FACSIMILE**:  by transmitting by facsimile to the number(s) listed above to the
12         fax number(s) set forth below, or as stated on the attached service list, on this date
           before 5:00 p.m.

13   ☐    **PERSONAL SERVICE**:  I caused such envelope(s) to be delivered by hand this date
           to  the offices of the addressee(s).
14
     ☐    **MAIL**: I caused such envelope(s) with postage thereon fully prepaid to be placed in
15         the United States mail at Sacramento, California to the offices of the addressee(s)
           listed   below:
16
     ☐    **OVERNIGHT DELIVERY**: I caused such envelope(s) to be delivered to an
17         overnight delivery carrier with delivery fees provided for, addressed to the person(s)
           on whom it is to be served.
18

19          I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct.
20
            Executed on July 30, 2008 at San Francisco, California.
21

22         _____
                        Sandra Sarmiento
23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

DION N. COMINOS  (SBN:  136522)
MEAGEN E. LEARY  (SBN:  233103)
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054

Attorneys for Defendant
KELLER WILLIAMS REALTY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STEVE TRACHSEL, an individual, SUN CITY TOWERS, LLC, a California corporation, THOMAS CIRRITO, and individual, ATOCHA LAND, LLC, a Delaware limited liability company, MICHAEL CIRRITO, and individual, and CIRRITO HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>RONALD BUCHHOLZ, CHARICE FISCHER, RDB DEVELOPMENT, LLC, a Nevada limited liability company, SOLOMON CAPITAL, LLC, a Nevada limited liability company, JONATHON VENTO, GRACE CAPITAL, LLC, dba GRACE COMMUNITIES, an Arizona limited liability company, DONALD ZELEZNAK, Z-LOFT, LLC, an Arizona limited liability company, ZELEZNAK PROPERTY MANAGEMENT, LLC dba KELLER WILLIAMS REALTY, INC., a Texas corporation, and DOES 1-50,  inclusive,<br><br>Defendants. | CASE NO. C08 2248<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COUNTS 3, 4, 5, 6, 11, 16 AND 18 OF PLAINTIFFS' COMPLAINT [Fed. R. Civ. Pro. 12(b)(6)]**<br><br>Hearing Date: September 5, 2008<br>Time:            9:00 A.M.<br>Location:       Courtroom 6<br>Judge:          Hon. Ronald Whyte |

Pursuant to Federal Rule of Evidence Code, Rule 201, Defendant KELLER WILLIAMS REALTY, INC. hereby requests that this Court, in ruling upon KELLER WILLIAMS REALTY, INC.'s Motion to Dismiss take judicial notice of the following documents:

-1-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1    (1)    The Complaint of Plaintiffs STEVE TRACHSEL, SUN CITY TOWERS, LLC,

2  THOMAS CIRRITO, ATOCHA LAND, LLC, MICHAEL CIRRITO and CIRRITO

3  HOLDINGS, LLC, filed in United States District Court, Northern District, San Jose Division,

4  Case No. C0802248, against KELLER WILLIAMS REALTY, INC. and other defendants on or

5  about April 30, 2008.  A true and correct copy of Plaintiffs' Complaint is attached hereto as

6  Exhibit A.

7  Dated:  July 30, 2008                                GORDON & REES LLP

8

9                                                                   By:  _____

10                                                                   DION N. COMINOS
                                                                     MEAGEN E. LEARY
11                                                                   Attorneys for Defendant KELLER
                                                                     WILLIAMS REALTY, INC.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  :    Steve Trachsel, et al. v. Ronald Buchholz, et al.
        United States District Court Northern District of California, San Jose Division
2       Case No. No. C08 02248

3                              **PROOF OF SERVICE**

4           I am a citizen of the United States.  My business address is 275 Battery Street, San
    Francisco, CA    94111.  I am employed in the City and County of San Francisco where this
5   service occurs.  I am over the age of 18 years and not a party to the within action.

6           On July 30, 2008, following ordinary business practice, I served a true copy of the
    foregoing document(s) described as:
7

8           **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COUNTS 3, 4, 5,**
            **6, 11, 16 AND 18 OF PLAINTIFFS' COMPLAINT [Fed. R. Civ. Pro. 12(b)(6)]**

9    **X**    **BY (CM/ECF) ELECTRONIC CASE FILE SYSTEM**: with the United States
            District Court, Northern District, to all parties listed on the court's proof of electronic
10          service.

11   ☐    **BY FACSIMILE**:  by transmitting by facsimile to the number(s) listed above to the
            fax number(s) set forth below, or as stated on the attached service list, on this date
12          before 5:00 p.m.

13   ☐    **PERSONAL SERVICE**:  I caused such envelope(s) to be delivered by hand this date
            to  the offices of the addressee(s).

14   ☐    **MAIL**: I caused such envelope(s) with postage thereon fully prepaid to be placed in
            the United States mail at Sacramento, California to the offices of the addressee(s)
15          listed   below:

16   ☐    **OVERNIGHT DELIVERY**: I caused such envelope(s) to be delivered to an
            overnight delivery carrier with delivery fees provided for, addressed to the person(s)
17          on whom it is to be served.

18
            I declare under penalty of perjury under the laws of the State of California that the
19   foregoing is true and correct.

20          Executed on July 30, 2008 at San Francisco, California.

21

22                                  _____
                                              Sandra Sarmiento
23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

KWRI/1051542/5802734v.1

EXHIBIT "A"

1    TODD A. ROBERTS (SBN 129722)
     JESSHILL E. LOVE (SBN 208348)
2    ROPERS, MAJESKI, KOHN & BENTLEY
     1001 Marshall Street, Suite 300
3    Redwood City, CA 94063
     Telephone:    (650) 364-8200
4    Facsimile:    (650) 780-1701

5    Attorneys for Plaintiffs
     STEVE TRACHSEL, an individual, SUN CITY
6    TOWERS, LLC, a California corporation,
     THOMAS CIRRITO, an individual,
7    ATOCHA LAND, LLC, a Delaware limited liability
     company, MICHAEL CIRRITO, an individual, and
8    CIRRITO HOLDINGS, LLC, a Delaware limited
     liability company

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12
     STEVE TRACHSEL, an individual, SUN          CASE NO.  C08  02248  RS
13   CITY TOWERS, LLC, a California
     corporation, THOMAS CIRRITO, an
14   individual, ATOCHA LAND, LLC, a
     Delaware limited liability company,         COMPLAINT FOR:
15   MICHAEL CIRRITO, an individual, and
     CIRRITO HOLDINGS, LLC, a Delaware           (1)    VIOLATION OF SECTION 1962(a)
16   limited liability company,                  OF THE RACKETEER INFLUENCED
                                                 AND CORRUPT ORGANIZATIONS ACT
17                    Plaintiffs,                OF 1970 (18 U.S.C. SECTIONS 1, ET SEQ.)
                                                 ("RICO");
18         v.                                    (2)    VIOLATION OF RICO SECTION
                                                 1962(C);
19   RONALD BUCHHOLZ, CHARICE                    (3)    VIOLATION OF RICO SECTION
     FISCHER, RDB DEVELOPMENT, LLC,              1962(D);
20   a Nevada limited liability company,         (4)    VIOLATION OF SECURITIES
     SOLOMON CAPITAL, LLC, a Nevada              EXCHANGE ACT OF 1934 SECTION 10B
21   limited liability company, JONATHON         AND RULE 10B-5 (17 C.F.R. SECTION
     VENTO, GRACE CAPITAL, LLC, dba              240.10B-5;
22   GRACE COMMUNITIES, an Arizona               (5)    VIOLATION OF SECURITIES ACT
     limited liability company, DONALD           OF 1933 SECTION 12(A) (15 U.S.C.
23   ZELEZNAK, Z-LOFT, LLC, an Arizona           SECTION 771(A));
     limited liability company, ZELEZNAK         (6)    BREACH OF FIDUCIARY DUTY;
24   PROPERTY MANAGEMENT, LLC dba                (7)    BREACH OF CONTRACT;
     KELLER WILLIAMS REALTY, an                  (8)    NEGLIGENT
25   Arizona limited liability company,          MISREPRESENTATION;
     KELLER WILLIAMS REALTY, INC., a             (9)    INTENTIONAL
26   Texas corporation, and DOES 1-50,           MISREPRESENTATION;
     inclusive,                                  (10)   CONSPIRACY;
27                                               (11)   FRAUD;
                      Defendants.                (12)   CONSTRUCTIVE FRAUD;
28                                               (13)   ALTER EGO;

                                        - 1 -

RC1/5092539.3/JEL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City



1

(14)   VIOLATION OF SECTION 17200, ET SEQ. OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE;

2

(15)   RESCISSION OF SECURITY TRANSACTION PURSUANT TO CALIFORNIA CORP. CODE SECTIONS 25501 AND 25401;

3

4

(16)   DAMAGES FOR SECURITIES TRANSACTION PURSUANT TO CALIFORNIA CORP. CODE SECTIONS 25501, 25401, 25504;

5

6

(17)   RESCISSION OF SALE OF SECURITIES NOT QUALIFIED FOR SALE AND RESTITUTION PURSUANT TO CALIFORNIA CORP. CODE SECTIONS 25503, 25102, 25110;

7

8

(18)   DAMAGES FOR SALE OF SECURITIES NOT QUALIFIED FOR SALE PURSUANT TO CALIFORNIA CORP. CODE SECTIONS 25503, 25102, 25110

9

10

11

**JURY TRIAL DEMANDED**

12

13

14   PLAINTIFFS STEVE TRACHSEL, an individual, SUN CITY TOWERS, LLC, a

15   California corporation, THOMAS CIRRITO, an individual, ATOCHA LAND, LLC, a Delaware

16   limited liability company, CIRRITO HOLDINGS, LLC, a Delaware limited liability company,

17   and MICHAEL CIRRITO, an individual, ("Plaintiffs"), by and through their attorneys, submit

18   their Complaint against DEFENDANTS RONALD BUCHHOLZ, CHARICE FISCHER, RDB

19   DEVELOPMENT, LLC, a Nevada limited liability company, SOLOMON CAPITAL, LLC, a

20   Nevada limited liability company, JONATHON VENTO, GRACE CAPITAL, LLC, dba GRACE

21   COMMUNITIES, an Arizona limited liability company, DONALD ZELEZNAK, Z-LOFT, LLC,

22   an Arizona limited liability company, ZELEZNAK PROPERTY MANAGEMENT, LLC dba

23   KELLER WILLIAMS REALTY, an Arizona limited liability company, KELLER WILLIAMS

24   REALTY, INC., a Texas corporation, and DOES 1-50, inclusive ("Defendants") as follows.

25                                          I.

26   **INTRODUCTION AND OVERVIEW OF THE ACTION**

27   1.        This is an unlimited civil action brought under Sections 1962(a), 1962(c), and

28

RC1/5092539.3/JEL

- 2 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   1962(d) of the Racketeer Influenced & Corrupt Organizations Act of 1970 (18 U.S.C. §§1961 et

2   seq.) ("RICO"); Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934 (17 C.F.R. §

3   240.10b-5) ("Rule 10b-5"); Section 12(a) of the Securities Act of 1933 (15 U.S.C. § 771(a))

4   ("Section 12(a)"); Section 17200 of the California Business & Professions Code; Breach of

5   Fiduciary Duty; Breach of Contract; Negligent Misrepresentation; Intentional Misrepresentation;

6   Conspiracy; Alter Ego; and California Corporations Code §§ 25401, 25501, 25503, 25110, and

7   25130.

8        2.      On information and belief, Plaintiffs allege that Defendants created a real estate

9   "Ponzi scheme" to defraud Plaintiff investors of millions of dollars of invested securities.

10  Defendants misrepresented, among other things, that they were paying fair market value for the

11  land to be purchased by Defendants with Plaintiffs' investment capital and that Plaintiffs would

12  receive a fair return on their investments.  Plaintiffs were lured into these transactions believing

13  that Defendants were paying fair market value for the land subject to the investment when

14  Defendants had, in fact, agreed and engineered a fraudulent Enterprise to purchase the land at

15  highly inflated or above-market rates in order to defraud the investors and garner ill-gotten gains

16  for the Defendants' benefit.

17       3.      Plaintiffs allege, on information belief, that Defendants' fraudulent Enterprise or

18  "Ponzi scheme" involved the "operators," SOLOMON CAPITAL, RONALD BUCHHOLZ,

19  RDB DEVELOPMENT, and CHARICE FISCHER, who raised the investment capital, the

20  "speculators," DONALD ZELEZNAK, Z-LOFT, JONATHON VENTO, and GRACE CAPITAL,

21  who purchased the land in advance in preparation for later sale to the investors at a highly inflated

22  price, and the "agent and broker" DONALD ZELEZNAK, ZELEZNAK PROPERTY

23  MANAGEMENT, and KELLER WILLIAMS REALTY, INC., who facilitated the transactions

24  and received, in some instances, 20% (twenty percent) commission rates.  The proceeds from this

25  fraudulent Enterprise were then used by Defendants to perpetrate a fraud upon other investors.

26  By this complaint, Plaintiffs seek rescission of the unqualified securities, damages, and injunctive

27  relief to enjoin Defendants from continuing to perpetrate the fraudulent Enterprise or "Ponzi

28  scheme" upon other putative investors or transferring any assets acquired therefrom.

RC1/5092539.3/JEL                          - 3 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Case 5:08-cv-02248-RMW    Document 1    Filed 04/30/2008    Page 4 of 51

## II.

### JURISDICTION AND VENUE

4.     This is an action for damages and a permanent injunction arising out of Defendants' violations of Sections 1962(a), 1962(c), and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act of 1970 (18 USC §§ 1961, et seq. ("RICO"); Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934 (17 C.F.R. § 240.10b-5) ("Rule 10b-5"); Section 12(a) of the Securities Act of 1933 (15 U.S.C. § 771(a)) ("Section 12(a)"); Section 17200 of the California Business & Professions Code; Breach of Fiduciary Duty; Breach of Contract; Negligent Misrepresentation; Intentional Misrepresentation; Conspiracy; Fraud, Constructive Fraud; Alter Ego; and California Corporations Code §§ 25401, 25501, 25503, 25110, and 25130.

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, based on the RICO, Rule 10b-5, and Section 12(a) claims in this action. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the remaining state law claims are so related to the RICO, Rule 10b-5, and Section 12(a) claims that they form a part of the same case or controversy and fall within this Court's supplemental jurisdiction.

6.     In addition, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), diversity of citizenship jurisdiction, because all Plaintiffs are citizens of different states than all Defendants, and because the amount in controversy exceeds $75,000.00.

7.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1965(a) because the Defendants transact affairs in this District; pursuant to 28 U.S.C. § 1965(b) because the ends of justice require that the parties residing in any other district be brought before this Court; pursuant to 28 U.S.C. §1291(b) because a substantial part of the events or omissions giving rise to this action occurred in this District; and/or pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants is subject to personal jurisdiction in this District.

8.     The Court has jurisdiction over Defendants RONALD BUCHHOLZ and CHARICE FISCHER because RONALD BUCHHOLZ and CHARICE FISCHER own property

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 4 -

1   in the State of California. Several of the companies they manage, including RDB

2   DEVELOPMENT and SOLOMON CAPITAL, list as their principal address 20 Great Oaks

3   Blvd., Suite 230, San Jose, California.

4       9.      This Court has jurisdiction over Defendant RDB DEVELOPMENT, LLC ("RDB

5   DEVELOPMENT") because it maintains an office or place of business in the State of California,

6   it regularly conducts business in the State of California, and it purposefully directed the activities

7   complained of herein toward residents of California and otherwise established contacts with

8   California in participating in and otherwise engaging in the Enterprise as described herein.

9       10.     This Court has jurisdiction over Defendant SOLOMON CAPITAL, LLC

10  ("SOLOMON CAPITAL") because it maintains an office or place of business in the State of

11  California, it regularly conducts business in the State of California, and it purposefully directed

12  the activities complained of herein toward residents of California and otherwise established

13  contacts with California in participating in and otherwise engaging in the Enterprise as described

14  herein.

15      11.     This Court has jurisdiction over Defendants DONALD ZELEZNAK

16  ("ZELEZNAK") and Z-LOFT, LLC ("Z-LOFT") they regularly conduct business in the State of

17  California, because ZELEZNAK owns property in the State of California, and because both

18  DONALD ZELEZNAK and Z-LOFT purposefully directed the activities complained of herein

19  toward residents of California and otherwise established contacts with California in participating

20  in and otherwise engaging in the Enterprise as described herein.

21      12.     The Court has jurisdiction over Defendants JONATHON VENTO ("VENTO")

22  and GRACE CAPITAL, LLC dba GRACE COMMUNITIES ("GRACE CAPITAL") because

23  they regularly conduct business in the State of California, because they own property in the State

24  of California, and because they purposefully directed the activities complained of herein toward

25  residents of California and otherwise established contacts with California in participating in and

26  otherwise engaging in the Enterprise as described herein.

27      13.     This Court has jurisdiction over Defendants ZELEZNAK PROPERTY

28  MANAGEMENT ("ZPM") and KELLER WILLIAMS REALTY ("KELLER WILLIAMS"),

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 5 -

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

1  because they regularly conduct business in the State of California, because they own or lease

2  property in the State of California, and purposefully directed the activities complained of herein

3  toward residents of California and otherwise established contacts with California in participating

4  in and otherwise engaging in the Enterprise as described herein, and because KELLER

5  WILLIAMS maintains multiple places of business in the State of California, is qualified to

6  conduct business in California, and regularly conducts business in the State of California.

### III.

### PARTIES

9      14.    Plaintiffs STEVE TRACHSEL is, and at all times relevant was, a citizen of

10  California. TRACHSEL is, and at all times relevant was, a resident of Santa Clara County.

11  TRACHSEL is an investor in the Solomon Towers project and/or a member of the Solomon

12  Towers limited liability company. TRACHSEL purchased the unqualified securities from

13  SOLOMON CAPITAL based on the misrepresentations discussed herein.

14      15.    Plaintiffs SUN CITY TOWERS, LLC, is, and at all times relevant was, a

15  California limited liability company, with its principal place of business in California. Said

16  corporation was an investor in the Solomon Towers project and/or a member of the Solomon

17  Towers limited liability company. Said corporation purchased the unqualified securities from

18  SOLOMON CAPITAL based on the misrepresentations discussed herein.

19      16.    Plaintiff THOMAS CIRRITO is, and at all times relevant was, a citizen of

20  Virginia. CIRRITO is, and at all times relevant was, a resident of Fairfax County, Virginia.

21  CIRRITO was an investor in the Solomon Towers project and/or a member of the Solomon

22  Towers limited liability company. CIRRITO purchased the unqualified securities from

23  SOLOMON CAPITAL based on the misrepresentations discussed herein.

24      17.    Plaintiff ATOCHA LAND, LLC, is, and at all times relevant was, a Delaware

25  limited liability company, with its principal place of business in Virginia. Said corporation was

26  an investor in the Solomon Towers project and/or a member of the Solomon Towers limited

27  liability company. Said corporation purchased the unqualified securities from SOLOMON

28  CAPITAL based on the misrepresentations discussed herein.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1       18.   Plaintiff MICHAEL CIRRITO is, and at all times relevant was, a citizen of

2   California. CIRRITO is, and at all times relevant was, a resident of Marin County, California.

3   CIRRITO was an investor in the Solomon Towers project and/or a member of the Solomon

4   Towers limited liability company. CIRRITO purchased the unqualified securities from

5   SOLOMON CAPITAL based on the misrepresentations discussed herein.

6       19.   Plaintiff CIRRITO HOLDINGS, LLC, is, and at all times relevant was, a

7   Delaware limited liability company, with its principal place of business in California. Said

8   corporation was an investor in the Solomon Towers project and/or a member in the Solomon

9   Towers limited liability corporation. Said corporation purchased the unqualified securities from

10  SOLOMON CAPITAL based on the misrepresentations discussed herein.

11      20.   Defendant SOLOMON CAPITAL is a Nevada limited liability company and

12  maintains an office at 20 Great Oaks Blvd., Suite 230, San Jose, California. SOLOMON

13  CAPITAL, in connection with Defendants RONALD BUCHHOLZ and CHARICE FISCHER,

14  was the issuer of the unqualified securities for investment procured by the Plaintiffs herein.

15      21.   On information and belief, Defendant RONALD BUCHHOLZ is, and at all times

16  relevant was, a citizen of Nevada. Defendant BUCHHOLZ, at all times relevant was, a resident

17  of Washoe County, Nevada.

18      22.   On information and belief, Defendant CHARICE FISCHER is, and at all times

19  relevant was, a citizen of Nevada. Defendant FISCHER, at all times relevant was, a resident of

20  Washoe County, Nevada.

21      23.   On information and belief, Defendant JONATHON VENTO, is, and at all times

22  relevant was, a citizen of Arizona. Defendant VENTO, at all times relevant was, a resident of

23  Maricopa County, Arizona.

24      24.   On information and belief, Defendant DONALD ZELEZNAK, is, and at all times

25  relevant was, a citizen of the State of Arizona and a resident of Washoe County, Nevada.

26      25.   Defendant Z-LOFT, LLC is an Arizona limited liability company, with its

27  principal place of business in Maricopa County, Arizona. Z-LOFT, in connection with

28  Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER,

RCL/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

1    ZELEZNAK, ZPM, VENTO, and GRACE CAPITAL materially assisted Defendants to

2    perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the purchase and sale

3    transaction for the Property for an over-inflated and above fair market value price.

4         26.    Defendant GRACE CAPITAL, LLC dba GRACE COMMUNITIES is an Arizona

5    limited liability company, with its principal place of business in Maricopa County, Arizona.

6    GRACE CAPITAL, in connection with Defendants SOLOMON CAPITAL, RDB

7    DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, Z-LOFT, ZPM, and VENTO,

8    materially assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the

9    Plaintiffs for the purchase and sale transaction for the Property for a grossly over-inflated and

10   above fair market value price.

11        27.    Defendant ZELEZNAK PROPERTY MANAGEMENT, LLC, is an Arizona

12   limited liability company, with its principal place of business at 10101 N. 92nd St., # 101,

13   Scottsdale, Maricopa County, Arizona. ZPM, in connection with Defendants SOLOMON

14   CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, Z-LOFT, VENTO,

15   and GRACE CAPITAL, was the responsible broker for the agent ZELEZNAK and materially

16   assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for

17   the purchase and sale transaction for the Property for an over-inflated and above fair market value

18   price.

19        28.    Defendants RDB DEVELOPMENT, LLC, is a limited liability company, with its

20   principal place of business at 19 Avenida Sorrento, Henderson, Clark County, Nevada. RDB

21   DEVELOPMENT, in connection with Defendants SOLOMON CAPITAL, BUCHHOLZ,

22   FISCHER, ZELEZNAK, Z-LOFT, ZPM, VENTO, and GRACE CAPITAL, materially assisted

23   Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the

24   purchase and sale transaction for the Property for an over-inflated and above fair market value

25   price. Based on information and belief, Defendants BUCHHOLZ and FISCHER diverted

26   undisclosed funds from the Solomon Towers project to RDB DEVELOPMENT for their own

27   personal use to the detriment of Plaintiffs herein.

28        29.    Defendant KELLER WILLIAMS REALTY, INC., is a Texas corporation, with its

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   principal place of business in Austin, Travis County, Texas. KELLER WILLIAMS is vicariously

2   liable for the actions of its franchise, ZPM, which materially assisted Defendants to perpetrate the

3   fraudulent Enterprise discussed herein upon the Plaintiffs for the purchase and sale transaction for

4   the Property for an over-inflated and above fair market value price. Based on information and

5   belief, Defendants BUCHHOLZ and FISCHER diverted undisclosed funds from the Solomon

6   Towers project to RDB DEVELOPMENT for their own personal use to the detriment of Plaintiffs

7   herein.

8        30.    Plaintiffs do not know the true names of Defendants DOES 1 through 50 and

9   therefore sue them by those fictitious names. Plaintiffs are informed and believe and on that basis

10  allege, that at all times mentioned in this complaint, DOES 1 through 50 were the agents and

11  employees of their co-Defendants, and in performing the acts and omissions alleged in this

12  complaint were acting within the course and scope of that agency and employment.

### IV.

### FACTUAL ALLEGATIONS

15  **A.    Defendants' Alleged Real Estate Investment Company**

16       31.    Defendants BUCHHOLZ and FISCHER are members of the Family Community

17  Church (hereinafter "Church") located at 478 Piercy Road, San Jose, California. William

18  Buchholz, who is Defendants BUCHHOLZ and FISCHER's father, is the Senior Pastor for the

19  Church.

20       32.    According to the SOLOMON CAPITAL website located at

21  http://www.solomoncap.com, BUCHHOLZ is the President of Defendant SOLOMON

22  CAPITAL. Defendant FISCHER is both a principal and the Chief Financial Officer of Defendant

23  SOLOMON CAPITAL. Based on information and belief, BUCHHOLZ, FISCHER, and

24  SOLOMON CAPITAL market and advertise themselves as experts in the context of real estate

25  investing.

26       33.    Plaintiffs allege on information and belief that SOLOMON CAPITAL is an

27  investment group associated with RDB DEVELOPMENT and Equity Enterprises, Inc.

28  Defendants BUCHHOLZ and FISCHER founded Equity Enterprises, Inc. as the predecessor to

RC1/5092539.3/JEL                              - 9 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    SOLOMON CAPITAL. BUCHHOLZ is the President of both entities. SOLOMON CAPITAL,

2    BUCHHOLZ, and FISCHER, acted as the "issuers" of the unqualified securities to the Plaintiff

3    investors.

4         34.    Defendants BUCHHOLZ, FISCHER and SOLOMON CAPTITAL derive their

5    income through investment activities on behalf of themselves and others, some of who they met

6    through their relationship with the Church. Based on information and belief, BUCHHOLZ,

7    FISCHER and SOLOMON CAPTITAL market and advertise themselves as experts in the context

8    of real estate investing.

9         35.    Based on information and belief, Defendants BUCHHOLZ' father, William

10   Buchholz, repeatedly recommended that the parishioners of his Church invest with his son and

11   daughter, Defendants BUCHHOLZ and FISCHER, and their "investment company," SOLOMON

12   CAPITAL. At times, Pastor Buchholz made statements directly to his congregation from the

13   "pulpit" encouraging them to invest with his son and daughter.

14        36.    Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL secured

15   investments from Plaintiffs in numerous different investment vehicles, including raw land

16   developments and acquisition and development projects. The investor funds were placed in

17   different positions within the project inclusive of debt and equity positions.

18        37.    In each case for each alleged investment, Defendants BUCHHOLZ, FISCHER and

19   SOLOMON CAPITAL received a "developer fee" of the amount raised and invested. Based on

20   information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL were

21   also to receive a percentage of any profit earned from the investment projects.

22        38.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

23   SOLOMON CAPITAL also took undisclosed "kick backs" from third parties in connection with

24   the purchase, sale, and alleged development of SOLOMON CAPITAL investment projects to the

25   detriment of the Plaintiff investors.

26        39.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

27   SOLOMON CAPITAL have taken approximately $330,000 in "developer fees" to date from the

28   Solomon Towers project to the detriment of the Plaintiff investors.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    40.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

2  SOLOMON CAPITAL moved or transferred the investments of the Plaintiff investors to

3  additional projects without their consent and encumbered the projects with additional debt

4  without the consent of the Plaintiff investors.

5    41.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

6  SOLOMON CAPITAL have improperly commingled the investor funds with their own and with

7  those of the other investors.

8    42.    Based on information and belief, RDB DEVELOPMENT materially assisted

9  Defendants to perpetrate the fraud and Enterprise discussed herein upon the Plaintiffs for the

10  purchase and sale transaction for the Property for an over-inflated and above fair market value

11  price.

12    43.    Based on information and belief, Defendants BUCHHOLZ and FISCHER diverted

13  undisclosed funds from the Solomon Towers project to RDB DEVELOPMENT for their own

14  personal use to the detriment of Plaintiffs herein.

15  **B.    The Solomon Towers Project**

16    44.    In or around February of 2005, SOLOMON CAPITAL presented the Solomon

17  Towers, LLC high rise condominium investment ("Solomon Towers project") opportunity to

18  Plaintiffs. The presentation consisted of an "oral" presentation with a Power Point presentation.

19  A true and correct copy of the Power Point presentation disseminated to the Plaintiff investors is

20  attached hereto as Exhibit "A" to the Complaint. Pro Forma financials were also distributed to

21  the Plaintiff investors. A true and correct copy of the Pro Forma financials distributed to the

22  Plaintiff investors is attached hereto as Exhibit "B" to the Complaint.

23    45.    Notwithstanding the Power Point presentation and the Pro Forma financials

24  described herein, no other disclosure documentation was disseminated to the Plaintiff investors

25  regarding the Solomon Towers project. There was no Private Placement Memorandum or "PPM"

26  provided to the Plaintiff investors at the presentation or anytime thereafter setting forth the

27  potential risks inherently involved in the project and the potential future loss of the entire

28  investment.

RC1/5092539.3/JEL

**COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Case 5:08-cv-02248-RMW    Document 1    Filed 04/30/2008    Page 12 of 51

46.    Defendant ZELEZNAK was present at the February 2005 meeting with potential investors, was introduced during a subsequent meeting on June 8, 2005 as a "key player," and spoke at length during that later meeting regarding the benefits of real estate investment in the Arizona market. ZELEZNAK also acted as the buyer's broker for the purchase of the Solomon Towers property.

47.    In March of 2005, the investors executed an Operating Agreement with Solomon Towers, LLC. The Operating Agreement includes 18 initial members who contributed a total of $4,169,400.00 [1]. Further, the Operating Agreement includes 13 loans made to Solomon Towers, LLC, totaling $840,600.00. Accordingly, the total payments to Solomon Towers, LLC by Plaintiffs and other investors total $5,010,000.00. A true and correct copy of the Operating Agreement is attached hereto as Exhibit "C" to the Complaint.

48.    As part of this Operating Agreement, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL, as managers of Solomon Towers, LLC, agreed, among other things, to use company funds only to further the purposes of the company, not to commingle the funds with their own or others' funds, not to knowingly perform any act that contravened the Operating Agreement or was inconsistent with the purposes of the company, and to keep accurate books and records for the company.

C.    **The Sale of Unqualified Securities**

49.    The investments sold by the Plaintiff investors qualify as "securities" pursuant to California Corporations Code § 25019. Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL qualify as the "broker-dealers" and "issuers" of the securities pursuant to California Corporations Code §§ 25004 and 25010.

50.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL have neither qualified for nor exempted themselves from qualification of the "securities" in accordance with California Corporations Code § 25110.

51.    The potential investors approached by Defendants BUCHHOLZ and FISCHER were unsophisticated real estate investors and relied upon the representations of Defendants

---

[1]    Sun City Towers, LLC contributed 4.8% and Atocha Land, LLC contributed 15.9%.

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   BUCHHOLZ and FISCHER. The risks associated with the investments were not explained to the

2   Plaintiff investors, who relied upon Defendants BUCHHOLZ, FISCHER, and SOLOMON

3   CAPITAL in making their investment decisions. The reliance of the Plaintiff investors upon the

4   representations, information and promises by Defendants BUCHHOLZ, FISCHER, and

5   SOLOMON CAPITAL was justified based upon Defendants' fiduciary role and apparent

6   experience.

7        52.    The Plaintiff investors had no say or control over their funds, the nature or types of

8   positions in which they were placed, the expenditure of the funds for development projects, or the

9   administration of the funds.

10        53.    The Plaintiff investors had no say or control over the additional investors or

11   members that were chosen by Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL

12   as their ostensible "partners" in the Solomon Towers project.

13        54.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, as the

14   principals of the company, acted as the managing members for the Solomon Towers project.

15   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, therefore, held fiduciary duty

16   obligations to the Plaintiff investors that were breached pursuant to the fraudulent Enterprise and

17   acts set forth herein.

18   **D.**   **Defendants' "Pump and Dump" Purchase of the Land Above Market Price to the**
19         **Detriment of the Plaintiff Investors**

20        55.    Soho Lofts, LLC was owned and managed by ZELEZNAK. On July 25, 2002,

21   Soho Lofts purchased property located at 625-643 N. 2nd Avenue, Phoenix, AZ (hereinafter

22   referred to as "the Property") from Core Builders, Inc. for $392,000.00. According to tax records,

23   the square footage of the Property is 28,000 square feet. Thus, the cost for this transaction was

24   $14.00 per square foot.

25        56.    On August 17, 2004, Soho Lofts, LLC changed its name to Z-LOFT, LLC.

26        57.    On April 11, 2005, Z-LOFT, in connection with GRACE CAPITAL, sold the

27   Property to SOLOMON TOWERS, LLC for $5,004,929.00. The cost per square foot for this

28   transaction was approximately $178.75 per square foot. Based on information and belief, the

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    actual market rate for the land from February to March of 2005 was approximately $33.19 per

2    square foot.

3         58.    Based on information and belief, the Plaintiff investors allege that Defendants

4    BUCHHOLZ, FISCHER, and SOLOMON CAPITAL shared in the distribution of ill-gotten gains

5    from the "pump and dump" transaction to the detriment of the Plaintiff investors.

6         59.    As the President and Chief Financial Officers of SOLOMON CAPITAL and the

7    managing partners of Solomon Towers, LLC, Defendants BUCHHOLZ, FISCHER, and

8    SOLOMON CAPITAL held fiduciary duties to the Plaintiff investors that were breached in

9    connection with the "pump and dump" transaction to the detriment of the Plaintiff investors.

10   Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL knew, or should have known,

11   that the price paid for the land was more than five times its fair market value and nearly thirteen

12   times the cost to Z-LOFT and ZELEZNAK, that the inflated purchase price benefited Defendants

13   personally to the detriment of Plaintiff investors, and constituted a breach of Defendants'

14   fiduciary duties to the Plaintiff investors.

15        60.    Based on information and belief, Plaintiffs allege that Defendants ZELEZNAK, Z-

16   LOFT, ZPM, VENTO, and GRACE CAPITAL all profited on the over-inflated and above market

17   "pump and dump" sale to the detriment of the Plaintiff investors. Defendants ZPM and

18   ZELEZNAK received a commission on the sale of the Property of $1,000,000.00 (one million

19   dollars.) This commission rate is equivalent to a 20% (twenty-percent) commission, which far

20   exceeds the prevailing market rate of 5% to 6% for sales transactions involving raw land. A true

21   and correct copy of the HUD-1 Closing Statement for the purchase and sale transaction that sets

22   forth the payment of the commission of $1,000,000.00 (one million dollars) to Defendants

23   ZELEZNAK and ZPM is attached hereto as Exhibit "D".

24        61.    The implications of this commission for the sale of the Property supports the

25   conclusion that Defendants ZPM and ZELEZNAK knowing and materially aided and assisted

26   Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT,

27   ZELEZNAK, Z-LOFT, ZPM, VENTO, and GRACE CAPITAL to perpetrate the fraudulent

28   Enterprise as discussed herein against the Plaintiffs. The implications of the over-inflated and

RCI/5092539.3/JEL                              - 14 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   above market commission for the sale of the Property from Defendants Z-LOFT, GRACE

2   CAPITAL, VENTO and ZELEZNAK to the Plaintiffs supports the conclusion that Defendants

3   BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, ZELEZNAK, Z-

4   LOFT, ZPM, VENTO, and GRACE CAPITAL knowingly and materially aided and assisted in an

5   Enterprise to perpetrate the fraud as discussed herein against the Plaintiffs.

6       62.    Based on information and belief, Defendants VENTO and GRACE CAPITAL

7   received a commission, "kick back", or distribution of the ill gotten proceeds from the "pump and

8   dump" transaction described herein and participated in the fraudulent Enterprise described herein

9   upon the Plaintiff investors to their benefit and to the detriment of the Plaintiff investors.

10      63.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

11  SOLOMON CAPITAL also profited from the over-inflated and above market "pump and dump"

12  sale to the detriment of the investors. Moreover, based on information and belief, Defendants

13  BUCHHOLZ, FISCHER, and SOLOMON CAPITAL have received "developer fees" in excess

14  of $330,000 from the amount raised and invested. Based on information and belief, Defendants

15  BUCHHOLZ, FISCHER, and SOLOMON CAPITAL were also to receive a percentage of any

16  profit earned from the investment projects.

17      64.    Based on information and belief, Defendants BUCHHOLZ, FISCHER and

18  SOLOMON CAPITAL also took undisclosed "kick backs" from third-parties in connection with

19  the purchase, sale, and alleged proposed development of the Solomon Tower investment project

20  to the detriment of the Plaintiff investors.

21      65.    Based on information and belief, on February, 1 2006, Solomon Towers, LLC

22  deeded the Property to Z-LOFT, the original seller, for de minimus consideration. Further, on

23  September 18, 2006, Solomon Towers, LLC purchased the Property from Z-LOFT for $10.00.

24  The aforementioned acts were undertaken as further attempts to disguise the fraudulent nature of

25  the Enterprise upon the Plaintiff investors.

26  **E.    Misrepresentations and Material Omissions Regarding the Sale of the Solomon
    Tower Securities at Issue By Defendants BUCHHOLZ, FISCHER, and SOLOMON
27  CAPITAL**

28      66.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

- 15 -

1    with the presentation to the Plaintiff investors regarding the Solomon Towers project (see Exhibit

2    "A"), failed to disclose the pre-existing relationship between Defendants BUCHHOLZ,

3    FISCHER, and SOLOMON CAPITAL with Defendants ZELEZNAK and VENTO and their

4    partnership entities Z-LOFT, ZPM, and GRACE CAPITAL. The failure to disclose this fact

5    constitutes a material omission since, among other reasons, the Property was purchased by

6    Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL, using the Plaintiff investors'

7    funds, from Defendants ZELEZNAK and VENTO, and/or their companies, Z-LOFT, ZPM, and

8    GRACE CAPITAL, for a vastly over-inflated price.

9        67.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

10   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

11   "A"), failed to disclose that the Property was not worth the amount that would be paid. Further,

12   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER failed to disclose that the

13   comparable square foot value for land in the area at the time of purchase was approximately

14   $33.19 per square foot, nowhere near the $178.75 per square foot amount paid by Defendants

15   BUCHHOLZ, FISCHER, and SOLOMON CAPITAL to Defendants ZELEZNAK and VENTO,

16   and/or their companies, Z-LOFT, ZPM, and GRACE CAPITAL.

17       68.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

18   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

19   "A"), failed to disclose the an accurate purchase price per square foot of the Property. According

20   to the documentation presented to the investors, the purchase price per square foot for the

21   Property was $153.05 per square foot when, in fact, the purchase price paid was $178.75 per

22   square foot paid by Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL to

23   Defendants ZELEZNAK and VENTO, and/or their companies, Z-LOFT, ZPM, and GRACE

24   CAPITAL.

25       69.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

26   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

27   "A"), failed to disclose the fact that the real estate agent and broker for the transaction,

28   ZELEZNAK and ZPM, was also the seller of the Property. Further, Defendants SOLOMON

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL

- 16 -

1  CAPITAL, BUCHHOLZ, and FISCHER did not disclose until just before closing the fact that

2  ZELEZNAK received a $1,000,000.00 commission for his role as the seller's agent for the

3  transaction. (See Exhibit "D") This commission rate is equivalent to a 20% (twenty-percent)

4  commission, which far exceeds the prevailing market rate of 5% to 6% for sales transactions

5  involving raw land.  Based on information and belief, ZELEZNAK and ZPM acted in a dual

6  agency role in connection with the purchase and sale of the Property.  Defendants ZELEZNAK

7  and ZPM's dual agency was similarly not disclosed by Defendants SOLOMON CAPITAL,

8  BUCHHOLZ, and FISCHER to the Plaintiff investors.

9        70.    Based on information and belief, Defendants SOLOMON CAPITAL,

10  BUCHHOLZ, and FISCHER, in connection with the presentation to the Plaintiff investors

11  regarding the Solomon Towers project (See Exhibit "A"), failed to disclose that ZELEZNAK and

12  VENTO, and/or their related companies Z-LOFT, ZPM, and GRACE CAPITAL, would receive a

13  distribution of the purchase and sale proceeds from the transaction.  Defendants further failed to

14  disclose:  (1) the pre-existing relationship between Defendants BUCHHOLZ, FISCHER, and

15  SOLOMON CAPITAL and Defendants VENTO and ZELEZNAK; or (2) that VENTO and

16  ZELEZNAK were involved in the GRACE CAPITAL partnership with the real estate agent for

17  the transaction, ZELEZNAK, who was also the seller of the Property.  Based on information and

18  belief, Defendant VENTO and ZELEZNAK received a distribution from the purchase and sale

19  proceeds from the transaction at issue for the Property.  Defendants ZELEZNAK and VENTO,

20  and/or their related companies Z-LOFT, ZPM, and GRACE CAPITAL materially aided

21  SOLOMON CAPITAL, BUCHHOLZ, and FISCHER within the meaning of California

22  Corporations Code Sections 25503, 25102(f), and 25110 and are, therefore, jointly and severally

23  liable to Plaintiffs pursuant to California Corporations Code Sections 25501, 25401, and 25504.

24        71.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

25  with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

26  "A"), failed to disclose that the Plaintiff investors may be subject to supplemental capital

27  obligations in the future.  To the contrary, Plaintiff investors were told that they had no obligation

28  beyond their initial investment.  The Pro Forma Finance & Investment Analysis: 10 Stories

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL

- 17 -

1   (Exhibit "A") states: "Required Equity: $5,000,000." The Plaintiff investors were informed by

2   Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL, both verbally and in writing,

3   that no further capital contribution would be "required" of them. At the time that Defendants

4   BUCHHOLZ, FISCHER, and SOLOMON CAPITAL solicited and received the investments,

5   however, Defendants were aware of the fact that the project was severely undercapitalized, in part

6   due to the diversion of Plaintiffs' investments to the purchase of the raw land at a grossly inflated

7   price that far exceeded its fair market value. Defendants failed to disclose that information to

8   Plaintiff investors.

9         72.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

10   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

11   "A"), misrepresented the actual size of the Property to the Plaintiff investors by a material

12   amount. Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER represented that the

13   parcel size for the Property was ¾ of an acre, approximately 32,670 square feet. The tax records

14   for the Property, however, clearly show that the Property is approximately 28,000 square feet,

15   over 4,000 square feet smaller than SOLOMON CAPITAL represented to the Plaintiff investors.

16         73.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

17   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

18   "A"), materially misrepresented the actual return or "profit" to the Plaintiff investors. The Pro

19   Forma Finance & Investment Analysis: 10 Stories (Exhibit "A") states: "Investor Profit: 50%."

20   To date the Plaintiff investors have received no return on investment from the Solomon Towers

21   project. To the contrary, the Plaintiff investors have been requested to make further capital call

22   contributions to the project. Further, according to pro forma financials disseminated by

23   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER on Friday, February 29, 2008,

24   the Solomon Towers project is in severe financial distress and overleveraged in amount in excess

25   of $2,400,000. (Exhibit "E")

26         74.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

27   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

28   "A"), misrepresented the zoning for the project. The Sales Pro Forma document for the Power

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 18 -

RC1/5092539.3/JEL

1    Point presentation states that the project would be for 15 stories. Based on information and

2    belief, however, the land, at the time of purchase and sale, was only zoned for 10 stories.

3        75.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

4    with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

5    "A"), misrepresented the timeline for completion of the project and return of investment capital

6    and profits to the Plaintiff investors. According to the presentation to the investors in February of

7    2005, the project would require: (1) 60 days to acquire the land, (2) 9-12 months to explore

8    project definition, and (3) 2 years for build out and marketing. Thus, according to Defendants

9    SOLOMON CAPITAL, BUCHHOLZ, and FISCHER's representations to the Plaintiff investors,

10   the Solomon Towers project would be complete and in the sales phase within 3 years and 2

11   months, or April of 2008. To date, however, construction has not begun on the project and the

12   project is in severe financial distress due to the fraudulent activities and incompetence of

13   Defendants.

14       76.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER misrepresented

15   to the Plaintiff investors that they were buying into a viable investment opportunity for a high rise

16   condominium project. The reality, however, was that Defendants BUCHHOLZ, FISCHER,

17   SOLOMON CAPITAL, RDB DEVELOPMENT, ZELEZNAK, Z-LOFT, ZPM, VENTO, and

18   GRACE CAPITAL, through the investment scheme and Enterprise, had already extracted any

19   potential profits from the potential investment for themselves through the fraudulent Enterprise.

20   The plaintiff investors were then left with a project that was not viable since it was "under water,"

21   meaning that the debt on the project so far outweighed its value that the development was not

22   financially viable.

23   F.    **Defendants' Enterprise and Distribution of Ill-Gotten Gains**

24       77.    Based on information and belief, Defendants BUCHHOLZ, FISCHER,

25   SOLOMON CAPITAL, Z-LOFT, GRACE CAPITAL, ZELEZNAK and VENTO operated an

26   investment Enterprise designed to take unfair advantage of Plaintiff investors and other investors

27   in additional investment scams.

28       78.    Based on information and belief, the Enterprise was designed in a form or fashion

- 19 -

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    in which Defendants Z-LOFT, GRACE CAPITAL, ZELEZNAK, and VENTO would purchase

2    property in less desirable areas for market rate, and then sell the property to SOLOMON

3    CAPITAL and its Plaintiff investor groups for significantly more than the market rate.

4    Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT, GRACE CAPITAL,

5    ZPM, ZELEZNAK, and VENTO would then benefit from the distribution of ill gotten gains to

6    the detriment of the Plaintiff investors.  Defendants SOLOMON CAPITAL, BUCHHOLZ,

7    FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELEZNAK, and VENTO would profit on the

8    "pump and dump" Enterprise through a "wash sale" of the land to the unsophisticated Plaintiff

9    investors and distribute the ill-gotten gains amongst the Defendants.

10    79.    Based on information and belief, Defendants KELLER WILLIAMS and

11    ZELEZNAK acted as the responsible broker and agent for the transaction at issue for the

12    Solomon Towers, LLC investment project as well as other fraudulent investment Enterprises

13    orchestrated by Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB

14    DEVELOPMENT, Z-LOFT, GRACE CAPITAL, ZELEZNAK and VENTO upon unknowing

15    and unsophisticated Plaintiff investors.

16    80.    Based on information and belief, Defendants BUCHHOLZ, FISCHER,

17    SOLOMON CAPITAL misrepresented to the Plaintiff investors that  they were buying into a

18    viable investment opportunity for a high rise condominium project.  The reality, however, was the

19    that Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, Z-

20    LOFT, GRACE CAPITAL, ZELEZNAK and VENTO through the investment scheme and

21    Enterprise, had already extracted any potential profits from the potential investment for

22    themselves through the fraudulent Enterprise.  The plaintiff investors were then left with a project

23    that was not viable since it was "under water," meaning that the debt on the project so far

24    outweighed the value that development prospects were no longer possible absent an extreme pro

25    forma or forecasted loss.

26    **G.    Police Raid the Office of SOLOMON CAPITAL to Investigate Allegations of**
      **Defendants' "Pump and Dump" Sales and Fraudulent Investment Schemes**

27

28    81.    Based on information and belief, in or around July of 2007, the offices of

RCI/5092539.3/JEL                                     - 20 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Defendants SOLOMON CAPITAL, BUCHHOLZ and FISCHER were raided by both state and

2    federal authorities in connection with a warrant to investigate allegations of defendants' "pump

3    and dump" sales and fraudulent investment schemes. The Plaintiffs' first notice of the alleged

4    fraudulent activities being conducted by the Defendants was received subsequent to the raid upon

5    SOLOMON CAPITAL by the state and federal authorities. The Plaintiffs received a letter from

6    the Office of the District Attorney postdated July 31, 2007 requesting their voluntary responses to

7    a questionnaire about SOLOMON CAPITAL, and Equity Enterprises, Inc. The letter from

8    Deputy District Attorney Michael Fitzsimmons is dated July 25, 2007. The receipt of the District

9    Attorney's correspondence was Plaintiffs' first notice that the aforementioned businesses were

10   under investigation for potential allegations of fraud.

11        82.    Based on information and belief, Defendants activities are presently under

12   investigation by the state and federal authorities in connection with Defendants' activities and the

13   Enterprise as defined and set forth herein. Based on information and belief, the pending

14   indictment has not been dismissed.

15        83.    Based on information and belief, the state and federal authorities seized the

16   contents of the offices of Defendants SOLOMON CAPITAL, BUCHHOLZ and FISCHER in

17   connection with the state and federal investigation and the pending indictment.

18                                              **V.**

19   **COUNT 1:  VIOLATION OF SECTION 1962(A) OF THE RACKETEERING
     INFLUENCED AND CORRUPT ORGANIZATION ACT OF 1970 ("RICO")**

20

21   **(Against Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB
     DEVELOPMENT, ZELEZNAK, Z-LOFT, ZPM, VENTO, GRACE CAPITAL, and DOES
     1-50)**

22        84.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 83,

23   inclusive, as though set forth fully herein.

24        85.    Defendants, and each of them, are RICO "persons," as that term is defined in 18

25   U.S.C. § 1961(3).

26        86.    For purposes of this claim for relief, the RICO "Enterprise" is an ongoing and

27   continuing association-in-fact formed for the common shared purpose of defrauding investors of

28

*(left margin, rotated)* Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL                           - 21 -

1   real estate investment funds, including but not limited to, Plaintiffs, without the consent or

2   approval of the investors, and collecting profits from these illegal activities. Plaintiffs are

3   informed and believe that Defendants, and each of them, participated in the management or

4   direction of the Enterprise.

5       87.    Based on information and belief, the specific internal corporate mechanisms and

6   operations by which Defendants carried out their fraudulent scheme, and the specific activities

7   engaged in by Defendants in furtherance of their fraudulent scheme, are within the exclusive

8   knowledge of Defendants, and DOES 1-50. To date, given the far-reaching, complex, and

9   clandestine nature of Defendants' fraudulent scheme, Plaintiffs have only been able to gather

10   limited information regarding some aspects of the fraudulent scheme.

11       88.    Based on information and belief, and at all relevant times, Defendants, and each of

12   them, violated RICO when they conducted or participated in affairs of the Enterprise through a

13   pattern of racketeering activity, by fraudulently or negligently disclosing or failing to disclose

14   material facts to investors and engaging in fraudulent land sales and transfers that involve use of

15   investor funds for purchase of land at highly inflated and above-market prices. Plaintiffs received

16   their own ill-gotten gains via the use of the U.S. mail and wires from the sale of the land

17   described herein for over-inflated values.

18       89.    Defendants and DOES 1-50, have joined together with a common, shared purpose,

19   or community of interest, with an ongoing organization structure continuing throughout the

20   period of the time alleged herein, to collectively form an Enterprise, within the meaning of 18

21   U.S.C. § 1961(4).

22       90.    Defendants and DOES 1-50 have participated in the affairs of the Enterprise, and

23   are all involved in the conduct of the Enterprise.

24       91.    Defendants and DOES 1-50 have used or caused to be used the mails and wires

25   and intrastate commerce in furtherance of their scheme and artifice to defraud purported

26   investors, including but not limited to Plaintiffs, by inducing them to place investments with that

27   were then used to purchase land at over-inflated and above-market values to allow for the

28   distribution of ill-gotten gains to Defendants herein. The acts described herein were without the

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

RCI/5092539.3/JEL

- 22 -

1   Plaintiff investors' consent and were derived by means of false and fraudulent pretenses, or

2   representations, in violation of 18 U.S.C. §§ 1341 and 1343.  Defendants herein used negotiable

3   instruments, mails, and wires in furtherance of their fraudulent scheme.

4       92.  Defendants and DOES 1-50 were fully aware, or should have been aware, that the

5   investors had not consented to the distribution of ill-gotten gains to Defendants herein arising

6   from the purchase and sale of land and property for over-inflated and above-market rates for the

7   benefit of Defendants herein.  Defendants herein continue their participation in the fraudulent

8   scheme with this knowledge.

9       93.  The acts of Defendants and DOES 1-50 in defrauding Plaintiffs have been ongoing

10   since at least February 2005 and continue to date.

11       94.  Defendants and DOES 1-50 defrauded Plaintiffs by luring them to place

12   investments in various real estate companies owned or operated by the Defendants, and used

13   these investments to purchase land and/or property for over-inflated and above-market values

14   while Defendants simultaneously defrauded Plaintiffs by benefiting from the over-inflated and

15   above-market land sales.  The specifics of the transactions at issue were never disclosed to

16   Plaintiffs, and Plaintiffs had no knowledge of the same.

17       95.  On information and belief, there is evidence establishing a sophisticated pattern of

18   fraud perpetrated by the Defendants in which the Defendants herein baited Plaintiffs (and on

19   information and belief, over 250 additional potential investors) with the prospect of high

20   investment returns, and then failed to deliver the promised returns, instead using fraudulent land

21   transfers to derive ill-gotten gains from Plaintiffs' investments without their authority,

22   knowledge, or consent, thereby leaving Plaintiffs and other purported investors without the

23   promised returns or land values to cover their investments.

24       96.  The fraud perpetrated by Defendants and DOES 1-50 utilizing the tactics described

25   herein, in connection with their multiple dealings with Plaintiffs over the span of three to four

26   years and their active concealment of their activities was furthered by Defendants' and DOES 1-

27   50's use of the mails and wires, constitutes a pattern of racketeering activity within the meaning

28   of U.S.C. § 1961(5).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 23 -

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Case 5:08-cv-02248-RMW    Document 1    Filed 04/30/2008    Page 24 of 51

97.    The Enterprise alleged herein was, at all times mentioned herein, engaged in activities which affect intrastate commerce.

98.    Defendants and DOES 1-50 have received income derived from their participation in the pattern of racketeering activities alleged herein. That income consisted of the activities derived by the Defendants over-inflated and above-market property transfers wherein Defendants would defraud the Plaintiff investors of their investments. On information and belief, Defendants obtained income from other putative investors consisting of over $1,000,000.00 of investment capital.

99.    Based on information and belief, this income, which Defendants herein have received from their participation and racketeering activities, and the participation in the Enterprise, has been used or invested in the operations of the Enterprise.

100.    On information and belief, Defendants used the proceeds from their racketeering activity to further fund and operate Enterprises under Defendants' name. The Enterprises were entitled, but not limited to, SOLOMON CAPITAL, Z-LOFT, ZPM, GRACE CAPITAL, and RDB DEVELOPMENT. These entities were used to further operate "bait and switch" operations of Defendants' racketeering activity.

101.    Defendants' use of an investment of such income is a cause of Plaintiffs' injuries, and Plaintiffs were injured by reason of Defendants' use of an investment of, such income arising from Defendants' wrongful acts of defrauding Plaintiffs through the purchase and sale of property at over-inflated and above-market rates.

102.    As a result of the alleged acts and activities of Defendants and DOES 1-50, Plaintiffs have been injured in their business and property. Plaintiffs have incurred and continue to incur legal fees and costs for the prosecution of the instant matter in an attempt to recoup their investment capital. These amounts include interest and costs to recover Plaintiffs' losses and any potential judgments against Defendants in the pending lawsuit.

103.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three times their actual damages, plus attorneys' fees and costs.

///

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## VI.

### COUNT 2:  VIOLATION OF SECTION 1962(C) OF THE RICO ACT

**(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELEZNAK, VENTO, RDB DEVELOPMENT and DOES 1-50)**

104.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 103, inclusive, as though fully set forth herein.

105.   Defendants and DOES 1-50 were and are employed by, or associated with the Enterprise.  Furthermore, Defendants have participated in the conduct of the affairs of the Enterprise.

106.   Defendants and DOES 1-50 have participated in the conduct of the affairs of the Enterprise by leading, running, managing, and/or directing the affairs of the Enterprise by initiating and formulating the process by which Defendants herein would bait Plaintiffs and other potential investors by offering them investments in which Plaintiffs were informed that they would receive a rate of return on the investments that were later subject to fraud by Defendants' over-inflated and above-market property transactions and sales that were operated to defraud Plaintiffs of their investment and provide Defendants with ill-gotten gains from the property transfers and/or sale.  Defendants knew, or should have known, that their representations to Plaintiffs in that regard were false and fraudulent.

107.   Defendants and DOES 1-50 have participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  On information and belief, there is evidence indicating a sophisticated pattern of fraud by Defendants in which the Defendants induced the Plaintiff investors to invest with SOLOMON CAPITAL, who in turn purchased land and/or property from Defendants for over-inflated and above-market prices in order to allow for Defendants to share in the profits from the sales and to garner ill-gotten gains from Plaintiffs' investments through the perpetration of fraud.

108.   As a result of the alleged acts and activities of Defendants and DOES 1-50, Plaintiffs have been injured in their business and property.  Plaintiffs have been defrauded of their investment capital.  Further, Plaintiffs have incurred and continue to incur legal fees and costs for

- 25 -

RC1/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Case 5:08-cv-02248-RMW    Document 1    Filed 04/30/2008    Page 26 of 51

1    the prosecution of this matter.

2        109.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three times their

3    actual damages plus attorneys' fees and costs.

**VII.**

**COUNT 3:  VIOLATION OF SECTION 1962(D) OF THE RICO ACT**

**(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELEZNAK, VENTO, RDB DEVELOPMENT, KELLER WILLIAMS, and DOES 1-50)**

8        110.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 109,

9    inclusive, as though fully set forth herein.

10        111.    Defendants and DOES 1-50 have conspired between themselves to use or invest

11    the proceeds from their activities to either acquire an interest in, or establish, or operate an

12    Enterprise, the activities of which affect interests of intrastate commerce.

13        112.    Defendants and DOES 1-50 participated in the conduct of the affairs of the

14    Enterprise by leading, running, managing, and/or directing the affairs of the Enterprise by

15    initiating and/or formulating the process by which Defendants would bait Plaintiffs and other

16    purported investors by offering them investments with a proffered rate of return.  On information

17    and belief, Defendants would then engage in the purchase and/or sale of land for over-inflated or

18    above-market rates in order to defraud the investors of their investment capital to Defendants'

19    benefit.  Defendants knew that their representations and/or misrepresentations in that regard were

20    false and fraudulent.

21        113.    The conduct of Defendants outlined above further evidences and satisfies the

22    Enterprise prong of 18 U.S.C. § 1962(a) of a RICO cause of action.  The proceeds from this

23    activity were then used to further the same racketeering activities and establish and operate

24    further racketeering activities of the Enterprise under 18 U.S.C. § 1962(a) of a RICO cause of

25    action.

26        114.    Plaintiffs are informed and believe, and on that basis allege, that Plaintiffs agreed

27    to invest, and did invest, investments with Defendants based upon Defendants' representations

28    and misrepresentations that they were paying fair market value for the land to be purchased by

RCI/5092539.3/JEL                                         - 26 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Defendants and that Plaintiffs would receive a rate of return on their investments. Plaintiffs were

2    lured into transactions believing that Defendants were paying fair market value for the land

3    subject to the investment when Defendants had, in fact, agreed and engineered an Enterprise to

4    purchase the land at highly inflated or above-market rates in order to defraud the investors and

5    garner ill-gotten gains for the Defendants' benefit. The proceeds from this wrongful activity were

6    then used by Defendants to further the same racketeering activity evidenced herein. The use of

7    proceeds from earlier racketeering activity to further establish and operate Defendants' ongoing

8    racketeering activities satisfies the requirements of an Enterprise under 18 U.S.C. § 1962(a).

9        115.    As a result of the alleged acts and activities of Defendants and DOES 1-50,

10   Plaintiffs have been injured in their business and property. Plaintiffs have incurred and continue

11   to incur legal fees and costs for the prosecution of this matter.

12       116.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three times their

13   actual damages, plus attorneys' fees and costs.

14                                         **VIII.**

15   **COUNT 4:  VIOLATION OF SECTION 10B AND RULE 10B-5 OF THE 1934 ACT**

16   **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT,
     GRACE CAPITAL, ZPM, ZELEZNAK, VENTO, RDB DEVELOPMENT, KELLER**

17   **WILLIAMS, and DOES 1-50)**

18       117.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 116,

19   inclusive, as though fully set forth herein.

20       118.    Defendants engaged in a scheme to secure money from investors and purchase

21   land at highly inflated or above-market rates and disseminated or approved the false statements

22   specified above, which they knew or recklessly disregarded were misleading in that they

23   contained misrepresentations and failed to disclose material facts necessary in order to make the

24   statements made, in light of the circumstances under which they were made, not misleading.

25       119.    Defendants violated §10(b) and Rule 10b-5 of the 1934 Act in that they:

26       (a)    Employed devices, schemes and artifices to defraud Plaintiffs;

27   / / /

28   / / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1      (b)    Made untrue statements of material facts or omitted to state material facts

2 necessary in order to make the statements made, in light of the circumstances under which they

3 were made, not misleading; or

4      (c)    Engaged in acts, practices and a course of business that operated as a fraud or

5 deceit upon Plaintiffs with Defendants' purchases of land at highly inflated or above-market rates

6 using investor funds.

7     120.    Plaintiffs have suffered damages in that, in reliance on Defendants'

8 representations, their investments were used to pay an artificially inflated or above-market price

9 for the Solomon Towers Property. Plaintiffs would not have invested in the Property at the rate

10 presented, or at all, if they had been aware that the purchase price for the land had been

11 artificially and falsely inflated as part of Defendants' scheme.

12     121.    As a direct and proximate result of Defendants' violation of §10(b) and Rule 10b-5

13 of the 1934 Act, Plaintiffs have been injured in their business and property. Portions of Plaintiffs'

14 investments have been transferred to the Defendants or third parties in the form of wrongfully

15 earned sales prices for land purchased at over inflated or above-market values, commissions on

16 the land sales, closing fees and costs, and development costs on over-encumbered land. Plaintiffs

17 have incurred and continue to incur legal fees and costs to recover such losses and any potential

18 judgments against Defendants in the pending lawsuits.

19                                         **IX.**

20     **COUNT 5: VIOLATION OF SECTION 12(A) OF THE 1933 ACT**

21     **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELENAK, VENTO, RDB DEVELOPMENT, KELLER**

22     **WILLIAMS, and DOES 1-50)**

23     122.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 121

24 inclusive, as though set forth fully herein.

25     123.    Defendants violated 15 U.S.C. § 771 in that they:

26     (a)    Offered to sell a security by oral communication; and,

27     (b)    Made untrue statements of material facts and omitted to state material facts

28 necessary in order to make the statements made, in light of the circumstances under which they

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    were made, not misleading.

2        124.    Plaintiffs suffered damages in that, in reliance on the statements of Defendants,

3    Plaintiffs' investment funds were used to pay a highly inflated or above-market price for the

4    Property. Plaintiffs would not have invested in the Property at the rate presented, or at all, if they

5    had been aware that the purchase price for the land had been artificially and falsely inflated as

6    part of Defendants' scheme.

7        125.    As a direct and proximate result of Defendants' violation of §12(a) of the 1933

8    Act, Plaintiffs have been injured in their business and property. Portions of Plaintiffs'

9    investments have been transferred to the Defendants or third parties in the form of wrongfully

10   earned sales prices for land purchased at over inflated or above-market values, commissions on

11   the land sales, closing fees and costs, and development costs on over-encumbered land. Plaintiffs

12   have incurred and continue to incur legal fees and costs to recover such losses and any potential

13   judgments against Defendants in the pending lawsuits. As a direct and proximate result of

14   Defendants' wrongful conduct, Plaintiffs are entitled to restitution of all monies invested with

15   Solomon Capital, with interest thereon.

16                                          **X.**

17   **COUNT 6:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE**
                          **SECTION 17200, ET SEQ.**

18   **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT,**
19   **GRACE CAPITAL, ZPM, ZELENAK, VENTO, RDB DEVELOPMENT, KELLER**
                    **WILLIAMS, and DOES 1-50)**

20

21       126.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 125

22   inclusive, as though set forth fully herein.

23       127.    The acts, omissions, misrepresentations, practices, and non-disclosures of

24   Defendants and DOES 1-50 as alleged herein constituted unlawful, unfair, and fraudulent

25   business acts and practices within the meaning of California Business and Professions Code §

26   17200, et seq.

27       128.    Plaintiffs agreed to invest, and in fact did invest with Defendants based upon

28   Defendants' representations and misrepresentations that they were paying fair market value for

RC1/5092539.3/JEL                                    - 29 -
COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  the land to be purchased by Defendants and that Plaintiffs would receive a rate of return on their

2  investments. Plaintiffs were lured into transactions believing that Defendants were paying fair

3  market value for the land subject to the investment when Defendants had, in fact, agreed and

4  engineered to purchase the land at highly inflated or above-market rates in order to defraud the

5  investors and garner ill-gotten gains for the Defendants' benefit. The proceeds from this

6  wrongful activity were then used by Defendants to continue to perpetrate the fraud upon other

7  investors. Defendants' deception constitutes a fraudulent business practice under the California

8  Unfair Competition Law in that Defendants failed to disclose these fraudulent practices to

9  investors prior to investment.

10      129.   As a result of the foregoing, pursuant to California Business & Professions Code

11  §17203, Plaintiffs seek an Order of this Court requiring Defendants to immediately cease such

12  acts of unfair competition and enjoining Defendants from continuing to take investments from

13  investors. Plaintiffs additionally request an Order of this Court requiring the payment or return of

14  any monies wrongfully acquired, saved, or retained by Defendants by means of such acts of

15  unfair competition so as to restore to Plaintiffs any and all monies which were acquired and

16  obtained by means of such acts of unfair competition and/or as may be necessary to prevent the

17  use or employment of any practices which constitutes unfair competition, as well as imposing an

18  asset freeze or a constructive trust over such monies.

19      130.   Therefore, Plaintiffs seek an Order of this Court for all appropriate available

20  remedies under California Business & Professions Code §17203.

21                              **XI.**

22              **COUNT 7: BREACH OF FIDUCIARY DUTY**

23  **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER and DOES 1-50)**

24      131.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 130

25  inclusive, as though set forth fully herein.

26      132.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER had a special

27  relationship with Plaintiffs, in that Defendants assumed a fiduciary position in relation to the

28  investors as investment advisers, trustees of the accounts, and managing partners of projects,

RCI/5092539.3/JEL                              - 30 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    ventures, and the limited liability company. As such, Defendants were fiduciaries as to Plaintiffs.

2    Defendants breached their fiduciary duty to Plaintiffs by failing to make full disclosure of all

3    material facts concerning the transactions that might have affected Plaintiffs' investment

4    decisions. The Plaintiffs' losses were caused by and have resulted directly from the action,

5    misrepresentations, and omissions of Defendants.

6         133.    As fiduciaries, Defendants owed a duty of utmost care, integrity, honesty and

7    loyalty toward Plaintiffs. Defendants breached their fiduciary duty to Plaintiffs by, among other

8    things, misrepresenting that Defendants were paying fair market value for the land to be

9    purchased by Defendants and that Plaintiffs would receive a rate of return on their investments.

10   Plaintiffs were lured into transactions believing that Defendants were paying fair market value for

11   the land subject to the investment when Defendants had, in fact, agreed and engineered to

12   purchase the land at highly inflated or above-market rates in order to defraud the investors and

13   garner ill-gotten gains for the Defendants' benefit. The proceeds from this wrongful activity were

14   then used by Defendants to continue to perpetrate the fraud upon other investors.

15        134.    As a direct and proximate result of the breach of fiduciary duty by Defendants,

16   Plaintiffs have been injured in their business and property. Portions of Plaintiffs' investments

17   have been transferred to the Defendants or third parties in the form of wrongfully earned sales

18   prices for land purchased at over inflated or above-market values, commissions on the land sales,

19   closing fees and costs, and development costs on over-encumbered land. Plaintiffs have incurred

20   and continue to incur legal fees and costs to recover such losses and any potential judgments

21   against Defendants in the pending lawsuits.

22        135.    The Defendants' conduct as described above, involved malice, oppression and

23   fraud, and such conduct was clearly despicable. Such despicable and fraudulent conduct was

24   plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

25   ratified by them, and by the Defendant corporation, SOLOMON CAPITAL. Accordingly, the

26   Court should assess punitive damages against these Defendants.

27   ///

28   ///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

## XII.

## COUNT 8:  BREACH OF CONTRACT

### (Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER and DOES 1-50)

136.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 135 inclusive, as though set forth fully herein.

137.    In or about March 2005, Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER entered into an Operating Agreement with Plaintiffs.  A true and correct copy of the Operating Agreement is attached hereto as Exhibit "C" to the Complaint.

138.    As part of this Operating Agreement, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL, as managers of Solomon Towers, LLC, agreed, among other things, to use company funds only to further the purposes of the company (Section 3.3), not to commingle the funds with their own or others' funds (Sections 3.3, 4.6, and 9.2), not to knowingly perform any act that contravened the Operating Agreement or was inconsistent with the purposes of the company (Section 4.6), and to keep accurate books and records for the company (Section 9.1).

139.    Defendants breached this Operating Agreement with Plaintiffs by, among other things, commingling the company's funds with their own, and using the funds for things other than those in furtherance of the purposes of the company, such as a one million dollar commission payment to Defendants' real estate broker, Defendant ZELEZNAK (who was also the owner of the land being purchased).  In addition, Defendants concealed this commingling and misuse of investor funds by keeping inaccurate or incomplete financial books and records.  As a result, Plaintiffs were lured into transactions believing that Defendants were paying fair market value for the land subject to the investment when Defendants had, in fact, agreed and engineered to purchase the land at highly inflated or above-market rates in order to defraud the investors and garner ill-gotten gains for the Defendants' benefit.  The proceeds from this wrongful activity were then used by Defendants to continue to perpetrate the fraud upon other investors.

140.    As a direct and proximate result of the breach of the Operating Agreement by Defendants, Plaintiffs have been injured in their business and property.  Portions of Plaintiffs' investments have been transferred to the Defendants or third parties in the form of wrongfully

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   earned sales prices for land purchased at over inflated or above-market values, commissions on

2   the land sales, closing fees and costs, and development costs on over-encumbered land. Plaintiffs

3   have incurred and continue to incur legal fees and costs to recover such losses and any potential

4   judgments against Defendants in the pending lawsuits.

5       141.    The Defendants' conduct as described above, involved malice, oppression and

6   fraud, and such conduct was clearly despicable. Such despicable and fraudulent conduct was

7   plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

8   ratified by them, and by the Defendant corporation, SOLOMON CAPITAL. Accordingly, the

9   Court should assess punitive damages against these Defendants.

10              **XIII.**

11      **COUNT 9: NEGLIGENT MISREPRESENTATION**

12  **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, and DOES 1-50)**

13      142.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 141,

14  inclusive, as though set forth fully herein.

15      143.    Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER and through their

16  agents, officers, directors, and employees, represented and promised Plaintiffs that Defendants

17  were paying fair market value for the land to be purchased by Defendants and that Plaintiffs

18  would receive a rate of return on their investments. Plaintiffs were lured into transactions

19  believing that Defendants were paying fair market value for the land subject to the investment

20  when Defendants had, in fact, agreed and engineered to purchase the land at highly inflated or

21  above-market rates in order to defraud the investors and garner ill-gotten gains for the

22  Defendants' benefit. The proceeds from this wrongful activity were then used by Defendants to

23  continue to perpetrate the fraud upon other investors.

24      144.    Defendants made these misrepresentations to induce Plaintiffs into purchasing the

25  subject investments and securities from the company Defendants.

26      145.    At the time the Defendants made these written and oral misrepresentations,

27  Defendants knew or should have known that they were not true. Defendants knew or should have

28  known that they could not fulfill these promises.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RCI/5092539.3/JEL

- 33 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

1      146.    Plaintiffs relied upon these written and oral statements in purchasing the

2  investments and securities, without any knowledge Defendants had, in fact, agreed and

3  engineered to purchase the land at highly inflated or above-market rates in order to defraud the

4  investors and garner ill-gotten gains for the Defendants' benefit. Had Plaintiffs known the truth,

5  Plaintiffs would never have purchased the investments and securities from Defendants.

6      147.    As a direct and proximate result of the breach of fiduciary duty by Defendants,

7  Plaintiffs have been injured in their business and property. Portions of Plaintiffs' investments

8  have been transferred to the Defendants or third parties in the form of wrongfully earned sales

9  prices for land purchased at over inflated or above-market values, commissions on the land sales,

10  closing fees and costs, development costs on over-encumbered land. Plaintiffs have incurred and

11  continue to incur legal fees and costs to recover such losses and any potential judgments against

12  Defendants in the pending lawsuits.

13      148.    The Defendants' conduct as described above, involved malice, oppression and

14  fraud, and such conduct was clearly despicable. Such despicable and fraudulent conduct was

15  plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

16  ratified by them, and by the Defendant corporation, SOLOMON CAPITAL. Accordingly, the

17  Court should assess punitive damages against these Defendants.

18                                    **XIV.**

19                **COUNT 10:  INTENTIONAL MISREPRESENTATION**

20      **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, and DOES 1-50)**

21      149.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 148,

22  inclusive, as though fully set forth herein.

23      150.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, through their

24  agents, officers, directors, and employees, represented and promised Plaintiffs that Defendants

25  were paying fair market value for the land to be purchased by Defendants and that Plaintiffs

26  would receive a rate of return on their investments. Plaintiffs were lured into transactions

27  believing that Defendants were paying fair market value for the land subject to the investment

28  when Defendants had, in fact, agreed and engineered to purchase the land at highly inflated or

RC1/5092539.3/JEL                          - 34 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  above-market rates in order to defraud the investors and garner ill-gotten gains for the

2  Defendants' benefit. The proceeds from this wrongful activity were then used by Defendants to

3  continue to perpetrate the fraud upon other investors.

4    151.  At the time that the Defendants made these written and oral representations to

5  Plaintiffs, they knew that they were not true. Defendants in fact had no intention of fulfilling

6  these promises and instead used this deception to trick Plaintiffs into purchasing investments and

7  securities when Defendants had no intention of purchasing land at fair market value for the

8  benefit of the Plaintiff investor. Instead, Defendants intended to and did purchase overly inflated

9  land at above market rates, in order to defraud the investors and garner ill-gotten gains for the

10  Defendants' benefit. Certain proceeds from this wrongful activity were then used by Defendants

11  to continue to perpetrate the fraud upon other investors.

12    152.  Plaintiffs relied upon these written and oral statements in purchasing the

13  investments and securities, without any knowledge that Defendants intended to and did purchase

14  overly inflated land at above market rates, in order to defraud the investors and garner ill-gotten

15  gains for the Defendants' benefit. Had Plaintiffs known the truth, Plaintiffs would never have

16  purchased the investments and securities for any purpose whatsoever.

17    153.  As a direct and proximate result of the breach of fiduciary duty by Defendants,

18  Plaintiffs have been injured in their business and property. Portions of Plaintiffs' investments

19  have been transferred to the Defendants or third parties in the form of wrongfully earned sales

20  prices for land purchased at over inflated or above-market values, commissions on the land sales,

21  closing fees and costs, development costs on over-encumbered land. Plaintiffs have incurred and

22  continue to incur legal fees and costs to recover such losses and any potential judgments against

23  Defendants in the pending lawsuits.

24    154.  The Defendants' conduct as described above, involved malice, oppression and

25  fraud, and such conduct was clearly despicable. Such despicable and fraudulent conduct was

26  plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

27  ratified by them, and by the Defendant corporation, SOLOMON CAPITAL. Accordingly, the

28  Court should assess punitive damages against these Defendants.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL

- 35 -

XV.

**COUNT 11:  CONSPIRACY**

**(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELEZNAK, VENTO, RDB DEVELOPMENT, KELLER WILLIAMS, and DOES 1-50)**

155.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 154 inclusive, as though set forth fully herein.

156.    On information and belief, at least as early as February 2005, and perhaps earlier, Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to sell real property to the Plaintiff investors for prices significantly over market value while promising fair returns on the investment, then to collect profits from the investments, leaving the properties severely undercapitalized, and leaving the investors with no return on their investment.

157.    Defendants' "Ponzi scheme" involved the "operators," SOLOMON CAPITAL, RONALD BUCHHOLZ, and CHARICE FISCHER that raised the investment capital, the "speculators," DONALD ZELEZNAK, Z-LOFT, LLC, JONATHON VENTO, and GRACE CAPITAL, that purchased the land in advance in preparation for later sale to the investors at a highly inflated price, and the "agent and broker" DONALD ZELEZNAK, KELLER WILLIAMS dba ZELEZNAK PROPERTY MANAGEMENT ("ZPM"), and KELLER WILLIAMS REALTY, INC. ("KELLER WILLIAMS"), that facilitated the transactions and received, in some instances, 20% (twenty percent) commission rates.  The proceeds from this fraudulent Enterprise were then used by Defendants to perpetrate a fraud upon other investors.

158.    Defendants SOLOMON CAPITAL, RONALD BUCHHOLZ, and CHARICE FISCHER did the acts and things alleged herein pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

159.    Defendants DONALD ZELEZNAK, Z-LOFT, ZPM, LLC, JONATHON VENTO, and GRACE CAPITAL, LLC dba GRACE COMMUNITIES furthered the conspiracy by purchasing the Property in advance and offering it for investment.

160.    Defendants DONALD ZELEZNAK, ZPM, and KELLER WILLIAMS furthered the conspiracy by acting as the agent and broker in the transaction.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL

- 36 -

1    161.   Plaintiffs are informed and believe and thereon allege that the last overt act in

2    pursuance of the above-described conspiracy occurred in or about June of 2006, when the

3    Defendants sought additional capital from Plaintiffs for the Property.

4    162.   Plaintiffs did not have knowledge of the above-described conspiracy at the time it

5    was taking place. Plaintiffs could not have discovered the above-described conspiracy in the

6    exercise of reasonable diligence because Plaintiffs were not sophisticated investors, because

7    Plaintiffs relied on Defendants upholding their fiduciary duty to Plaintiffs, and because

8    Defendants concealed their activities between several parties and fictional entities. Plaintiffs

9    actually discovered the above-described conspiracy in or about July 2007, when they were

10   contacted by the Santa Clara County District Attorney's office relative to its investigation of

11   Defendants' activities.

12   163.   As a proximate result of the wrongful acts herein alleged, Plaintiffs have been

13   generally damaged through the loss of their initial investments, as well as subsequent capital

14   contributions.

15   164.   In doing the acts and things alleged herein, Defendants acted with malice and

16   fraud as defined in Cal. Civil Code section 3294(c) in that they acted willfully and with intent to

17   cause injury to the Plaintiffs and in conscious disregard of Plaintiffs' rights. Accordingly, the

18   Court should assess punitive damages against these Defendants.

19                                            XVI.

20                          **COUNT 12: ALTER EGO**

21       **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, RDB
                      DEVELOPMENT and DOES 1-50)**

22

23   165.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 164

24   inclusive, as though fully set forth herein.

25   166.   On information and belief, there exists, and at all times herein mentioned there

26   existed, a unity of interest and ownership between Defendants SOLOMON CAPITAL, RDB

27   DEVELOPMENT, BUCHHOLZ, and FISCHER, such that any individuality and separateness

28   between Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, and

RC1/5092539.3/JEL                          - 37 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   FISCHER has ceased, and Defendants SOLOMON CAPITAL and RDB DEVELOPMENT are

2   the alter ego of Defendants BUCHHOLZ and FISCHER. Defendants BUCHHOLZ and

3   FISCHER used assets of the corporations for their personal uses, caused assets of the corporations

4   to be transferred to them without adequate consideration, undercapitalized the corporate

5   investments, and withdrew funds from the corporation's bank accounts for their own personal

6   use. Defendants BUCHHOLZ and FISCHER used funds from SOLOMON CAPITAL, in

7   connection with RDB DEVELOPMENT for their own personal residences and vehicles and/or

8   applied funds from SOLOMON CAPITAL accounts in furtherance of Defendants' fraudulent

9   Enterprise, as described herein.

10          167.    On information and belief, Defendants SOLOMON CAPITAL and RDB

11   DEVELOPMENT are, and at all times herein mentioned were, mere shells, instrumentalities, and

12   conduits through which Defendants BUCHHOLZ and FISCHER carried on their fraudulent

13   investment business in the corporate name, exercising complete control and dominance of such

14   businesses to such an extent that any individuality or separateness of Defendants SOLOMON

15   CAPTIAL and RDB DEVELOPMENT and Defendants BUCHHOLZ and FISCHER does not,

16   and at all times herein mentioned did not, exist.

17          168.    Therefore, Plaintiffs request that this Court disregard the corporate formalities of

18   Defendants SOLOMON CAPTIAL and RDB DEVELOPMENT and treat them as the alter egos

19   of Defendants BUCHHOLZ and FISCHER.

20                                          **XVII.**

21                               **COUNT 13: FRAUD**

22   **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, RDB
     DEVELOPMENT, and DOES 1-50)**

23

24          169.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 168

25   inclusive, as though fully set forth herein.

26          170.    Defendants failed to disclose the facts alleged herein, all of which were within

27   their knowledge at the time that Plaintiffs rendered their investments. Defendants made false and

28   misleading representations to Plaintiffs concerning the fair market value of the Property as

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL                           - 38 -

1  alleged herein, and the fact that Defendants and those involved in the Enterprise would benefit in

2  a manner undisclosed to Plaintiffs. Defendants took affirmative actions in order to prevent

3  Plaintiffs from discovering the value of the Property, including, but not limited to,

4  misrepresentations by omission of material facts regarding the value of the Property at the time of

5  purchase, and the fact that the Property was being purchased from known associates of

6  Defendants, namely Defendants ZELEZNAK and VENTO, and/or their related companies, ZPM,

7  Z-LOFT, or GRACE CAPITAL.

8      171.    Defendants knew that the representations alleged herein were false and misleading

9  at the time they were made.

10     172.    Defendants made the aforesaid representations with an intent to defraud and

11  intentionally mislead Plaintiffs, and to induce Plaintiffs to act in reliance on these representations,

12  including causing Plaintiffs to place investments with Defendants for the purchase of the

13  Property.

14     173.    Plaintiffs were unaware of the falsity and intentionally misleading nature of the

15  aforementioned representations, including, but not limited to the misrepresentations by omission

16  of material facts, and justifiably acted in reliance upon the aforesaid representations. Plaintiffs'

17  reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with

18  Plaintiffs and Plaintiffs, therefore, had a responsibility to fully disclose all information concering

19  the Solomon Towers project to Plaintiffs in a full and truthful manner.

20     174.    As a direct and proximate result of Defendants' false and intentionally misleading

21  representations and concealment of the facts as alleged herein, Plaintiffs have been damaged and

22  are entitled to compensation in an amount to be determined according to proof. Such damages

23  include, but are not limited to, the loss of investment obtained by fraud and loss of interest on the

24  investment capital.

25     175.    Furthermore, as a result of Defendant's intentionally false and misleading

26  representations, Plaintiffs are entitled to exemplary and punitive damages.

27  / / /

28  / / /

RCI/5092539.3/JEL

- 39 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

XVIII.

## COUNT 14: CONSTRUCTIVE FRAUD

### (Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER RDB DEVELOPMENT, and DOES 1-50)

176.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 175 inclusive, as though fully set forth herein.

177.    In their respective roles as the issuers of the unqualified securities and as the managing members of Solomon Towers, LLC and the Solomon Towers project, Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER individually and collectively owed to Plaintiff certain duties to make the fullest disclosure of all material facts that might affect Plaintiffs' decision to provide money to SOLOMON CAPITAL, BUCHHOLZ, and FISCHER for use in the Solomon Towers project.

178.    Defendants failed to disclose the facts alleged herein, all of which were within their knowledge at the time that Plaintiffs rendered their investments.  Defendants made false and misleading representations to Plaintiffs concerning the fair market value of the Property as alleged herein, and the fact that Defendants and those involved in the Enterprise would benefit in a manner undisclosed to Plaintiffs.  Defendants took affirmative actions in order to prevent Plaintiffs from discovering the value of the Solomon Towers project and the Property, including, but not limited to, misrepresentations by omission of material facts regarding the value of the Solomon Towers project and the Property at the time of purchase, and the fact that the Solomon Towers project and the Property were being purchased from known associates of Defendants, namely Defendants ZELEZNAK and VENTO, and/or their related companies, ZPM, Z-LOFT, or GRACE CAPITAL.

179.    Plaintiffs were unaware of the falsity and intentionally misleading nature of the aforementioned representations, including, but not limited to the misrepresentations by omission of material facts, and justifiably acted in reliance upon the aforesaid representations. Plaintiffs' reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with Plaintiffs. Defendants, therefore, had a responsibility to fully disclose all information concerning

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 40 -

RCI/5092539.3/JEL

1    the Solomon Towers project to Plaintiffs in a full and truthful manner.

2        180.    At all times mentioned herein, Plaintiffs were unaware of the existence of the

3    aforementioned material misrepresentations and omissions of material fact regarding the Solomon

4    Towers project and Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER's use of

5    the monies conveyed to Defendants for the Solomon Towers project.

6        181.    As a result of Defendants' failure to make full disclosure of material facts as well

7    as Defendants' misrepresentation of material facts that might have affected Plaintiffs' decision to

8    provide money to Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER for use in the

9    Solomon Towers project, Plaintiffs did, in fact, transfer the funds to Defendants SOLOMON

10   CAPITAL, BUCHHOLZ, and FISCHER and have been damaged and are now entitled to

11   compensation in an amount to be determined according to proof. Such damages include, but are

12   not limited to, actual damages, interest thereon, punitive damages, attorney's fees, and other

13   damages according to proof.

## XIX.

### COUNT 15: RESCISSION BASED ON MATERIAL MISREPRESENTATION AND SECURITIES TRANSACTION PURSUANT TO CAL. CORP. CODE SECTIONS 25501 AND 25401

**(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, and DOES 1-50)**

18       182.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 181,

19   inclusive, as though fully set forth herein.

20       183.    On or about February 2005, Defendants BUCHHOLZ, FISCHER, and

21   SOLOMON CAPITAL, in Santa Clara County, California, offered and sold to Plaintiffs and

22   investors a total of $5,100,000.00 of the membership interest in the limited liability company of

23   Solomon Towers project. That transaction was made by means of both a written and oral

24   presentation and communication. The presentation was in the form of a Power Point presentation

25   which omitted to state material facts necessary in order to make the statements made in that

26   communication, in light of the circumstances under which they were made, not misleading.

27   (Exhibits "A" and "B".) The communications failed to set forth that the land being purchased by

28   the Solomon Towers project investment group would be done so at an over-inflated and above

- 41 -

RCI/5092539.3/JEL

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  fair market value price. A true copy of the Power Point presentation and pro-forma financials are

2  attached as Exhibits "A" and "B" and incorporated by reference.

3       184.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

4  with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

5  "A"), failed to disclose the pre-existing relationship between Defendants BUCHHOLZ,

6  FISCHER, and SOLOMON CAPITAL with Defendants ZELEZNAK and VENTO and their

7  partnership entities Z-LOFT, ZPM, and GRACE CAPITAL. The failure to disclose this fact

8  constitutes a material omission since the Property was purchased by Defendants BUCHHOLZ,

9  FISCHER, and SOLOMON CAPITAL, on behalf of the Plaintiff investors, from Defendants

10  ZELEZNAK and VENTO, and/or their companies, Z-LOFT, ZPM, and GRACE CAPITAL.

11       185.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

12  with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

13  "A"), failed to disclose the fact that the Property was not worth the amount that would be paid.

14  Further, Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER failed to disclose the

15  fact that the comparable square foot value for land in the area at the time of purchase was

16  approximately $33.19 per square foot, not the $178.75 per square foot amount paid by Defendants

17  BUCHHOLZ, FISCHER, and SOLOMON CAPITAL to Defendants ZELEZNAK and VENTO,

18  and/or their companies, Z-LOFT, ZPM, and GRACE CAPITAL.

19       186.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

20  with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

21  "A"), failed to disclose the an accurate purchase price per square foot of the Property. According

22  to the documentation presented to the investors, the purchase price per square foot for the

23  Property was $153.05 per square foot when, in fact, the purchase price paid by Defendants

24  BUCHHOLZ, FISCHER, and SOLOMON CAPITAL to Defendants ZELEZNAK and VENTO,

25  and/or their companies, Z-LOFT, ZPM, and GRACE CAPITAL was actually $178.75 per square

26  foot.

27       187.   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

28  with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL

- 42 -

1    "A"), failed to disclose the fact that the real estate agent and broker for the transaction,

2    ZELEZNAK and ZPM, was also the seller of the Property.  Further, Defendants SOLOMON

3    CAPITAL, BUCHHOLZ, and FISCHER failed to disclose the fact that ZELEZNAK received a

4    $1,000,000 commission for his role as the seller's agent for the transaction. (See Exhibit "D")

5    This commission rate is equivalent to a 20% (twenty-percent) commission which far exceeds the

6    prevailing market rate of 5% to 6% for sales transactions involving raw land.  Based on

7    information and belief, ZELEZNAK and ZPM acted in a dual agency role in connection with the

8    purchase and sale of the Property.  Defendant ZELEZAK and ZPM's dual agency was similarly

9    not disclosed by Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER to the Plaintiff

10    investors.

11        188.    Based on information and belief, Defendants SOLOMON CAPITAL,

12    BUCHHOLZ, and FISCHER, in connection with the presentation to the Plaintiff investors

13    regarding the Solomon Towers project (See Exhibit "A"), failed to disclose the fact that

14    ZELEZNAK and VENTO, and/or their related companies Z-LOFT, ZPM, and GRACE

15    CAPITAL would receive a distribution of the purchase and sale proceeds from the transaction.

16    Defendants further failed to disclose the pre-existing relationship between Defendants

17    BUCHHOLZ, FISCHER, and SOLOMON CAPITAL and Defendants VENTO and ZELEZNAK

18    and the fact that VENTO and ZELEZNAK were involved in the GRACE CAPITAL partnership

19    with the real estate agent for the transaction, ZELEZNAK who was also the seller of the Property.

20    Based on information and belief, Defendant VENTO and ZELEZNAK received a distribution

21    from the purchase and sale proceeds from the transaction at issue for the Property.  Defendants

22    VENTO and ZELEZNAK, and/or their related companies Z-LOFT, ZPM, and GRACE

23    CAPITAL qualify as materially aiding personnel under the Cal. Corporations Code and are,

24    therefore, jointly and severally liable under the Code.

25        189.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

26    with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

27    "A"), failed to disclose that the Plaintiff investors may be subject to supplemental capital

28    obligations in the future.  The Plaintiff investors were told that they had no obligation beyond

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5092539.3/JEL

- 43 -

1    their initial investment. The Proforma Finance & Investment Analysis: 10 Stories (Exhibit "A")

2    states: "Required Equity: $5,000,000." The Plaintiff investors were informed that no further

3    capital contribution would be "required" of them both verbally and in writing by Defendants

4    BUCHHOLZ, FISCHER, and SOLOMON CAPITAL. At the time that Defendants

5    BUCHHOLZ, FISCHER, and SOLOMON CAPITAL solicited and received the investments,

6    however, Defendants were aware of the fact that the project was severely undercapitalized.

7    Defendants failed to disclose that information to Plaintiff investors.

8         190.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

9    with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

10   "A"), misrepresented the actual size of the Property to the Plaintiff investors by a material

11   amount. Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER represented that the

12   parcel size for the Property was ¾ of an acre, approximately 32,670 square feet. The tax records

13   for the Property, however, clearly show that the Property is approximately 28,000 square feet,

14   over 4,000 square feet smaller than SOLOMON CAPITAL represented to the Plaintiff investors.

15        191.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

16   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

17   "A"), misrepresented the actual return or "profit" to the Plaintiff investors. The Proforma

18   Finance & Investment Analysis: 10 Stories (Exhibit "A") states: "Investor Profit: 50%." To date

19   the Plaintiff investors have received no return on investment from the Solomon Towers project.

20   To the contrary, the Plaintiff investors have been requested to make further capital call

21   contributions to the project. Further, according to pro forma financials disseminated by

22   Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER on Friday, February 29, 2008,

23   the Solomon Towers project is in severe financial distress and overleveraged in amount in excess

24   of $2,400,000. (Exhibit "E")

25        192.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

26   with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

27   "A"), misrepresented the zoning for the project. The Sales Pro Forma document for the Power

28   Point presentation states that the project would be for 15 stories. Based on information and

RC1/5092539.3/JEL

- 44 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    belief, however, the land, at the time of purchase and sale, was only zoned for 10 stories.

2        193.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in connection

3    with the presentation to the Plaintiff investors regarding the Solomon Towers project (See Exhibit

4    "A"), misrepresented the timeline for completion of the project and return of investment capital

5    and profits to the Plaintiff investors. According to the presentation to the investors in February of

6    2005, the project would require: (1) 60 days to acquire the land, (2) 9-12 months to explore

7    project definition, and (3) 2 years for build out and marketing. Thus, according to Defendants

8    SOLOMON CAPITAL, BUCHHOLZ, and FISCHER CAPITAL's representations to the Plaintiff

9    investors, the Solomon Towers project would be complete and in the sales phase within 3 years

10   and 2 months, or April of 2008. To date, however, construction has not begun on the project and

11   the project is in severe financial distress.

12       194.    Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER misrepresented

13   to the Plaintiff investors that they were buying into a viable investment opportunity for a high

14   rise condominium project. The reality, however, was the that Defendants BUCHHOLZ,

15   FISCHER, SOLOMON CAPITAL, Z-LOFT, ZPM, GRACE CAPITAL, ZELEZNAK and

16   VENTO through the investment scheme and Enterprise, had already extracted any potential

17   profits from the potential investment for themselves through the fraudulent Enterprise. The

18   plaintiff investors were then left with a project that was not viable since it was "under water,"

19   meaning that the debt on the project so far outweighed the value that development prospects were

20   no longer possible absent an extreme pro forma or forecasted loss.

21       195.    As a result of the material misrepresentations and omissions, Plaintiffs are entitled

22   to rescind the above-described purchases of membership interest in Solomon Towers, LLC.

23       196.    Plaintiffs will tender to Defendants their membership interest in Solomon Towers,

24   LLC, for the above-described securities as purchased from Defendants and on which to date

25   Plaintiffs have received $0 in total income.

26       197.    Therefore, Plaintiffs seek an Order of this Court for the appropriate available

27   remedy of rescission and return of Plaintiffs' investment capital with interest from the date of the

28   investment pursuant to Cal. Corp. Code §§ 25501 and 25401.

RCI/5092539.3/JEL                                    - 45 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

XX.

## COUNT 16:  JOINT AND SEVERAL LIABILITY OF MANAGEMENT PRINCIPALS AND MATERIALLY AIDING PERSONNNEL PURSUANT TO CAL. CORP. CODE SECTION 25501, 25401, AND 25504

**(Against Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELEZNAK, VENTO, KELLER WILLIAMS, and DOES 1-50)**

198.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 197, inclusive, as though fully set forth herein.

199.    Defendants ZELEZNAK, VENTO, Z-LOFT, GRACE CAPITAL, RDB DEVELOPMENT, ZPM, and KELLER WILLIAMS, at the time of acts alleged herein, materially assisted in the perpetration of the Enterprise and fraud upon the Plaintiffs.  Based on information and belief, Z-LOFT, LLC purchased property in less desirable areas for market rate, and then sold the property to SOLOMON CAPTIAL investors for significantly more than the market rate. Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, ZELEZNAK, Z-LOFT, VENTO, GRACE CAPITAL, ZPM, and KELLER WILLIAMS profited on the overly inflated and above-market value sale of the land to the detriment and loss of the Plaintiff investors.

200.    Based on information and belief, Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, VENTO, GRACE CAPITAL, ZPM, and, KELLER WILLIAMS had a pre-existing relationship prior to the purchase and sale transaction of the Property and have conducted similar transactions with other investor groups to further perpetrate the fraudulent Enterprise discussed herein.

201.    Defendants ZELEZNAK owned and managed Soho Lofts, LLC.  Soho Lofts, LLC changed its name to Z-LOFT, LLC on August 17, 2004.  On July 25, 2002, Soho Lofts LLC purchased the Property, located at 625-643 N. 2nd Avenue, Phoenix, AZ from Core Builders, Inc. for $392,000.00.  According to the tax records, the square footage of the Property is 28,000 square feet.  Accordingly, the cost for this transaction was $14.00 per square foot.

202.    On April 11, 2005, Defendants ZELEZNAK and VENTO, and/or their related entities Z-LOFT, ZPM, or GRACE CAPITAL sold the Property to Solomon Towers, LLC for

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   $5,004,929.00. The cost per square foot for this transaction was $178.75 per square foot. Based

2   on information and belief and historical comparative research conducted in Spring 2007, the

3   current market rate for the land from February to March 2005 was approximately $33.19 per

4   square foot.

5           203.    Based on information and belief, Plaintiffs allege that Defendants Z-LOFT,

6   GRACE CAPITAL, ZPM, ZELEZNAK and VENTO all profited on the over-inflated and above

7   market "pump and dump" sale to the detriment of the Plaintiff investors. Defendants ZPM and

8   ZELEZNAK received a commission on the sale of the Property of $1,000,000.00 (one million

9   dollars.) This commission rate is equivalent to a 20% (twenty-percent) commission which far

10  exceeds the prevailing market rate of 5% to 6% for sales transactions involving raw land. The

11  implications of this commission for the sale of the Property supports the conclusion that

12  Defendants KELLER WILLIAMS and ZELEZNAK knowing and materially aided and assisted

13  Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, Z-LOFT,

14  ZPM, GRACE CAPITAL, ZELEZNAK and VENTO to perpetrate the fraud and the Enterprise as

15  discussed herein against the Plaintiffs. The implications of the over-inflated and above market

16  commission for the sale of the Property from Defendants Z-LOFT, GRACE CAPITAL, VENTO

17  and ZELEZNAK to the Plaintiffs supports the conclusion that Defendants Z-LOFT, ZPM,

18  GRACE CAPITAL, ZELEZNAK and VENTO knowingly and materially aided and assisted in an

19  Enterprise to perpetrate the fraud as discussed herein against the Plaintiffs.

20          204.    Plaintiffs have been damaged in an amount to be proven at trial. Therefore,

21  Plaintiffs seek an Order of this Court for all appropriate available remedies under California

22  Corporations Code §§ 25501, 25401, and 25504.

23                                          **XXI.**

24  **COUNT 17: RESCISSION OF SALE OF SECURITIES NOT QUALIFIED FOR SALE**
    **AND RESTITUTION OF CONSIDERATION PAID PURSUANT TO CAL. CORP. CODE**
25  **SECTIONS 25503, 25102(F), AND 25110**

26  **(Against Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, and DOES 1-50)**

27          205.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 204

28  inclusive, as though fully set forth herein.

RC1/5092539.3/JEL                                   - 47 -

206.    On or about February 2005, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL, offered and sold to Plaintiffs and investors a total of $5,100,000.00 of membership interest on Solomon Towers, LLC. Defendants were the issuers of the investments and engaged in the trading of such securities. The Operating Agreement for the Solomon Towers project is attached hereto as Exhibit "C".

207.    This sale constituted an issuer transaction in that it was part of an initial offering of membership interest for capitalization purposes for Solomon Towers, LLC, and the issuers directly benefited from Plaintiffs' investment of securities and received a portion of the investments as the issuer of the security. At the time of Plaintiffs' acquisition and membership interests and investment in Solomon Towers, LLC, the sale was subject to qualification, was not exempt from qualification, and was not, and to the date of this Complaint, has not been qualified as any kind of securities transaction with the Commissioner of Corporations.

208.    As a result of the above-described acts, Defendants are liable to Plaintiffs, who are entitled to and hereby do, rescind the above-described purchase. Plaintiffs will tender before entry of judgment to Defendants their membership interests in the above-described security as purchased from Defendants and on which to date Plaintiffs have received $0 in total income.

Plaintiffs are informed and believe that the consideration given for the securities herein may not be capable of being returned in that the investment consideration was used to purchase property for an over-inflated and above fair market value in order to benefit Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, ZELEZNAK, VENTO, Z-LOFT, GRACE CAPITAL, ZPM, and KELLER WILLIAMS. The purchase of the Property at issue for the over-inflated and above fair market valuation constituted fraud upon the Plaintiffs and resulted in the distribution of ill-gotten gains to Defendants SOLOMON CAPITAL, BUCHHOLZ, FISCHER, ZELEZNAK, VENTO, Z-LOFT, GRACE CAPITAL, ZPM, and KELLER WILLIAMS. Further, there are multiple outstanding loans against the property and certain noteholders have intimated that foreclosure proceedings would pursue.

209.    Plaintiffs have been damaged in an amount to be proven at trial. Therefore, Plaintiffs seek an Order of this Court for all appropriate available remedies under California

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Corporations Code §§ 25503, 25102(f), and 25110.

2                                        XXII.

3    **COUNT 18:  JOINT AND SEVERAL LIABILITY OF MANAGEMENT PRINCIPALS
     AND MATERIALLY AIDING PERSONNNEL PURSUANT TO CAL. CORP. CODE
4                    SECTIONS 25503, 25102(F), AND 25110**

5    **(Against Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ,
     FISCHER, Z-LOFT, GRACE CAPITAL, ZPM, ZELEZNAK, VENTO, KELLER
6                    WILLIAMS, and DOES 1-50)**

7         210.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 209,

8    inclusive, as though fully set forth herein.

9         211.    Defendants ZELEZNAK and VENTO, and/or their related companies Z-LOFT,

10   ZPM, and GRACE CAPITAL, at the time of acts alleged herein, materially assisted in the

11   perpetration of the Enterprise and fraud upon the Plaintiffs and other putative investors.  Based on

12   information and belief, Defendants ZELEZNAK and VENTO, and/or their related companies Z-

13   LOFT, ZPM, and GRACE CAPITAL, purchased property in less desirable areas for market rate,

14   and then sold the property to SOLOMON CAPTIAL investors for significantly more than the

15   market rate.  Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB

16   DEVELOPMENT, ZELEZNAK, VENTO, Z-LOFT, GRACE CAPITAL, ZPM, and KELLER

17   WILLIAMS profited on the overly inflated and above-market value sale of the land to the

18   detriment and loss of the Plaintiff investors.

19        212.    Based on information and belief, Defendants SOLOMON CAPITAL, RDB

20   DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, VENTO, ZPM, and KELLER

21   WILLIAMS had a pre-existing relationship prior to the purchase and sale transaction of the

22   Property and have conducted similar transactions with other investor groups to further perpetrate

23   the fraudulent Enterprise discussed herein.

24        213.    Defendants ZELEZNAK owned and managed Soho Lofts, LLC.  Soho Lofts, LLC

25   changed its name to Z-LOFTS, LLC on August 17, 2004.  On July 25, 2002, Soho Lofts LLC

26   purchased 625-643 N. 2nd Avenue, Phoenix, AZ (hereinafter referred to as "the Property") from

27   Core Builders, Inc. for $392,000.  According to the tax records, the square footage of the Property

28   is 28,000 square feet.  Accordingly, the cost for this transaction was $14.00 per square foot.

RCI/5092539.3/JEL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

214.    On April 11, 2005, Defendants ZELEZNAK and VENTO, and/or their related entities Z-LOFT or GRACE CAPITAL sold the Property to Solomon Towers, LLC for $5,004,929. The cost per square foot for this transaction was $178.75 per square foot. Based on information and belief and historical comparative research conducted in Spring 2007, the current market rate for the land from February to March 2005 was approximately $33.19 per square foot.

215.    Based on information and belief, Plaintiffs allege that Defendants Z-LOFT, GRACE CAPITAL, RDB DEVELOPMENT, ZPM, ZELEZNAK and VENTO all profited on the over-inflated and above market "pump and dump" sale to the detriment of the Plaintiff investors. Defendants ZPM and ZELEZNAK received a commission on the sale of the Property of $1,000,000 (one million dollars.) This commission rate is equivalent to a 20% (twenty-percent) commission which far exceeds the prevailing market rate of 5% to 6% for sales transactions involving raw land. The implications of this commission for the sale of the Property supports the conclusion that Defendants ZPM and ZELEZNAK knowing and materially aided and assisted Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, Z-LOFT, ZPM, GRACE CAPITAL, ZELEZNAK, VENTO, and KELLER WILLIAMS to perpetrate the fraud and the Enterprise as discussed herein against the Plaintiffs. The implications of the over-inflated and above market commission for the sale of the Property from Defendants Z-LOFT, ZPM, GRACE CAPITAL, VENTO and ZELEZNAK to the Plaintiffs supports the conclusion that Defendants Z-LOFT, ZPM, GRACE CAPITAL, ZELEZNAK, VENTO, and KELLER WILLIAMS knowingly and materially aided and assisted in an Enterprise to perpetrate the fraud as discussed herein against the Plaintiffs.

216.    Plaintiffs have been damaged in an amount to be proven at trial. Therefore, Plaintiffs seek an Order of this Court for all appropriate available remedies under California Corporations Code §§ 25503, 25102(f), and 25110.

## XXIII.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, by and through their attorneys, pray for judgment against Defendants, and each of them, as follows:

RC1/5092539.3/JEL

- 50 -

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES, FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1.  For rescission of the purchase and recovery of investment capital as the original consideration paid for the securities at issue;

2.  For interest on the value of the original consideration at the legal rate from the date of purchase and transfer of the consideration;

3.  For actual damages incurred to be proven at trial with interest thereon;

4.  For costs of suit herein incurred;

5.  For recovery of attorneys' fees;

6.  For punitive damages;

7.  For a permanent injunction preventing Defendants from further profiting from or disgorging said profits from their fraudulent Enterprise; and

8.  For such other and further relief as the Court may deem proper.

Dated: April 30, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
TODD A. ROBERTS
JESSHILL E. LOVE
Attorneys for Plaintiffs
STEVE TRACHSEL, an individual, SUN
CITY TOWERS, LLC, a California
corporation, THOMAS CIRRITO, an
individual, ATOCHA LAND, LLC, a
Delaware limited liability company,
MICHAEL CIRRITO, an individual, and
CIRRITO HOLDINGS, LLC, a Delaware
limited liability company

COMPLAINT FOR VIOLATIONS OF RICO, RULE 10B-5, SECTION 12(A), CAL. CORP. AND BUS. & PROF. CODES,
FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND CONSPIRACY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City



1



City of Phoenix: 1,421,298
Maricopa County: 3,194,798
State of Arizona: 5,307,331

Phoenix covers more than 500 square miles and has a population of 1.4 million, ranking it the sixth largest city in the United States. A premier resort destination, Phoenix has more than 300 sun-filled days a year and an average temperature of 7? degrees.

More than 50 percent of the population is between 18 and 54 years of age, which is younger than the national average. The greater Phoenix area is a $50 billion marketplace driven by technology. World-leading companies such as Intel, Avnet, Motorola, AlliedSignal, Honeywell and Boeing Company have chosen Phoenix for their corporate and regional headquarters. Phoenix Sky Harbor International Airport is the fifth busiest airport in the U.S.



2





3















## Project Overview

▷ 10 Story high-rise, residential loft development
▷ Mid range price point: $400 psf
▷ 100 Units Planned
▷ Estimated Project Timeframe: 36 months

## Project Advantages & Benefits

▷ Central downtown Phoenix locations takes advantage of reverse migration trend

▷ Highly congruent with City of Phoenix general plan

## Comparative Sales Case: Monroe Towers



**MONROE PLACE**
LUXURY LOFTS

▷ Located 4 blocks south of our site

▷ Selling at $600 psf - $200 psf higher than the Solomon Tower proforma

8





## Development Proforma

| | |
|---|---|
| Land Area | 0.75 Acres |
| Land Cost psf | $ 153.05 |
| Building Area | 135,000 Gross Square Feet |
| Coverage | 413% |
| Number of Units | 100 |
| | |
| Total Land Cost | $ 5,000,000 |
| Closing Cost | 10,000 |
| Total Land Acquisition Cost | $ 5,010,000 |

## Development Proforma – 10 Stories

| | |
|---|---|
| Construction Costs | $ 27,000,00 |
| Permit Fees | 250,000 |
| Utility Connection Fees | 250,000 |
| Plan Review Fees | 50,000 |
| Construction Management | 500,000 |
| Architectural Design | 1,400,000 |
| Civil | 50,000 |
| Survey | 25,000 |
| Testing | 50,000 |
| Engineering | 50,000 |
| Signage | 25,000 |
| Legal Fees | 65,000 |
| Real Estate Taxes & Accounting | 75,000 |

## Development Proforma (cont.)

| | |
|---|---|
| Insurance | 900,000 |
| Marketing | 900,000 |
| Design Center Fees | 100,000 |
| Furniture, Furnishings & Equipment | 200,000 |
| Site Maintenance | 30,000 |
| Developer Fee | 1,000,000 |
| Interest Carry | 1,579,974 |
| Construction Finance Fees | 328,306 |
| Miscellaneous | 200,000 |
| Contingency | 1,000,000 |
| TOTAL CONSTRUCTION COST | $ 36,028,280 |
| TOTAL LAND COST | 5,010,000 |
| TOTAL PROJECT COST | $ 41,038,280 |

## Sales Proforma — 10 Stories

| | |
|---|---|
| Loft Sales | $54,225,000 |
| Sales Commissions (6%) | -3,253,500 |
| Closing Costs (0.75%) | -406,688 |
| Net Revenue | $50,564,813 |

11

## Proforma Finance & Investment Analysis
## 10 Stories

| | |
|---|---|
| Total Project Costs | $41,038,280 |
| Total Loan Amount | $32,830,624 |
| Loan to Cost | 80% |
| Required Equity | 5,000,000 |
| TOTAL Solomon Tower, LLC PROFIT | 9,526,532 |
| Solomon Capital's Share (50%) | $4,763,266 |
| Investor's Profit (50%) | $ 4,763,266 |
| Total Return | Total: 190% |

## Proforma Finance & Investment Analysis
## 15 Stories

| | |
|---|---|
| Total Project Costs | $55,196,644 |
| Total Loan Amount | $44,157,315 |
| Loan to Cost | 80% |
| Required Equity | $5,000,000 |

12

## Sales Proforma – 15 Stories

| | |
|---|---|
| Loft Sales | $81,225,000 |
| Sales Commissions (6%) | -4,873,500 |
| Closing Costs (0.75%) | -609,188 |
| Net Revenue | $75,742,313 |
| Solomon Tower, LLC Profit | $20,545,669 |
| | |
| Investors (50%) | $10,272,834 |
| Solomon Capital (50%) | $10,272,834 |
| | |
| Total Return | 410% |

## Next Steps

1. Form Partnership and Raise Capital (3 weeks)
   a. Turn in your Commitment Form and signed Operating Agreement by Friday, Feb. 11th
   b. Initial Capital Contributions by Monday, Feb. 28th
2. Acquire Land (60 days)
3. Explore Project Definition (9-12 months)
4. Proceed with Build-out & Marketing (2 years)

13



Z Lofts
100 Lofts
1/14/2005

## Development Budget

| | | | |
|---|---|---|---|
| Land Area | | 0.75 acres | |
| Land Cost psf of Land Area | $ | 153.05 | |
| Building Area | | 135,000 s.f. | |
| Coverage | | 413% | |
| Number of Units | | 100 units | |

| | | | PSF | | Per Unit |
|---|---|---|---|---|---|
| | | | PSF | | Per Unit |
| Land | 5,000,000 | $ | 37.04 | $ | 50,000 |
| Closing Costs | 10,000 | $ | 0.07 | $ | 100 |
| Total Land Costs | 5,010,000 | $ | 37.11 | $ | 50,100 |
| | | | | | |
| Construction Costs | 27,000,000 | $ | 200.00 | $ | 270,000 |
| Permit Fees | 250,000 | $ | 1.85 | $ | 2,500 |
| Utility Connection Fees | 250,000 | $ | 1.85 | $ | 2,500 |
| Plan Review Fees | 50,000 | $ | 0.37 | $ | 500 |
| Construction Mgt Fees | 500,000 | $ | 3.70 | $ | 5,000 |
| Architecture | 1,400,000 | $ | 10.37 | $ | 14,000 |
| Civil | 50,000 | $ | 0.37 | $ | 500 |
| Survey | 25,000 | $ | 0.19 | $ | 250 |
| Testing | 50,000 | $ | 0.37 | $ | 500 |
| Engineering | 50,000 | $ | 0.37 | $ | 500 |
| Design Center Fees | 100,000 | $ | 0.74 | $ | 1,000 |
| Furniture, Furnishings & Equipment | 200,000 | $ | 1.48 | $ | 2,000 |
| Signage | 25,000 | $ | 0.19 | $ | 250 |
| Legal | 65,000 | $ | 0.48 | $ | 650 |
| Real Estate Taxes | 25,000 | $ | 0.19 | $ | 250 |
| Insurance | 900,000 | $ | 6.67 | $ | 9,000 |
| Marketing | 900,000 | $ | 6.67 | $ | 9,000 |
| Site Maintenance | 30,000 | $ | 0.22 | $ | 300 |
| Developer Fee | 1,000,000 | $ | 7.41 | $ | 10,000 |
| Miscellaneous | 200,000 | $ | 1.48 | $ | 2,000 |
| Contingency | 1,000,000 | $ | 7.41 | $ | 10,000 |
| Accounting | 50,000 | $ | 0.37 | $ | 500 |
| Interest Reserve        5.500% | 1,579,974 | $ | 11.70 | $ | 15,800 |
| Financing Fees          1.00% | 328,306 | $ | 2.43 | $ | 3,283 |
| Total Construction Costs | 36,028,280 | $ | 266.88 | $ | 360,283 |
| | | | | | |
| Total Project Costs | 41,038,280 | $ | 303.99 | $ | 410,383 |

## Sales Summary

| | Size | Quantity | $ psf | | | | PSF | | Per Unit |
|---|---|---|---|---|---|---|---|---|---|
| Unit A | 1350 | 100 | $ | 400 | | 54,000,000 | $ | 400.00 | $ 540,000 |
| Unit B | 0 | 0 | $ | - | $ | - | $ | - | #DIV/0! |
| Unit C | 0 | 0 | $ | - | $ | - | $ | - | #DIV/0! |
| Unit D | 0 | 0 | $ | - | $ | - | $ | - | #DIV/0! |
| Lot Premiums | | 45 | $ | 5,000 per unit | $ | 225,000 | $ | 1.67 | $ 5,000 |
| | | | | | | | | | |
| Gross Sales Proceeds | | | | | $ | 54,225,000 | $ | 401.67 | $ 1,205,000 |
| Less: | | | | | | | | | |
| Sales Commission | 6.00% | | | | | 3,253,500 | $ | 24.10 | $ 72,300 |
| Closing Costs | 0.75% | | | | | 406,688 | $ | 3.01 | $ 9,038 |
| Net Sales Proceeds | | | | | $ | 50,564,813 | $ | 374.55 | $ 1,123,663 |

## Equity Analysis

| | | | |
|---|---|---|---|
| Total Project Costs | | $ | 41,038,280 |
| Loan to Cost | | | 80% |
| Loan Amount | | $ | 32,830,624 |
| Cash Equity | | $ | 5,000,000 |
| Project Profit | | $ | 9,526,532 |
| Manager Profit | 50% | $ | 4,763,266 |
| Investor Profit | 50% | $ | 4,763,266 |
| Project Cash on Cash Return | | | 191% |
| Investor Cash on Cash Return | | | 95% |

Z Lofts
150 Lofts
1/14/2005

| Development Budget | | | | | |
|---|---|---|---|---|---|
| Land Area | | 0.75 | acres | | |
| Land Cost psf of Land Area | $ | 153.05 | | | |
| Building Area | | 202,500 | s.f. | | |
| Coverage | | 620% | | | |
| Number of Units | | 100 | units | | |

| | | | PSF | Per Unit | |
|---|---|---|---|---|---|
| Land | 5,000,000 | $ | 24.69 | $ | 50,000 |
| Closing Costs | 10,000 | $ | 0.05 | $ | 100 |
| Total Land Costs | 5,010,000 | $ | 24.74 | $ | 50,100 |
| | | | | | |
| Construction Costs | 40,500,000 | $ | 200.00 | $ | 405,000 |
| Permit Fees | 250,000 | $ | 1.23 | $ | 2,500 |
| Utility Connection Fees | 250,000 | $ | 1.23 | $ | 2,500 |
| Plan Review Fees | 50,000 | $ | 0.25 | $ | 500 |
| Construction Mgt Fees | 500,000 | $ | 2.47 | $ | 5,000 |
| Architecture | 1,400,000 | $ | 6.91 | $ | 14,000 |
| Civil | 50,000 | $ | 0.25 | $ | 500 |
| Survey | 25,000 | $ | 0.12 | $ | 250 |
| Testing | 50,000 | $ | 0.25 | $ | 500 |
| Engineering | 50,000 | $ | 0.25 | $ | 500 |
| Design Center Fees | 100,000 | $ | 0.49 | $ | 1,000 |
| Furniture, Furnishings & Equipment | 200,000 | $ | 0.99 | $ | 2,000 |
| Signage | 25,000 | $ | 0.12 | $ | 250 |
| Legal | 65,000 | $ | 0.32 | $ | 650 |
| Real Estate Taxes | 25,000 | $ | 0.12 | $ | 250 |
| Insurance | 900,000 | $ | 4.44 | $ | 9,000 |
| Marketing | 900,000 | $ | 4.44 | $ | 9,000 |
| Site Maintenance | 30,000 | $ | 0.15 | $ | 300 |
| Developer Fee | 1,000,000 | $ | 4.94 | $ | 10,000 |
| Miscellaneous | 200,000 | $ | 0.99 | $ | 2,000 |
| Contingency | 1,000,000 | $ | 4.94 | $ | 10,000 |
| Acounting | 50,000 | $ | 0.25 | $ | 500 |
| Interest Reserve          5.500% | 2,125,071 | $ | 10.49 | $ | 21,251 |
| Financing Fees            1.00% | 441,573 | $ | 2.18 | $ | 4,416 |
| Total Construction Costs | 50,186,644 | $ | 247.84 | $ | 501,866 |
| | | | | | |
| Total Project Costs | 55,196,644 | $ | 272.58 | $ | 551,966 |

## Sales Summary

|  | Size | Quantity | $psf |  |  | PSF |  | Per Unit |  |
|---|---|---|---|---|---|---|---|---|---|
| Unit A | 1350 | 150 | $ 400 |  | 81,000,000 | $ | 400.00 | $ | 540,000 |
| Unit B | 0 | 0 | $ - | $ | - | $ | - |  | #DIV/0! |
| Unit C | 0 | 0 | $ - | $ | - | $ | - |  | #DIV/0! |
| Unit D | 0 | 0 | $ - | $ | - | $ | - |  | #DIV/0! |
| Lot Premiums |  | 45 | $ 5,000 per unit | $ | 225,000 | $ | 1.11 | $ | 5,000 |
|  |  |  |  |  |  |  |  |  |  |
| Gross Sales Proceeds |  |  |  | $ | 81,225,000 | $ | 401.11 | $ 1,805,000 | |
| Less: |  |  |  |  |  |  |  |  |  |
| Sales Commission | 6.00% |  |  |  | 4,873,500 | $ | 24.07 | $ | 108,300 |
| Closing Costs | 0.75% |  |  |  | 609,188 | $ | 3.01 | $ | 13,538 |
| Net Sales Proceeds |  |  |  | $ | 75,742,313 | $ | 374.04 | $ 1,683,163 | |

## Equity Analysis

| | | |
|---|---|---|
| Total Project Costs | $ | 55,196,644 |
| Loan to Cost | | 80% |
| Loan Amount | $ | 44,157,315 |
| Cash Equity | $ | 5,000,000 |
| Project Profit | $ | 20,545,669 |
| Manager Profit | 50% | $ 10,272,834 |
| Investor Profit | 50% | $ 10,272,834 |
| Project Cash on Cash Return | | 411% |
| Investor Cash on Cash Return | | 205% |

# OPERATING AGREEMENT

THIS OPERATING AGREEMENT (this "Agreement"), is made and entered into as of February 5th, 2005, by and among those Persons who are identified as Members in Exhibit A to this Agreement (each individually a "Member" and, collectively, the "Initial Members"), and Solomon Towers, LLC, a Nevada limited-liability company (the "Company").

For the consideration of their mutual covenants set forth below, the Members and the Company agree as follows:

## ARTICLE I

## DEFINITIONS

1.1    Definitions.    As used in this Agreement, the following terms shall have the meanings set forth below:

"Act" means the Nevada Limited Liability Company Act, N.R.S. § 86.011 *et seq*, as amended from time to time.

"Additional Capital Contributions" means the additional contributions to the capital of the Company described in Section 3.2.

"Agreement" means this written limited liability company agreement, as originally executed and as amended or restated from time to time.

"Assignee" means a Person who acquires an Interest in the Company but who has not been admitted as a Substitute Member.

"Capital Account" means as defined in Section A.1 of Appendix 1.

"Capital Contribution" means any contribution to the capital of the Company whenever made.

"Code" means the Internal Revenue Code of 1986, as amended from time to time. All references herein to sections of the Code shall include any corresponding provision on provisions of succeeding law.

"Covered Person" means a Member, the Manager, or any Person that directly or indirectly controls or is controlled by the Company.

"Gross Asset Value" means as defined in Section A.1 of Appendix 1.

"Interest" in the Company shall mean the economic rights of a Member and their permitted assignees and successors to share in distributions of cash and other property from the Company pursuant to the Act and this Agreement, together with their distributive share of the Company's net income or loss for federal and state income taxes.

1

"<u>Losses</u>" has the meaning as set forth in Section A.1 of <u>Appendix 1</u>.

"<u>Majority in Interest</u>" means those Members owning, in aggregate, greater than fifty percent (50.0%) of the Interests in the Company.

"<u>Manager</u>" means Ron Buchholz or Charice Buchholz or any other Person who becomes a Manager pursuant to this Agreement. Except as otherwise provided in this Agreement, if more than one, each Manager shall have all of the powers and authority exercisable by a Manager pursuant to the Act and this Agreement.

"<u>Member</u>" means (a) the Initial Members until such time, if any, that any such Person becomes a Withdrawn Member, (b) any Person acquiring an Interest directly from the Company in accordance with this Agreement until such time, if any, that any such Person becomes a Withdrawn Member, and (c) any Person who acquires an Interest in the Company in a Permitted Transfer and who is deemed, or is admitted as, a Substitute Member until such time, if any, that such Person becomes a Withdrawn Member.

"<u>Net Cash Flow</u>" means, with respect to any period, the Company's gross receipts, reduced by the portion thereof used to pay or establish reserves for all Company expenses, debt payments and accrued interest, contingencies, and proposed acquisitions, all as determined in the sole discretion of the Manager. "<u>Net Cash Flow</u>" shall not be reduced by depreciation, amortization, cost recovery deductions, or similar allowances.

"<u>Percentage Interest</u>" means the percentage interests in the Profits and Losses of this Company. The initial Percentage Interests are set forth on <u>Exhibit A</u>.

"<u>Permitted Transfer</u>" has the meaning set forth in Section 11.2.

"<u>Person</u>" means any individual, firm, corporation, partnership, limited liability company, association or other legal entity.

"<u>Profits</u>" has the meaning set forth in Section A.1 of <u>Appendix 1</u>.

"<u>Substitute Member</u>" means a Person who acquires an Interest from a Member and who satisfies all of the conditions of Section 11.5.

"<u>Super-Majority in Interest</u>" means those Members owning, in aggregate, greater than seventy-five percent (75.0%) of the Interests in the Company.

"<u>TMP</u>" means the Person designated in accordance with Section 9.2(b).

"<u>Transfer</u>" means, when used as a noun, any voluntary or involuntary sale, assignment, gift, transfer, or other disposition and, when used as a verb, means voluntarily or involuntarily to sell, assign, gift, transfer, or otherwise dispose of.

"<u>Treasury Regulations</u>" means the Regulations issued by the Treasury Department under the Code.

"<u>Withdrawal Event</u>" means with respect to a specified Person the death, retirement, resignation, expulsion, bankruptcy, or dissolution of such Person.

"<u>Withdrawn Member</u>" means a Member following the occurrence of a Withdrawal Event with respect to such Member.

## ARTICLE II

## FORMATION OF THE LIMITED LIABILITY COMPANY

2.1    <u>General</u>. The Initial Members organized the Company as a manager-managed limited-liability company in accordance with the Act and the terms of this Agreement by filing the Articles of Organization with the Nevada Secretary of State on _____, 2005.

2.2    <u>Name</u>. The name of the Company is "Solomon Towers, LLC" and the business of the Company shall be carried on in this name with such variations and changes as a Manager in its sole discretion may deem necessary or appropriate to comply with requirements of the jurisdictions in which the Company's operations shall be conducted.

2.3    <u>Purposes and Powers</u>. The Company may engage in and do any act concerning any or all lawful businesses for which limited liability companies may be organized under Nevada law. The Company shall have all of the powers permitted by law. The initial purpose of the Company shall be to acquire real property and the development of a high rise residential tower or towers in downtown Phoenix, Arizona

2.4    <u>Registered Office</u>. The registered office shall be the office maintained at the street address of the resident agent.

2.5    <u>Term</u>. The term of the Company commenced on the filing of the Articles of Organization for the Company and shall not expire except in accordance with the provisions of Article XII of this Agreement or in accordance with the Act.

## ARTICLE III

## CAPITAL CONTRIBUTIONS

3.1    <u>Initial Capital Contributions</u>. The Initial Members of the Company shall each contribute to the capital of the Company the contributions described in <u>Exhibit A</u>. Capital Contributions to the Company may consist of cash, property or services rendered or a promissory note or other obligation to contribute cash or property or to perform services.

3.2    <u>Additional Capital Contributions</u>. The Members shall be required to make Additional Capital Contributions only in the amount(s) and at the time(s) that the Manager, in its sole discretion, shall deem necessary for the conduct of the business of the Company. The first additional capital contributions shall be as described in <u>Exhibit A</u> and shall be made by the Initial Members within ten (10) business days of receipt of notice regarding same from the Manager.

"Withdrawal Event" means with respect to a specified Person the death, retirement, resignation, expulsion, bankruptcy, or dissolution of such Person.

"Withdrawn Member" means a Member following the occurrence of a Withdrawal Event with respect to such Member.

## ARTICLE II

## FORMATION OF THE LIMITED LIABILITY COMPANY

2.1    General.  The Initial Members organized the Company as a manager-managed limited-liability company in accordance with the Act and the terms of this Agreement by filing the Articles of Organization with the Nevada Secretary of State on _____, 2005.

2.2    Name.  The name of the Company is "Solomon Towers, LLC" and the business of the Company shall be carried on in this name with such variations and changes as a Manager in its sole discretion may deem necessary or appropriate to comply with requirements of the jurisdictions in which the Company's operations shall be conducted.

2.3    Purposes and Powers.  The Company may engage in and do any act concerning any or all lawful businesses for which limited liability companies may be organized under Nevada law. The Company shall have all of the powers permitted by law. The initial purpose of the Company shall be to acquire real property and the development of a high rise residential tower or towers in downtown Phoenix, Arizona

2.4    Registered Office.  The registered office shall be the office maintained at the street address of the resident agent.

2.5    Term.  The term of the Company commenced on the filing of the Articles of Organization for the Company and shall not expire except in accordance with the provisions of Article XII of this Agreement or in accordance with the Act.

## ARTICLE III

## CAPITAL CONTRIBUTIONS

3.1    Initial Capital Contributions.  The Initial Members of the Company shall each contribute to the capital of the Company the contributions described in Exhibit A. Capital Contributions to the Company may consist of cash, property or services rendered or a promissory note or other obligation to contribute cash or property or to perform services.

3.2    Additional Capital Contributions.  The Members shall be required to make Additional Capital Contributions only in the amount(s) and at the time(s) that the Manager, in its sole discretion, shall deem necessary for the conduct of the business of the Company. The first additional capital contributions shall be as described in Exhibit A and shall be made by the Initial Members within ten (10) business days of receipt of notice regarding same from the Manager.

3.3    Use of Capital Contributions. All Capital Contributions shall be expended in furtherance of the business of the Company. Capital Contributions shall not be commingled with the funds of any other Person or entity, except that the funds may be deposited in an account in the name of the Company in a bank or other financial institution as the Manager deems appropriate.

3.4    No Interest on Capital Contributions. No interest shall accrue on any Capital Contributions made to the Company.

3.5    No Unauthorized Withdrawals of Capital Contributions. No Member shall have the right to withdraw or to be repaid any of such Member's Capital Contributions so made, except as specifically provided in this Agreement.

3.6    Return of Capital. Except as otherwise provided in this Agreement, no Member shall be entitled to the return of the Member's Capital Contributions to the Company. Further, it is expressly provided that the Manager shall have no personal liability for the repayment of the Capital Contributions made by any Member, it being agreed that any return of capital or Profits made pursuant to this Agreement shall be made solely from the assets of the Company.

## ARTICLE IV

## MANAGEMENT

4.1    Management by Manager - General. The business and affairs of the Company shall be managed by its designated Manager or Managers. Other than those rights and powers expressly reserved to Members by this Agreement, the Manager shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company, and to take all such actions as the Manager deems necessary or expedient to accomplish the purposes of the Company. The Manager shall act in good faith and in a manner that the Manager reasonably believes to be in the best interests of the Company and its Members.

4.2    Delegation of Powers and Responsibilities. The Manager shall be authorized to delegate such powers and responsibilities as it may deem appropriate for the efficient operation of the business of the Company.

4.3    Management Powers and Responsibilities. Without limiting the generality of Section 4.1, but subject to the provisions of Section 4.4 and any other provision in this Agreement, the Manager shall have power and authority, on behalf of the Company:

(a)    To open accounts in the name of the Company with banks and other financial institutions and designate and remove from time to time, at the discretion of the Manager, all signatories on such bank accounts;

(b)    To purchase policies of comprehensive general liability insurance and to purchase such other insurance coverage as the Manager shall determine to be necessary or desirable to insure the Members or to protect the Company's assets;

4

    (c)    To execute on behalf of the Company all instruments and documents including, without limitation, checks, drafts, notes and other negotiable instruments, mortgages or deeds of trust, security agreements, financing statements, documents providing for the acquisition, mortgage or disposition of the Company's property, assignments, bills of sale, leases, and any other instruments or documents necessary, in the opinion of the Manager, to the conduct of the business of the Company;

    (d)    To employ accountants, legal counsel, managing agents, other experts, and independent contractors to perform services for the Company and to compensate them from Company funds;

    (e)    Subject to Section 10.1, to admit new Members to the Company;

    (f)    As otherwise provided in this Agreement, to borrow money from banks, other lending institutions, or the Members, on such terms as the Manager deems appropriate, and in connection therewith to encumber and grant security interests in the assets of the Company to secure payments of the borrowed sum;

    (g)    Except as otherwise provided in this Agreement, to pay or cause to be paid incentive compensation to any Member or the Manager, including, without limitation, incentive compensation in the form of revenues derived by the Company, bonuses and profit sharing;

    (h)    To acquire by purchase, lease, or otherwise, any real or personal tangible property;

    (i)    To acquire by purchase, lease, or otherwise, any intangible property;

    (j)    To prepay, refinance, increase, modify, or extend any liabilities of the Company and in connection therewith execute any extensions or renewals of encumbrances on any or all of the property or assets of the Company;

    (k)    To comply with, or cause to be complied with, all provisions of the Act governing the administration of a limited liability company, including, but not limited to, filing with the Nevada Secretary of State any required and necessary amended Articles of Organization; and

    (l)    To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

    4.4    <u>Certain Actions Requiring the Consent of the Members.</u>  Notwithstanding any other provisions of this Agreement relating to the authority of the Manager, the following actions shall require the prior written consent of a Super-Majority in Interest:

    (a)    Subject to Section 13.3, to amend this Agreement;

    (b)    To sell or otherwise dispose of all or substantially all of the assets of the Company as part of a single transaction or plan;

(c)    To enter into any joint venture investment with any other Person;

(d)    To merge the Company with or to consolidate the Company with any other entity, or otherwise cause the Company to participate in any reorganization with any other entity;

(e)    To name additional managers of the Company;

(f)    To dissolve the Company as set forth in Section 12.1(a); and

(g)    To file a voluntary petition in bankruptcy, or appoint a receiver for the Company.

4.5    <u>Affirmative Manager Responsibilities</u>. Notwithstanding any other provision(s) in this Agreement, the Manager shall be required to perform or cause to be performed the following functions:

(a)    Maintain adequate records and books of accounts;

(b)    Maintain sufficient insurance customary to the operations carried on by the Company;

(c)    Comply with all applicable laws and obtain all permits necessary to conduct the Company's business; and

(d)    Comply with the terms of all material agreements entered into by the Company.

4.6    <u>Prohibited Acts</u>. Neither the Manager nor any other officer or agent of the Company shall have authority to do any of the following acts on behalf of the Company:

(a)    Possess property of the Company, or assign rights in property of the Company for other than a purpose of the Company;

(b)    Commingle the funds of the Company with those of any other Person;

(c)    Knowingly perform any act that contravenes the provisions of this Agreement;

(d)    Knowingly take any action that is inconsistent with achieving the purposes of the Company, except as otherwise provided in this Agreement;

(e)    Knowingly perform any act that would subject any Member to personal liability commensurate with that of a general partner of a general partnership; or

(f)    Possess property of the Company, or assign rights in property of the Company for other than a purpose of the Company.

6

4.7    Reliance Upon Actions by the Manager. Any Person dealing with the Company may rely without any duty of inquiry upon any action taken by the Manager on behalf of the Company. Any and all deeds, bills of sale, assignments, mortgages, deeds of trust, security agreements, promissory notes, or other contracts or instruments executed by the Manager on behalf of the Company shall be binding upon the Company, and all of the Members agree that a copy of this provision may be shown to the appropriate parties in order to confirm the same. Without limiting the generality of the foregoing, any Person dealing with the Company may rely upon a certificate or written statement signed by a Manager as to:

(a)    The identity of the Manager or any Member;

(b)    The existence or nonexistence of any fact or facts that constitute a condition precedent to acts by the Manager or that are in any other manner germane to the affairs of the Company;

(c)    The Persons who are authorized to execute and deliver any instrument or documents on behalf of the Company; or

(d)    Any act or failure to act by the Company on any other matter whatsoever involving the Company, or any Member.

4.8    Initial Managers, Number, Tenure, and Qualifications. The initial Managers shall be Ron Buchholz and Charice Buchholz. The initial Managers shall hold office until the earlier of their respective death, resignation, or removal. If a Manager dies, resigns or is removed from office, any replacement Manager shall be determined by a Majority in Interest. The Manager shall not be required to be a resident of the State of Nevada, nor be a Member of the Company.

4.9    Resignation. A Manager may resign at any time by delivering written notice to all of the Members. The resignation of the Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. Such resignation shall not affect the Manager's rights and liabilities as a Member, if applicable.

4.10    Removal. A Manager may be removed from office with or without cause by the unanimous written consent of all the Members.

4.11    Vacancies. Any vacancy occurring for any reason in the office of Manager may be filled by the affirmative vote of a Majority in Interest.

4.12    Independent Activities. Neither this Agreement nor any obligation undertaken pursuant hereto shall prevent the Managers from engaging in any activities that they choose, or require the Managers to permit the Company or any Member to participate in such activities. The foregoing shall also apply with respect to the activities of any officer, employee, or agent of the Company except to the extent prescribed by the Manager.

4.13    Salary and Expenses. The Manager may receive reasonable compensation for services rendered in its capacity as Manager as determined by the consent of a Majority of the Members. The Manager and Members shall be entitled to have the Company pay, or be

7

reimbursed by the Company for, reasonable and necessary out-of-pocket expenses incurred on behalf of the Company and approved by the Manager.

## ARTICLE V

## DISTRIBUTIONS TO MEMBERS

5.1     Distributions of Net Cash Flow.  Prior to the dissolution of the Company and the commencement of the liquidation of its assets and winding up of its affairs, the Manager may in its sole discretion, distribute from time to time the Net Cash Flow to the Members pro rata in accordance with their respective Percentage Interests.

5.2     Distributions in Liquidation.  Following the dissolution of the Company and the commencement of winding up and the liquidation of its assets, distributions to the Members shall be governed by Section 12.2.

5.3     Amounts Withheld.  All amounts withheld pursuant to the Code or any provisions of state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amounts distributed to the relevant Member for all purposes of this Agreement.

5.4     State Law Limitation on Distributions.  Notwithstanding any provision to the contrary contained in this Agreement, the Manager shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

## ARTICLE VI

## ALLOCATION OF PROFITS AND LOSSES

6.1     Allocation of Profits and Losses.  After making any special allocations required under Appendix 1, the Profits and Losses of the Company (and each item of income, gain, loss, and deduction entering into the computation thereof) for each year, shall be allocated among the Members pro rata in accordance with their respective Percentage Interests.

6.2     Tax Allocations.  All items of income, gain, loss, deduction and credit of the Company for any tax period shall be allocated among the Members in accordance with the allocations of Profits and Losses prescribed in this Article VI and Appendix 1.

6.3     Allocation in Respect to Transferred Interest.  If a Member's Interest is conveyed in a Permitted Transfer during any year, allocations of Profits and Losses and items of income, gain, loss, and deduction with respect to such Interest shall be allocated between the transferor and the transferee by taking into account their varying interests in such Interest during the year as though the Company's books were closed on the date of the Permitted Transfer.

8

## ARTICLE VII

## LIABILITIES, RIGHTS AND OBLIGATIONS OF MEMBERS

7.1    Limitation of Liability. Each Member's liability for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law. The provisions of this Section 7.1 shall not be deemed to limit in any way the liabilities of any Member to the Company and to the other Members arising from a breach of this Agreement, including any breach of the representations set forth in Section 13.10.

7.2    Access to Company Records. Upon the written request of any Member, the Manager shall permit such Member, at a reasonable time to both the Manager and the Member, to inspect and copy, at the Member's expense, the Company records required to be maintained pursuant to Section 9.1.

7.3    Priority And Return of Capital. No Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Profits, Losses, or distributions; provided, however, that this Section 7.3 shall not apply to repayment of any loans (as distinguished from Capital Contributions) that a Member may make to the Company, if applicable.

7.4    Authority to Bind the Company, Management Authority. Unless authorized to do so by this Agreement or otherwise by the Manager in writing, no Member shall have any power or authority to bind the Company in any way, to pledge the Company's credit, to render the Company liable for any purpose, or to otherwise engage in the management of the Company. It is expressly provided herein that for the purposes of this Section 7.4 and any other provision of this Agreement, unless the context indicates to the contrary, the term "Member" includes any individual Member or group of Members.

7.5    Waiver of Action for Partition. Each Member irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to property of the Company.

7.6    Cooperation With Tax Matters Partner. Each Member agrees to cooperate with the TMP and to do or refrain from doing any or all things reasonably required by the TMP in connection with the conduct of any proceedings involving the TMP.

7.7    Voting Rights. The Members shall have the right to vote on the matters specifically reserved for their approval or consent set forth in this Agreement.

7.8    Meetings of Members. The Manager shall convene a meeting of the Members upon the request of a Majority in Interest of the Members or a Manager. Such meeting shall be held not later than ten (10) days following request therefor. Any meeting of Members shall be held at the registered office of the Company or at such other place as all of the Members shall unanimously agree. Any Member may participate in any meeting of Members by means of a conference telephone or similar communication equipment.

## ARTICLE VIII

## LIABILITY, EXCULPATION AND INDEMNIFICATION

8.1    Liability. Except as otherwise provided by the Act or pursuant to any agreement, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Covered Person shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Covered Person.

8.2    Exculpation. No Covered Person shall be liable to the Company or any Member for any act or omission taken or suffered by such Covered Person in good faith and in the reasonable belief that such act or omission is in or is not contrary to the best interests of the Company and is within the scope of authority granted to such Covered Person by this Agreement; provided, however, that Covered Persons shall remain liable to the Company for acts in breach of this Agreement, breach of any fiduciary duty owed to the Company and for gross negligence and willful misconduct in connection with matters relating to the Company.

8.3    Indemnification.

(a)    The Company shall, to the fullest extent permitted by applicable law, indemnify, hold harmless and release each Covered Person from and against all claims, demands, liabilities, costs, expenses, damages, losses, suits, proceedings and actions, whether judicial, administrative, investigative or otherwise, of whatever nature, known or unknown, liquidated or unliquidated, that may accrue to or be incurred by any Covered Person as a result of the Covered Person's activities associated with the Company; provided, however, that the benefits of this Section 8.3(a) shall not extend to acts in breach of this Agreement, breach of any fiduciary duty owed to the Company and for gross negligence and willful misconduct in connection with matters relating to the Company.

(b)    Members shall not be required directly to indemnify any Covered Person.

## ARTICLE IX

## BOOKS AND RECORDS, REPORTS, TAX ACCOUNTING, BANKING

9.1    Books and Records. The Manager, at the expense of the Company, shall keep or cause to be kept adequate books and records for the Company that contain an accurate account of all business transactions arising out of and in connection with the conduct of the Company required by the Act. Additionally, at the expense of the Company, the Manager shall maintain or cause to be maintained the following records:

(a)    A list of the full name and last known business, residence, or mailing address of each Member, both past and present;

(b)    A copy of the Articles of Organization for the Company, and all amendments thereto;

10

(c)    Copies of the Company's currently effective Agreement and all amendments thereto, copies of any prior Agreements no longer in effect, and copies of any writings permitted or required with respect to a Member's obligation to contribute cash, property, or services;

(d)    Copies of the Company's federal, state, and local income tax returns and reports for the six (6) most recent years;

(e)    Copies of financial statements of the Company, if any, for the six most recent years;

(f)    Minutes of every meeting of the Members;

(g)    Any written consents or approvals obtained from Members for actions taken by the Manager; and

(h)    Any written consents or approvals obtained from Members for actions taken by Members without a meeting.

Any Member or its designated representative shall have the right, at any reasonable time, to have access to and may inspect and copy the contents of such books or records.

9.2    <u>Tax Matters</u>.

(a)    The Members intend that the Company shall be operated in a manner consistent with its treatment as a partnership for federal and state income tax purposes. The Members agree not to take any action inconsistent with this expressed intent. Specifically, it is expressly provided that the TMP shall take no action to cause the Company to elect to be taxed as a corporation pursuant to Regulations Section 301.7701-3(a) or any counterpart under state law. It is further expressly provided that each Member agrees not to make any election for the Company to be excluded from the application of the provisions of Subchapter K of the Code.

(b)    Charice Buchholz is hereby designated as the tax matters partner as defined in Section 6231 of the Code (the "<u>TMP</u>") of the Company and shall be authorized and required to represent the Company in connection with all examinations of the Company's affairs by tax authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. Each Member agrees to cooperate with the TMP and to do or refrain from doing any or all things reasonably required by the TMP to conduct such proceedings. The TMP shall serve as TMP of the Company until he dies (if an individual) or it dissolves (if an entity) or resigns as TMP. Any successor TMP shall be selected by a Majority in Interest of the Members.

9.3    <u>Bank Accounts</u>. All funds of the Company shall be deposited in the name of the Company in an account or accounts maintained with such bank or banks selected by the Manager. The funds of the Company shall not be commingled with the funds of any other Person. Checks shall be drawn upon the Company account or accounts only for the purposes of the Company and shall be signed by authorized Persons on behalf of the Company.

11

## ARTICLE X

## ADMISSIONS AND WITHDRAWALS

10.1   Admission of Member.  No additional Persons shall be admitted as a Member of the Company as a result of the issuance of additional Interests after the date of formation of the Company without the consent of a Majority in Interest of the Members and unanimous consent of the Managers.  Additionally, no Person shall be admitted as a Member of the Company after the date of formation of the Company as a result of a Transfer of a Member's Interest(s) except in accordance with Section 11.5.

10.2   Right to Withdraw.  A Member may withdraw from the Company at any time by mailing or delivering a written notice of withdrawal to the Manager.  If the withdrawing Member is the Manager, such Member may withdraw by mailing or delivering a written notice of withdrawal to the Company and to the other Members at their last known addresses set forth in Exhibit A.

10.3   Rights of Withdrawn Member.  Upon the occurrence of a Withdrawal Event with respect to a Member, the Withdrawn Member (or the Withdrawn Member's personal representative or other successor if applicable) shall cease to participate in management of the Company or to have any rights of a Member except only the right to receive distributions occurring at the times and equal in amounts to those distributions the Withdrawn Member would otherwise have received if a Withdrawal Event had not occurred; provided, however, that in the event of a Withdrawal Event that entails the death of a Member, the personal representative or other successor, or successors of such Person shall be admitted as a Member or as Members of the Company immediately following the death of such Person with the identical rights and obligations as a Member possessed by such Person immediately preceding such Person's death.  The preceding sentence shall also apply in the event of the death of any personal representative or successor who succeeds to an interest as a Member of the Company upon the death of any such Person.  If in any case there are no remaining Members, distributions to any Withdrawn Member shall be governed by Section 12.2.

## ARTICLE XI

## RESTRICTIONS ON TRANSFERABILITY

11.1   General.  No Member shall be authorized to transfer all or a portion of their Interest unless the Transfer constitutes a Permitted Transfer.

11.2   Permitted Transfers.  Subject to the conditions and restrictions set forth in Section 11.3, a Transfer of a Member's Interest shall constitute a Permitted Transfer provided that:

(a)     The Transfer is made to another Member; or

(b)     The Transfer is made following compliance with the terms of the right-of-first refusal set forth in Section 11.4.

12

11.3    Conditions To Permitted Transfer. A Transfer shall not be treated as a Permitted Transfer unless the following conditions are satisfied:

(a)    The transferor and the transferee reimburse the Company for all costs that the Company incurs in connection with such Transfer; and

(b)    The transferor and the transferee agree to execute such documents and instruments necessary or appropriate in the discretion of the Manager to confirm such Transfer.

It is expressly provided herein that the transferee of an Interest in a Permitted Transfer under Sections 11.2(a) and (b) shall automatically become a Substitute Member unless the transferor determines to the contrary. If the transferee of an Interest in a Permitted Transfer shall not become a Substitute Member, the transferee shall have only the rights set forth in Section 11.6 hereof.

11.4    Right of First Refusal.

(a)    General. If any Member desires to Transfer all or a portion of the Member's Interest to any Person who is not a Member and the Transfer is not described in Section 11.2(a) or (b), such Transfer shall not constitute a Permitted Transfer unless such Member shall afford the Company and the other Members a right-of-first refusal pursuant to this Section 11.4.

(b)    Notice. Before Transferring their Interest, a Member must first provide to the Company and the other Members at least seventy-five (75) days ("Notice Period") prior written notice of their intention to Transfer any part or all of their Interest (the "Disposition Notice"). The Member proposing to dispose of all or part of his, her or its Interest shall be known as the "Disposing Member" and the other Members shall be known as the "Non-Disposing Members" for purposes of this Agreement. In the Disposition Notice, the Disposing Member shall specify the price at which the Interest is proposed to be sold or transferred ("Offering Price"), which may not consist of consideration other than cash and/or promissory notes, the portion of their Interest to be sold or transferred, the identity of the proposed purchaser or transferee, and the terms and conditions of the proposed transaction.

(c)    Option to Company. The Manager may elect, on behalf of the Company, within fifteen (15) days after receiving the Disposition Notice, to purchase the Interest proposed to be disposed of by the Disposing Member at the Offering Price. The terms and conditions of the purchase by the Company shall be the terms and conditions of the proposed transaction, as set forth in the Disposition Notice.

(d)    Options to Members. If the entire Interest covered by the Disposition Notice is not purchased by the Company, the remaining Interest may be purchased by the Non-Disposing Members on the same terms and at the same price available to the Company. Each Non-Disposing Member shall have the option to purchase that portion of the Disposing Member's Interest that is necessary to maintain their Percentage Interest vis-a-vis the other Non-Disposing Members. If any Non-Disposing Member does not purchase the portion of the Interest available to them, the remaining Interest will then be available for purchase by the other Non-Disposing Members in proportion to their Percentage Interests.

(e)    Timing. If the Company decides to purchase less than all of the Interest offered by the Disposing Member, within fifteen (15) days after the Company reaches such decision, and, in any event, at the expiration of the first thirty (30) days of the Notice Period specified in Section 11.4(b), the Company shall so notify each Non-Disposing Member. The notice shall state that the Company did not exercise its option to purchase with respect to the entire Interest offered pursuant to the Disposition Notice and shall contain appropriate information concerning the Non-Disposing Members' options to purchase all or any part of the remaining Interest offered by the Disposing Member. Each Non-Disposing Member must give written notice to the Disposing Member and the other Non-Disposing Members of the exercise of their option to acquire their pro rata portion of such Interest within the first forty-five (45) days of the Notice Period. If any Non-Disposing Member does not elect to purchase all of the portion of the Interest available to them, the remaining Non-Disposing Members shall be entitled to purchase such Interest in accordance with subparagraph (d) by giving written notice to the Disposing Member and the other Non-Disposing Members within the first sixty (60) days of the Notice Period.

(f)    Condition to Electing Option. The options set forth in Sections 11.4(c) and 11.4(d) shall be subject to the condition that in no event shall less than one hundred percent (100%) of the Interest proposed to be disposed of by the Disposing Member be purchased in the aggregate by the Company and the Non-Disposing Members.

(g)    Transfer to Third Party. If neither the Company nor the Non-Disposing Members shall have purchased the entire Interest covered by the Disposition Notice as provided in the foregoing subsections of this Section 11.4 within the first sixty (60) days of the notice period, the Disposing Member may sell to Persons other than the Company and the Non-Disposing Members, provided that any disposition must be made on the terms and conditions and to the party specified in the Disposition Notice and must be consummated within the Notice Period. After the termination of the Notice Period, the restrictions of this Article 11.4 shall apply again.

11.5    Admission of Substitute Member.

(a)    Except as otherwise provided in paragraph (b) of this Section 11.5, a transferee of an Interest who is not a Member shall be admitted to the Company as a Substitute Member only upon satisfaction of the following conditions:

(i)    The Interest with respect to which the transferee is being admitted was acquired by means of a Permitted Transfer;

(ii)    The transferee becomes a party to this Agreement and executes such documents and instruments as the Members determine are necessary or appropriate to confirm such transferee as a Member and such transferee's agreement to be bound by the terms of this Agreement;

(iii)    The transferee provides the Company with evidence satisfactory to counsel for the Company that such transferee has made each of the representations and covenants set forth in Section 13.10 hereof; and

14

(iv)    A Majority in Interest (defined for this purpose by excluding the transferor Member) consent to the admission of the transferee as a Substitute Member, which consent may be given or withheld for any reason or for no reason.

(b)    A transferee of an Interest in a Permitted Transfer under Sections 11.2(a) and (b) shall automatically become a Substitute Member unless the transferor directs in writing to the contrary.

11.6    Rights of Assignee. A Person who acquires an Interest in the Company (other than a Person who was a Member before such acquisition) but who is not admitted to the Company as a Substitute Member, shall have only the right to receive the distributions and allocations of taxable income or loss to which the Member would have been entitled under this Agreement with respect to the transferred Interest and shall not have or enjoy any right to participate in the management of the Company, or to exercise any voting rights hereunder or to receive any financial information or reports relating to the Company or any other rights of a Member under the Act or this Agreement, unless and until the purchaser or transferee is admitted as a Member pursuant to Section 10.1 hereof.

11.7    Prohibited Transfers. Any purported Transfer of Interests that is not a Permitted Transfer shall be null and void and of no force and effect whatsoever. In the case of an attempted Transfer that is not a Permitted Transfer, the parties engaging in or attempting to engage in such Transfer shall be liable to and shall indemnify and hold harmless the Company from all loss, cost, liability and damages that the Company or any Member shall incur as a result of such attempted Transfer.

## ARTICLE XII

## DISSOLUTION AND TERMINATION

12.1    Dissolution. The Company shall be dissolved upon the first to occur of any of the following events:

(a)    The affirmative vote or written agreement of all the Members;

(b)    The entry of a decree of judicial dissolution under the Act; or

(c)    The sale, exchange, or other disposition of all or substantially all the assets of the Company.

It is expressly provided herein that the Company shall not be dissolved upon the occurrence of a Withdrawal Event with respect to a Manager or a Member unless there are no Members.

12.2    Liquidation, Winding Up and Distribution of Assets. A Manager shall, upon dissolution of the Company, proceed to liquidate the Company's assets and properties, discharge the Company's obligations, and wind up the Company's business and affairs as promptly as is consistent with obtaining the fair value thereof. The proceeds of liquidation of the Company's assets, to the extent sufficient therefor, shall be applied and distributed as follows:

(a)    First, to the payment and discharge of all of the Company's debts and liabilities except those owing to Members or to the establishment of any reasonable reserves for contingent or unliquidated debts and liabilities;

(b)    Second, to the payment of any accrued interest owing on any debts and liabilities owing to Members in proportion to the amount due and owing to each Member;

(c)    Third, to the payment of outstanding principal amounts owing on any debts and liabilities owing to Members in proportion to the amount due and owing to each Member; and

(d)    Fourth, to the Members in accordance with the positive balance of each Member's Capital Account as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs, including any Capital Account Adjustments associated with the allocation of Profits and Losses with respect to any transaction which results in the dissolution and liquidation of the Company. Any such distributions to the Members in respect of their Capital Accounts shall be made within the time requirements of Section 1.704-1(b)(3)(ii)(b)(2) of the Regulations. If for any reason the amount distributable pursuant to this Section 12.2(d) shall be more than or less than the sum of all the positive balances of the Members' Capital Accounts, the proceeds distributable pursuant to this Section 12.2(d) shall be distributed among the Members in accordance with the ratio by which the positive Capital Account balance of each Member bears to the sum of all positive Capital Account balances.

12.3    <u>Deficit Capital Accounts</u>. No Member shall have any obligation to contribute or advance any funds or other property to the Company by reason of any negative or deficit balance in such Member's Capital Account during or upon completion of winding up or at any other time.

12.4    <u>Articles of Dissolution</u>. When all the remaining property and assets have been applied and distributed in accordance with Section 12.2 hereof, the Manager (or such other Person designated by the Members) shall cause "Articles of Dissolution" to be executed and filed with the Nevada Secretary of State in accordance with the Act.

12.5    <u>Return of Contribution Non-Recourse to Other Members</u>. Except as provided by law, upon dissolution, each Member shall look solely to the assets of the Company for the return of the Member's Capital Contributions. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash or other property contribution of one or more Members, such Member or Members shall have no recourse against the Manager or any other Member.

12.6    <u>In Kind Distributions</u>. A Member shall have no right to demand and receive any distribution from the Company in any form other than cash. However, a Member may be compelled to accept a distribution of an asset in kind if the Company is unable to dispose of all of its assets for cash.

16

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    Notices.  Except as otherwise provided herein, any notice, demand, or communication required or permitted to be given to a Member by any provision of this Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the Member or, if sent by registered or certified mail, postage and charges prepaid, addressed to the Member's address set forth in Exhibit A.  Except as otherwise provided herein, any such notice shall be deemed to be given on the date on which the same was deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and sent as aforesaid.

13.2    Governing Law.  This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the State of Nevada.

13.3    Amendments.  This Agreement may not be amended except by a written agreement of all of the Members.  Notwithstanding the foregoing, the Manager shall be authorized to make any amendments to this Agreement which, in the opinion of counsel to the Company, are necessary to maintain the status of the Company as a partnership for federal and state income tax purposes.

13.4    Additional Documents and Acts.  Each Member agrees to execute and deliver such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, carry out and perform all of the terms, provisions and conditions of this Agreement and the transactions contemplated hereby.

13.5    Headings.  The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof.

13.6    Severability.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.  Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

13.7    Heirs, Successors, and Assigns.  Each and all of the covenants, terms, provisions, and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Agreement and by applicable law, their respective heirs, legal representatives, successors, and assigns.

13.8    Creditors and Other Third Parties.  None of the provisions of this Agreement shall be for the benefit of, or enforceable, by any creditors of the Company or any other third parties.

17

13.9    Section, Other References. Except to the extent provided, references to the terms "Section," "Schedule," "Exhibit", or "Appendix" means to the corresponding Sections, Schedules, Exhibits, or Appendices of this Agreement.

13.10    Authority to Adopt Agreement. By execution hereof, each Member represents and covenants as follows:

(a)    The Member has full legal right, power, and authority to deliver this Agreement and to perform the Member's obligations hereunder;

(b)    This Agreement constitutes the legal, valid, and binding obligation of the Member enforceable in accordance with its terms, except as the enforcement thereof may be limited by bankruptcy and other laws of general application relating to creditors' rights or general principles of equity;

(c)    This Agreement does not violate, conflict with, result in a breach of the terms, conditions or provisions of, or constitute a default or an event of default under any other agreement of which the Member is a party; and

(d)    The Member's investment in Interests in the Company is made for the Member's own account for investment purposes only and not with a view to the resale or distribution of such interest.

13.11    Sole and Absolute Discretion. Except as otherwise provided in this Agreement, all actions that the Manager may take and all determinations that the Manager may make pursuant to this Agreement may be taken and made at the sole and absolute discretion of the Manager.

13.12    Counterparts. This Agreement may be executed in one or more counterparts each of which shall for all purposes be deemed an original and all of such counterparts, taken together, shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

**COMPANY:**

SOLOMON TOWERS, LLC

By: _____
Ron Buchholz, Manager

By: _____
Charice Buchholz, Manager

18

**MEMBERS:**

_Sun City Towers, LLC_

_Steven Trachsel_

Name:    Steven Trachsel

Title:    Manager

Date:    3/3/05

19

## EXHIBIT A

## SCHEDULE OF MEMBERS

| Member | Address | Initial Capital Contribution | First Additional Capital Contribution | % Interest |
|--------|---------|------------------------------|---------------------------------------|------------|

Solomon Towers, LLC
Exhibit A
Schedule of Members

| Investor # | Name | Member Capital Contribution | Member Percentage Interest |
|---|---|---|---|
| 1 | Atocha Land, LLC C/O Tom Cirrito, Manager | $ 650,000.00 | 15.59% |
| 2 | Cirrito Holdings C/O Michael Cirrito, Manager | $ 150,000.00 | 3.60% |
| 3 | David Towers, LLC C/O Roland Lee, Manager | $ 500,000.00 | 11.99% |
| 4 | Lee Living Trust C/O Roland Lee, Trustee | $ 100,000.00 | 2.40% |
| 5 | JKAT Properties, LLC C/O James Coates, Manager | $ 250,000.00 | 6.00% |
| 6 | Daystream ST, LLC C/O Jan Edbrooke, Manager | $ 1,000,000.00 | 23.98% |
| 7 | Kang Living Trust C/O Yung Ho Kang, Trustee | $ 150,000.00 | 3.60% |
| 8 | The Laubach Living Trust C/O Mark Laubach, Trustee | $ 150,000.00 | 3.60% |
| 9 | Al & Betty Miller | $ 150,000.00 | 3.60% |
| 10 | Sun City Towers, LLC C/O Steven Trachsel, Manager | $ 200,000.00 | 4.80% |
| 11 | Tower Capital Partners, LLC C/O Sam Stafford, Manager | $ 150,000.00 | 3.60% |
| 12 | Dennis Krantz | $ 150,000.00 | 3.60% |
| 13 | CRS Properties, LLC C/O Todd Squellati, Manager | $ 200,000.00 | 4.80% |
| 14 | Tony & Cynthia Liardon | $ 60,000.00 | 1.44% |
| 15 | Timothy & Carole Hendrix | $ 32,000.00 | 0.77% |
| 16 | Buchholz Family Trust C/O Melody Buchholz, Trustee | $ 108,900.00 | 2.61% |
| 17 | The Opie-Gluska Family Trust C/O Michael Opie, Trustee | $ 90,000.00 | 2.16% |
| 18 | Figone Family Living Trust C/O Al Figone, Trustee | $ 78,500.00 | 1.88% |
| Total | | $ 4,169,400.00 | 100.00% |

Solomon Towers, LLC
Exhibit B
Notes to Solomon Towers, LLC

| Loan # | Name | Loan Amount |
|---|---|---|
| 1 | Pensco FBO Tamara Gluska, IRA (Acct.# GL040) | $ 15,500.00 |
| 2 | Pensco FBO Tamara Gluska, IRA (Acct.# GL039) | $ 18,900.00 |
| 3 | Pensco FBO Michael Opie, IRA (Acct.# OP005) | $ 75,600.00 |
| 4 | Pensco FBO Juan Bettaglio, IRA (Acct.# BE1BJ) | $ 200,000.00 |
| 5 | Equity Trust FBO Alan J Figone, IRA (Acct. # 36929) | $ 98,500.00 |
| 6 | Equity Trust FBO Janet M Figone, IRA (Acct. # 36930) | $ 23,000.00 |
| 7 | Pensco FBO William E Buchholz, IRA (Acct.# BU212) | $ 82,000.00 |
| 8 | Pensco FBO William E Buchholz, IRA (Acct.# BU213) | $ 62,000.00 |
| 9 | Pensco FBO Melody J Buchholz, IRA (Acct.# BU214) | $ 58,000.00 |
| 10 | Pensco FBO William E Buchholz, IRA (Acct.# BU216) | $ 31,100.00 |
| 11 | Sterling Trust FBO Timothy Mark Hendrix, IRA (Acct.# 077536) | $ 95,000.00 |
| 12 | Sterling Trust FBO Carole Ann Hendrix, IRA (Acct.# 077535) | $ 23,000.00 |
| 13 | Sterling Trust FBO Millard Buchholz, IRA (Acct. # 077438) | $ 58,000.00 |
| Total | | $ 840,600.00 |

Solomon Towers, LLC
Exhibit B
Notes to Solomon Towers, LLC

| Loan # | Name | Loan Amount |
|---|---|---|
| 1 | Pensco FBO Tamara Gluska, IRA (Acct.# GL040) | $ 15,500.00 |
| 2 | Pensco FBO Tamara Gluska, IRA (Acct.# GL039) | $ 18,900.00 |
| 3 | Pensco FBO Michael Opie, IRA (Acct.# OP005) | $ 75,600.00 |
| 4 | Pensco FBO Juan Bettaglio, IRA (Acct.# BE1BJ) | $ 200,000.00 |
| 5 | Equity Trust FBO Alan J Figone, IRA (Acct. # 36929) | $ 98,500.00 |
| 6 | Equity Trust FBO Janet M Figone, IRA (Acct. # 36930) | $ 23,000.00 |
| 7 | Pensco FBO William E Buchholz, IRA (Acct.# BU212) | $ 82,000.00 |
| 8 | Pensco FBO William E Buchholz, IRA (Acct.# BU213) | $ 62,000.00 |
| 9 | Pensco FBO Melody J Buchholz, IRA (Acct.# BU214) | $ 58,000.00 |
| 10 | Pensco FBO William E Buchholz, IRA (Acct.# BU216) | $ 31,100.00 |
| 11 | Sterling Trust FBO Timothy Mark Hendrix, IRA (Acct.# 077536) | $ 95,000.00 |
| 12 | Sterling Trust FBO Carole Ann Hendrix, IRA (Acct.# 077535) | $ 23,000.00 |
| 13 | Sterling Trust FBO Millard Buchholz, IRA (Acct. # 077438) | $ 58,000.00 |
| | | |
| Total | | $ 840,600.00 |

(d)     Section 752(c) of the Code shall be applied in determining the amount of any liabilities taken into account for purposes of this definition of "Capital Account"; and

(e)     The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Sections 1.704-1(b) and 1.704-2 of the Regulations and shall be interpreted and applied in a manner consistent with such Regulations. The Manager may modify the manner of computing the Capital Accounts or any debits or credits thereto (including debits or credits relating to liabilities that are secured by contributed or distributed property or that are assumed by the Company or any Member) in order to comply with such Regulations, provided that any such modification is not likely to have a material effect on the amounts distributable to any Member pursuant to Section 12.2 upon the dissolution of the Company. Without limiting the generality of the preceding sentence, the Manager shall make any adjustments that are necessary or appropriate to maintain equality between the aggregate sum of the Capital Accounts and the amount of capital reflected on the balance sheet of the Company, as determined for book purposes in accordance with Section 1.704-1(b)(2)(iv)(g) of the Regulations. The Manager shall also make any appropriate modifications if unanticipated events (for example, the availability of investment tax credits) might otherwise cause this Agreement not to comply with Regulations Section 1.704-1(b).

"Company Minimum Gain" has the same meaning as the term "partnership minimum gain" under Regulations Section 1.704-2(d) of the Regulations.

"Depreciation" means, for each year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset for such year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such year or other period, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization or other cost recovery deduction for such year or other period bears to such beginning adjusted tax basis; provided, however, that if such depreciation, amortization or other cost recovery deductions with respect to any such asset for federal income tax purposes is zero for any year, Depreciation shall be determined with reference to the asset's Gross Asset Value at the beginning of such year using any reasonable method selected by the Manager.

"Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(a)     The initial Gross Asset Value for any asset (other than money) contributed by a Member to the Company shall be as determined by the Manager and the contributing Member;

(b)     The Gross Asset Value of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by the Manager as of the following times: (i) the acquisition of additional Interest in the Company by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (ii) the distribution by the

## APPENDIX 1

## SPECIAL TAX AND ACCOUNTING PROVISIONS

A.1    Accounting Definitions.    The following terms, which are used predominantly in this Appendix 1, shall have the meanings set forth below for all purposes under this Agreement.

"Adjusted Capital Account Balance" means, with respect to any Member, the balance of such Member's Capital Account as of the end of the relevant year, after giving effect to the following adjustments:

(a)    Credit to such Capital Account any amounts which such Member is obligated to restore pursuant to this Agreement or as determined pursuant to Regulations Section 1.704-1(b)(2)(ii)(c), or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5); and

(b)    Debit to such Capital Account the items described in clauses (4), (5) and (6) of Section 1.704-1(b)(2)(ii)(d) of the Regulations.

The foregoing definition of Adjusted Capital Account Balance is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and shall be interpreted consistently therewith.

"Capital Account" means, with respect to any Member or other owner of Interests in the Company, the Capital Account maintained for such Person in accordance with the following provisions:

(a)    To each such Person's Capital Account, there shall be credited the amount of money and the initial Gross Asset Value of the such Person's Capital Contributions as determined by the Manager, such Person's distributive share of Profits and any items in the nature of income or gain that are specially allocated pursuant to Sections A.2 and A.3 hereof, and the amount of any Company liabilities assumed by such Person;

(b)    To each such Person's Capital Account there shall be debited the amount of cash and the Gross Asset Value of any Company property distributed to such Person pursuant to any provision of this Agreement as determined by the Manager, such Person's distributive share of Losses, and any items in the nature of expenses or losses that are specially allocated pursuant to Sections A.2 and A.3 hereof, and the amount of any liabilities of such Person assumed by the Company;

(c)    In the event any Interest or portion thereof (or other equity interest in the Company) is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest;

(ii)

Company to a Member of more than a *de minimis* amount of cash or property as consideration for Interest in the Company, if (in any such event) such adjustment is necessary or appropriate, in the reasonable judgment of the Manager, to reflect the relative economic interests of the Members in the Company; or (iii) the liquidation of the Company for federal income tax purposes pursuant to Regulations Section 1.704-1(b)(2)(ii)(g);

(c)    The Gross Asset Value of any Company asset distributed to any Member shall be adjusted to equal its gross fair market value on the date of distribution;

(d)    The Gross Asset Value of the Company's assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Regulation Section 1.704-1(b)(2)(iv)(m) and Section A.2(g) hereof; provided, however, that Gross Asset Values shall not be adjusted pursuant to this subsection (d) to the extent that an adjustment pursuant to subsection (b) of this definition is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this subsection (d); and

(e)    If the Gross Asset Value of an asset has been determined or adjusted pursuant to subsection (a), (b) or (d) above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account from time to time with respect to such asset for purposes of computing Profits and Losses.

"Member Nonrecourse Debt" has the same meaning as the term "partner nonrecourse debt" under Section 1.704-2(b)(4) of the Regulations.

"Member Nonrecourse Debt Minimum Gain" has the same meaning as the term "partner nonrecourse debt minimum gain" under Section 1.704-2(i)(2) of the Regulations and shall be determined in accordance with Section 1.704-2(i)(3) of the Regulations.

"Member Nonrecourse Deductions" has the same meaning as the term "partner nonrecourse deductions" under Regulations Section 1.704-2(i)(1). The amount of Member Nonrecourse Deductions with respect to a Member Nonrecourse Debt for each Fiscal Year of the Company equals the excess (if any) of the net increase (if any) in the amount of Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt during such Fiscal Year over the aggregate amount of any distributions during such Fiscal Year to the Member that bears the economic risk of loss for such Member Nonrecourse Debt to the extent that such distributions are from the proceeds of such Member Nonrecourse Debt which are allocable to an increase in Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(2) of the Regulations.

"Nonrecourse Debt" or "Nonrecourse Liability" has the same meaning as the term "nonrecourse liability" under Section 1.704-2(b)(3) of the Regulations.

"Nonrecourse Deductions" has the meaning set forth in Section 1.704-2(b)(1) of the Regulations. The amount of Nonrecourse Deductions for a Company Fiscal Year equals the excess (if any) of the net increase (if any) in the amount of Company Minimum

Gain during that Fiscal Year over the aggregate amount of any distributions during that Fiscal Year of proceeds of a Nonrecourse Debt that are allocable to an increase in Company Minimum Gain, determined according to the provisions of Section 1.704-2(c) of the Regulations.

"Profits" or "Losses" means, for each Fiscal Year or other period, the taxable income or taxable loss of the Company as determined under Code Section 703(a) (including in such taxable income or taxable loss all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code) with the following adjustments:

(a)    All items of gain or loss resulting from any disposition of the Company's property shall be determined upon the basis of the Gross Asset Value of such property rather than the adjusted tax basis thereof;

(b)    Any income of the Company that is exempt from federal income tax shall be added to such taxable income or loss;

(c)    Any expenditures of the Company that are described in Code Section 705(a)(2)(B), or treated as such pursuant to Regulations Section 1.704-1(b)(2)(iv)(i), and that are not otherwise taken into account in the computation of taxable income or loss of the Company, shall be deducted in the determination of Profits or Losses;

(d)    If the Gross Asset Value of any Company asset is adjusted pursuant to subsection (b) or (c) of the definition of "Gross Asset Value" set forth in this Appendix 1, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses unless such gain or loss is specially allocated pursuant to Section A.2 hereof;

(e)    In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in determining such taxable income or loss, there shall be deducted Depreciation, computed in accordance with the definition of such term in this Appendix 1; and

(f)    Notwithstanding any of the foregoing provisions, any items that are specially allocated pursuant to Section A.2 or A.3 hereof shall not be taken into account in computing Profits or Losses.

A.2    Special Allocations. The allocation of Profits and Losses for each Fiscal Year shall be subject to the following special allocations in the order set forth below:

(a)    Company Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain for any Fiscal Year, each Member shall be specially allocated items of income and gain for such year (and, if necessary, for subsequent years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain during such year, determined in accordance with Regulations Section 1.704-2(g)(2). Allocations pursuant to the preceding sentence shall be made among the Members in proportion to the respective amounts required to be allocated to each of them pursuant to such Regulation. The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(f)(6). Any special

(v)

allocation of items of Company income and gain pursuant to this Section A.2(a) shall be made before any other allocation of items under this Appendix 1. This Section A.2(a) is intended to comply with the "minimum gain chargeback" requirement in Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)    Member Nonrecourse Debt Minimum Gain Chargeback. If there is a net decrease during a Fiscal Year in the Member Nonrecourse Debt Minimum Gain attributable to a Member Nonrecourse Debt, then each Member with a share of the Member Nonrecourse Debt Minimum Gain attributable to such debt, determined in accordance with Regulations Section 1.704-2(i)(5), shall be specially allocated items of income and gain for such year (and, if necessary, subsequent years) an amount equal to such Member's share of the net decrease in the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(4). Allocations pursuant to the preceding sentence shall be made among the Members in proportion to the respective amounts to be allocated to each of them pursuant to such Regulation. Any special allocation of items of income and gain pursuant to this Section A.2(b) for a Fiscal Year shall be made before any other allocation of Company items under this Appendix 1, except only for special allocations required under Section A.2(a) hereof. The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(i)(4). This Section A.2(b) is intended to comply with the provisions of Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)    Qualified Income Offset. If any Member receives any adjustments, allocations, or distributions described in clauses (4), (5) or (6) of Regulations Section 1.704-1(b)(2)(ii)(d), items of income and gain shall be specially allocated to each such Member in an amount and manner sufficient to eliminate as quickly as possible, to the extent required by such Regulation, any deficit in such Member's Adjusted Capital Account Balance, such balance to be determined after all other allocations provided for under this Appendix 1 have been tentatively made as if this Section A.2(c) were not in this Agreement.

(d)    Gross Income Allocation. In the event any Member has a deficit Capital Account at the end of any Fiscal Year which is in excess of the sum of (i) the amount (if any) such Member is obligated to restore pursuant to any provision of this Agreement, and (ii) the amount such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations, each such Member shall be specially allocated items of income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section A.2(d) shall be made only if and to the extent that such Member would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Appendix 1 have been made as if Section A.2(c) hereof and this Section A.2(d) were not in the Agreement.

(e)    Nonrecourse Deductions. Nonrecourse Deductions for any Fiscal Year or other period shall be specially allocated to the Members in accordance with their Percentage Interests.

(f)    Member Nonrecourse Deductions. Member Nonrecourse Deductions for any Fiscal Year or other period shall be specially allocated, in accordance with

(vi)

Regulations Section 1.704-2(i)(1), to the Member or Members who bear the economic risk of loss for the Member Nonrecourse Debt to which such deductions are attributable.

       (g)    Code Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Company asset under Code Section 734(b) or 743(b) is required to be taken into account in determining Capital Accounts pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such section of the Regulations.

       A.3    Curative Allocations. The allocations set forth in subsections (a) through (g) of Section A.2 hereof ("Regulatory Allocations") are intended to comply with certain requirements of Regulations Sections 1.704-1(b) and 1.704-2. Notwithstanding any other provisions of this Appendix 1 (other than the Regulatory Allocations and the next two (2) following sentences), the Regulatory Allocations shall be taken into account in allocating other Profits, Losses and items of income, gain, loss and deduction among the Members so that, to the extent possible, the net amount of such allocations of other Profits, Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to each such Member if the Regulatory Allocations had not occurred. For purposes of applying the preceding sentence, Regulatory Allocations of Nonrecourse Deductions and Member Nonrecourse Deductions shall be offset by subsequent allocations of items of income and gain pursuant to this Section A.3 only if (and to the extent) that: (a) the Manager reasonably determines that such Regulatory Allocations are not likely to be offset by subsequent allocations under Section A.2(a) or Section A.2(b) hereof, and (b) there has been a net decrease in Company Minimum Gain (in the case of allocations to offset prior Nonrecourse Deductions) or a net decrease in Member Nonrecourse Debt Minimum Gain attributable to a Member Nonrecourse Debt (in the case of allocations to offset prior Member Nonrecourse Deductions). The Manager shall apply the provisions of this Section A.3, and shall divide the allocations hereunder among the Members, in such manner as will minimize the economic distortions upon the distributions to the Members that might otherwise result from the Regulatory Allocations.

       A.4    General Allocation Rules.

       (a)    In the event Members are admitted to the Company on different dates during any year, the Profits (or Losses) allocated to the Members for each such year shall be allocated among the Members in proportion to the Interests that each Member holds from time to time during such year in accordance with Code Section 706, using any convention permitted by law and selected by the Manager.

       (b)    For purposes of determining the Profits, Losses or any other items allocable to any period, Profits, Losses and any such other items shall be determined on a daily, monthly or other basis, as determined by the Manager using any method permissible under Code Section 706 and the Regulations thereunder.

(c)  For purposes of determining the Members' proportionate shares of the "excess nonrecourse liabilities" of the Company within the meaning of Regulations Section 1.752-3(a)(3), their respective interests in Member profits shall be in the same proportions as their Percentage Interests.

KERBYB\LAS\76384.1

(viii)

Case 5:08-cv-02248-RMW    Document 1-5    Filed 04/30/2008    Page 1 of 4

OMB No. 2502-0265

| A. U.S. DEPARTMENT OF HOUSING AND URB. ~~LOPMENT~~ |  |
|---|---|
| SETTLEMENT STAT~~EMENT~~ | |

| B. TYPE ~~OF LOAN~~ | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ ~~FmHA~~ | 3. ☐ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |

Camelback Title Agency, LLC
1440 E. Missouri Ave.
Suite C102-3
Phoenix, AZ 85014

**FINAL**

| 6. ESCROW FILE NUMBER: | 7. LOAN NUMBER: |
|---|---|
| 00009098-045 GC | |
| 8. MORTGAGE INSURANCE CASE NUMBER: | |

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:    Solomon Towers, LLC

ADDRESS OF BORROWER:    Attn : Ron Buchholz or Nicole, 20 Great Oaks Blvd.,#230
San Jose, Ca  95119

E. NAME OF SELLER:    Z Lofts, LLC

ADDRESS OF SELLER:    Grace Communities/Sue Pierce, 9500 E. Ironwood Square
Scottsdale, Az  85258

F. NAME OF LENDER:
ADDRESS OF LENDER:

G. PROPERTY LOCATION:    2ND Avenue & McKinley
Phoenix, AZ
Maricopa 111-40-024
Lots 15,17,19 and 21, of Bennett Place, 2/43

H. SETTLEMENT AGENT:    Camelback Title Agency, LLC
PLACE OF SETTLEMENT:    1440 E. Missouri Ave., Suite C102-3, Phoenix, AZ 85014
I. SETTLEMENT DATE:    04/11/2005    PRORATION DATE:    04/11/2005    FUNDING DATE:

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | 4,000,000.00 | 401. Contract Sales Price | 4,000,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 1,004,929.15 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| **120. Gross Amount Due from borrower:** | 5,004,929.15 | **420. Gross Amount Due to Seller** | 4,000,000.00 |
| **200. Amounts Paid by or in behalf of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. | | 502. Settlement charges to Seller (line 1400) | 11,526.57 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. pt closing funds | 1,904,000.00 | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Earnest Money pd to seller | 3,100,000.00 | 506. Earnest Money pd to seller | 3,100,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes 01/01/05 - 04/11/05 | 1,328.14 | 511. County Taxes 01/01/05-04/11/05 | 1,328.14 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 5,005,328.14 | **520. Total Reductions In Amount Due Seller** | 3,112,854.71 |
| **300. Cash at Settlement from/to Borrower:** | | **600. Cash at Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 5,004,929.15 | 601. Gross amount due to Seller (line 420) | 4,000,000.00 |
| 302. Less amount paid by/for Borrower (line 220) | 5,005,328.14 | 602. Less reductions in amount due Seller (line 52 | 3,112,854.71 |
| 303. Cash TO Borrower: | 398.99 | 603. Cash TO Seller: | 887,145.29 |

Hudc.rpt (12/17/2003)

Printed by Gloria Cramer on 04/12/2005 at 06:24:53 PM

OMB No. 2502-0265

ESCROW FILE NUMBER   00009008-045 GC

### L. SETTLEMENT CHARGES:

| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Sales/Broker's Commission:** | | | |
| Based on Price $4,000,000.00 @ % = | | | |
| Division of Commission (line 700) follows: | | | |
| 701. $          to Keller Williams Southwest Real | | | |
| 702. $          to | | | |
| $          to | | | |
| 703. Commission paid at settlement | | | |
| 704. Sales Tax on Commission to | | 1,000,000.00 | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount Fee | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lenders Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual Assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. AGGREGATE ADJUSTMENT   months @$ | | | |
| **1100. Title Charges:** | | | |
| 1101. Settlement or closing fee to Camelback Title Agency, LLC | | 1,207.15 | 1,207.15 |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | | | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage $ | | | |
| 1110. Owner's coverage $  4,000,000.00 | | 3,597.00 | 5,035.80 |
| Lender's coverage $ | | | |
| Lender's coverage $ | | | |
| 1111. Tracking/Recon to Camelback Title Agency, LLC | | | 75.00 |
| 1112. Endorsement 116.1-Survey to Camelback Title Agency, LLC | | 75.00 | |
| 1113. **See attached for breakdown | | 40.00 | 155.00 |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees: Deed$     10.00 Mortgage $          Release $     10.00 | | 10.00 | 10.00 |
| 1202. City/County tax/stamps | | | |
| 1203. State tax/stamps | | | |
| 1204. City Transfer Tax | | | |
| 1205. County Transfer Tax | | | |
| 1206. Affidavit Of Property Value to Camelback Title Agency, LLC | | | 2.00 |
| 1207. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection | | | |
| 1303. Property Taxes-All 2004 to Maricopa County Treasurer | | | 2,465.42 |
| 1304. Property Taxes- All 2004 to Maricopa County Treasurer | | | 2,576.20 |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1400. Total Settlement Charges (Enter on line 103, Section J –and- line 502, Section K) | | 1,004,929.15 | 11,526.57 |

Hudc.rpt (12/17/2003)

Printed by Gloria Cramer on 04/12/2005 at 06:24:53 PM

Case 5:08-cv-02248-RMW     Document 1-5     Filed 04/30/2008     Page 3 of 4

OMB No. 2502-0265
Es.   Number:   00009008-045 GC

**HUD-1 Settlement Statement Certificatio.**

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

**Buyers Signatures:**

Solomon Towers, LLC,
a Nevada Limited Liability Company

**Sellers Signatures:**

Z Lofts, LLC,
an Arizona Limited Liability Company

_____

_____

By:  Ron Buchholz
Its:  Managing Member

By: Donald J. Zeleznak
Its: Managing Member

**Settlement Agent:**

_____

Date:

Camelback Title Agency, LLC

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form.  Penalties upon conviction can include a fine and imprisonment.  For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Hudc.rpt (12/17/2003)

Printed by Gloria Cramer on 04/12/2005 at 06:24:53 PM

Case 5:08-cv-02248-RMW     Document 1-5     Filed 04/30/2008     Page 4 of 4

OMB No. 2502-0265

Attachments:                                              Escrow Number:        00009008-045  GC

| HUD 1113 DETAILED BREAKDOWN OF TITLE CHARGES | | |
|---|---|---|
| Description | Buyer Amount | Seller Amount |
| 1115. Courier fee to Camelback Title Agency, LLC | 20.00 | 40.00 |
| 1116. Wire Transfer to Camelback Title Agency, LLC | 20.00 | 40.00 |
| 1117. Inspection to Camelback Title Agency, LLC | | 75.00 |
| Total as shown on HUD Page 2 Line #1113. | 40.00 | 155.00 |

9:56 AM
02/29/08
Accrual Basis

# Solomon Towers, LLC
## Profit & Loss
### All Transactions

| | |
|---|---|
| **Ordinary Income/Expense** | |
| **Expense** | |
| Bank Service Charges | 0.00 |
| Interest Expense | 0.00 |
| Travel Expense | 0.00 |
| **Total Expense** | 0.00 |
| | |
| **Net Ordinary Income** | 0.00 |
| | |
| **Other Income/Expense** | |
| **Other Income** | |
| Interest Income | 1,144.26 |
| **Total Other Income** | 1,144.26 |
| | |
| **Net Other Income** | 1,144.26 |
| | |
| **Net Income** | 1,144.26 |

9:54 AM
02/29/08
Accrual Basis

# Solomon Towers, LLC
## Balance Sheet
### As of February 29, 2008

**ASSETS**

| | |
|---|---:|
| **Current Assets** | |
|   **Checking/Savings** | |
|     BofA Liquid CD | 40,394.26 |
|     United Security Bank X4240 | 22,543.62 |
|     **Total Checking/Savings** | 62,937.88 |
| | |
|   **Total Current Assets** | 62,937.88 |
| | |
| **Other Assets** | |
|   **Investment in Property** | |
|     Accounting | 39,300.00 |
|     **Acquisition** | |
|       Commissions | 1,000,000.00 |
|       Acquisition - Other | 4,000,000.00 |
|     **Total Acquisition** | 5,000,000.00 |
| | |
|     Acquisition Costs | 3,000.00 |
|     Architectural Fees | 142,317.72 |
|     Bank Service Fees | 315.00 |
|     **Capitalized Interest** | |
|       Interest OOP - Mesa Bank | 28,807.30 |
|       Late Charge - Mesa Bank | 75.00 |
|       Int Reserve - Mesa Bank | 42,593.98 |
|       Note Holders (Accrued) | 592,110.93 |
|     **Total Capitalized Interest** | 663,587.21 |
| | |
|     Construction Management | 9,000.00 |
|     Consultants - Reimbursement | 4,841.36 |
|     Consulting | 175,069.27 |
|     Development Fees | 330,000.00 |
|     Eng/Environment | 9,034.12 |
|     Insurance | 648.66 |
|     Legal | 69,034.59 |
|     Loan Fees | 25,125.00 |
|     Marketing | 7,568.75 |
|     Miscellaneous | 3,046.71 |
|     Permits and Fees | 9,825.00 |
|     Postage/Delivery | 75.87 |
|     Printing & Reproduction | 3,915.11 |
|     Project Management | 56,800.00 |
|     RE Taxes | 17,423.48 |
|     Site Maintenance | 7,917.67 |
|     Survey | 276.00 |
|     Title & Closing | 5,354.15 |
|     Travel | 9,171.57 |

9:54 AM
02/29/08
Accrual Basis

# Solomon Towers, LLC
## Balance Sheet
### As of February 29, 2008

| | |
|---|---:|
| Total Investment in Property | 6,592,647.24 |
| Total Other Assets | 6,592,647.24 |
| **TOTAL ASSETS** | **6,655,585.12** |
| | |
| **LIABILITIES & EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| Accounts Payable | 1,575.00 |
| Total Accounts Payable | 1,575.00 |
| | |
| Other Current Liabilities | |
| Notes Payable | |
| Total Notes Payable | 1,185,600.00 |
| | |
| Total Other Current Liabilities | 1,186,615.35 |
| | |
| Total Current Liabilities | 1,188,190.35 |
| | |
| Long Term Liabilities | |
| A&D Loan - Mesa Bank | 750,000.00 |
| Accrued Interest Payable | |
| Total Accrued Interest Payable | 436,850.51 |
| | |
| Total Long Term Liabilities | 1,186,850.51 |
| | |
| Total Liabilities | 2,375,040.86 |
| | |
| Equity | |
| Total Equity | 4,280,544.26 |
| | |
| **TOTAL LIABILITIES & EQUITY** | **6,655,585.12** |

JS 44 (Rev. 12/07) (cand rev 1-08)    Case 5:08-cv-02248-RMW    Document 1    Filed 04/30/2008    Page 1 of 1

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**
STEVE TRACHSEL, ET AL.

**DEFENDANTS**
RONALD BUCHHOLZ, ET AL.

**(b)** County of Residence of First Listed Plaintiff  Santa Clara
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
TODD A. ROBERTS, JESSHILL E.
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street
Redwood City, CA 94063  (650) 364-8200

Attorneys (If Known)

E-FILING

C08   02248   RS

ADR

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)  and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Section 1, et seq.; 17 C.F.R. Section 240.10B-5; 15 U.S.C. Section 771(a)
Brief description of cause:
Investment Ponzi Scheme, Unqualified Sale of Securities

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
☐ SAN FRANCISCO/OAKLAND  ☒ SAN JOSE

DATE 4/30/08
SIGNATURE OF ATTORNEY OF RECORD

American LegalNet, Inc.
www.FormsWorkflow.com



1  DION N. COMINOS  (SBN: 136522)
   MEAGEN E. LEARY  (SBN: 233103)
2  GORDON & REES LLP
   Embarcadero Center West
3  275 Battery Street, Suite 2000
   San Francisco, CA  94111
4  Telephone:  (415) 986-5900
   Facsimile:  (415) 986-8054
5
   Attorneys for Defendant
6  KELLER WILLIAMS REALTY, INC.

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  STEVE TRACHSEL, an individual, SUN CITY       )  CASE NO. C08 2248
    TOWERS, LLC, a California corporation, THOMAS )
12  CIRRITO, and individual, ATOCHA LAND, LLC,    )  **DECLARATION OF MEAGEN E.**
    a Delaware limited liability company, MICHAEL )  **LEARY IN SUPPORT OF MOTION**
13  CIRRITO, and individual, and CIRRITO          )  **TO DISMISS COUNTS 3, 4, 5, 6, 11,**
    HOLDINGS, LLC, a Delaware limited liability   )  **16 AND 18**
14  company,                                      )  **[Fed. R. Civ. Pro. 12(b)(6)]**
                                                  )
15                      Plaintiffs,               )
                                                  )
16          vs.                                   )  Hearing Date: September 5, 2008
                                                  )  Time:        9:00 A.M.
17  RONALD BUCHHOLZ, CHARICE FISCHER,             )  Location:    Courtroom 6
    RDB DEVELOPMENT, LLC, a Nevada limited        )  Judge:       Hon. Ronald Whyte
18  liability company, SOLOMON CAPITAL, LLC, a    )
    Nevada limited liability company, JONATHON    )
19  VENTO, GRACE CAPITAL, LLC, dba GRACE          )
    COMMUNITIES, an Arizona limited liability     )
20  company, DONALD ZELEZNAK, Z-LOFT, LLC,        )
    an Arizona limited liability company, ZELEZNAK)
21  PROPERTY MANAGEMENT, LLC dba KELLER           )
    WILLIAMS REALTY, INC., a Texas corporation,   )
22  and DOES 1-50,  inclusive,                    )
                                                  )
23                      Defendants.               )

24

            I, Meagen E. Leary declare as follows:
25
    1.      I am an attorney at the law firm of Gordon & Rees LLP, counsel of record for defendant
26
    KELLER WILLIAMS REALTY, INC. I have personal knowledge of the matters set forward in
27
    this Declaration except as to those matters stated on information and belief, and as to those
28

                                             -1-

1   matters, I am informed and believe them to be true. I make this Declaration in support of

2   KELLER WILLIAMS REALTY, INC.'s Motion to Dismiss.

3   2.      On May 30, 2008, attorney Dion Cominos, also counsel for KELLER WILLIAMS

4   REALTY, INC ("KWRI") sent a meet and confer letter to counsel for Plaintiffs requesting that

5   Plaintiffs dismiss KWRI as Plaintiffs' Complaint failed to assert any actionable allegations

6   against KWRI. A true and correct copy of the May 30, 2008 letter is attached hereto as **Exhibit**

7   **1**.

8   3.      On June 26, 2008 counsel for Plaintiffs transmitted a letter to Dion Cominos in which

9   Plaintiffs' counsel refused to dismissed KWRI from the current action. A true and correct copy

10   of the June 26, 2008 letter is attached hereto as **Exhibit 2.**

11   4.      On July 2, 2008, counsel for KWRI, Dion Cominos sent a follow up meet and confer

12   letter reiterating KWRI's request for dismissal. A true and correct copy of the July 2, 2008 letter

13   is attached hereto as **Exhibit 3**.

14        I declare under penalty of perjury under the laws of the United States that the foregoing is

15   true and correct. Executed on July 30, 2008, in San Francisco, California.

16

17

18

19   MEAGEN E. LEARY

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

KWRI/1051542/5844837v.1

DECLARATION OF MEAGEN E. LEARY IN SUPPORT OF MOTION TO DISMISS; CASE NO. C08 2248

# EXHIBIT "1"

DION N. COMINOS
MEAGEN E. LEARY

# GORDON & REES LLP

ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
PHONE: (415) 986-5900
FAX: (415) 986-8054
WWW.GORDONREES.COM

May 30, 2008

**VIA E-MAIL & U.S. MAIL**

Jesshill E. Love, III, Esq.
Ropers, Majeski, Kohn, et al.
1001 Marshall Street
Redwood City, CA 94063

Re:    *Trachsel, et al. v. Bucholz, et al.*
       *Our Client: Keller Williams Realty, Inc.*

Dear Mr. Love:

Following up on our prior communications, we write to again request that Plaintiffs dismiss our client Keller Williams Realty, Inc. ("KWRI") from the above-referenced action. In short, dismissal is warranted as Plaintiffs have failed to assert any actionable allegations against KWRI.

Specifically, Plaintiffs' lone allegation against KWRI – i.e., that KWRI is vicariously liable for the actions of ZPM – wholly fails to substantiate a claim against KWRI as the causes of action asserted against KWRI cannot be predicated on a naked theory of alleged vicarious liability. By way of background, KWRI entered into an agreement with Quanta, LLC (not ZPM), wherein KWRI granted Quanta a license to use certain KWRI software in the course of Quanta's real estate business. KWRI did not enter into any agreement with ZPM. Moreover, no agency relationship, express or otherwise, exists or existed as between KWRI and ZPM.

Plaintiffs' claims further fail as a matter of law. To begin with, even if there were some type of franchise agreement between KWRI and ZPM (which there is not), a franchisor is not liable for the acts of a franchisee unless, at a minimum, an agency relationship exists. *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992). Whether an agency relationship exists depends on the whether the franchisor controls the day-to-day operations of the franchisee. *Cislaw*, 168 Cal. App. 3d at 1295-1296. Here, KWRI had no relationship with ZPM, and therefore exercised no control over ZPM's day-to-day operations. There are also a number of general pleading deficiencies in the actual claims for relief alleged, but we will refrain from commenting further at this time since KWRI simply does not belong in this case.

Jesshill E. Love, III
May 30, 2008
Page 2

     Please advise whether your clients are amenable to dismissing KWRI so that a dismissal motion and further expense can be avoided. Thank you for your attention in this matter. We look forward to hearing from you.

                     Very truly yours,

                     GORDON & REES LLP

                     Dion N. Cominos

MEL:scm

**EXHIBIT "2"**

REDWOOD CITY | 1001 Marshall Street
Los Angeles | Suite 300
New York | Redwood City, CA 94063-2052
San Francisco | Telephone (650) 364-8200
San Jose | Facsimile (650) 780-1701
Boston | www.rmkb.com



Todd A. Roberts
(650) 780-1601

troberts@rmkb.com

June 26, 2008

**VIA FACSIMILE/U.S. MAIL**

Dion Cominos
Gordon & Rees
275 Battery Street, Suite 2000
San Francisco, CA 94111

    Re:    Trachsel, et al. v. Buchholz, et al.
           USDC, Northern District Case No. C08-02248RMW

Dear Mr. Cominos:

    This shall confirm your recent conversation with Matt Zumstein requesting that plaintiffs dismiss your client Keller Williams Realty, Inc. ("KWRI") from the above-referenced action. We have considered you position and are unable to offer your clients a dismissal at this time.

    Your citation of *Cislaw v. Southland Corp.* (1992) Cal.App.4th 1284 provides significant illumination on the area of franchisee/franchisor liability. As you know, the question of whether franchisee liability exists is ordinarily one of fact, dependent upon whether or not the franchisor exercises complete or substantial control over the franchisee. Furthermore, a motion for summary judgment to relieve the franchisor of any liability will only be granted when the essential facts are not in conflict as to whether or not an agency relationship exists between the franchisee and the franchisor.

    In determining whether or not an agency relationship exists between a franchisee and a franchisor, the court will look at a myriad of factors. Specifically, the court will look to determine whether or not: (1) the franchisor was permitted to handle any or all aspects of franchisee employment, (2) whether the franchisor was allowed to determine rates for services the franchisee charged customers; (3) if the franchisor chose lenders with whom the franchisee would conduct business with; (4) the control of advertising (whether or not the franchisee was required to submit any ads to the franchisor for prior approval); or (5) the franchisor was permitted to determine franchisee agreements with third party vendors without giving prior notice to the franchisee. This non-exhaustive list is only a sampling of various factors the court can look at in order to determine whether or not Quanta LLC, Keller Williams, or Mr. Zeleznak are liable to plaintiffs for defendants' egregious activities.

    In this case, the right to control the obligations and expenses of the real estate sales operation is merely one of many factors which we will use to show the court that Quanta and Keller Williams are liable to our clients. Quanta, LLC is the legal owner of the business Keller

RC1/5133674.1/MC2




Dion Cominos
June 26, 2008

Page 2

Williams Arizona Realty located at 9500 East Ironwood Square Drive in Scottsdale, AZ. Mr. James Dunning is the designated broker for the Keller Williams Arizona Realty located at that address. In addition to Mr. James Dunning being the broker for the legal entity Quanta, LLC, he is also the Manager of Quanta. Mr. Zeleznak owns the property where the Keller Williams Arizona Realty office is located. Donald Zeleznak is one of many salespersons employed by Keller Williams at that location and Ryan Zeleznak is the branch manager for that location. It is patently clear that Keller Williams did more than simply enter into an agreement with Quanta to use certain software in the course of Quanta's real estate business.

Mr. Zeleznak travelled to California in February and June 2005 in order to make presentations and encourage plaintiffs to invest in Solomon Capital. He was introduced as a "key player" while working as a salesperson for Keller Williams and spoke at length about the benefits of the Arizona real estate market. His duties as an agent for Keller Williams involved acting as both the selling agent and buyer's broker for the Solomon Towers project. Mr. Zeleznak misrepresented that the project was being purchased for fair market value, when in fact, the land had been valued at above-market rates in order to defraud plaintiffs and benefit the defendants. Keller Williams facilitated these double escrow transactions and received 20% commission rates, the proceeds of which were used to continue to perpetuate a fraud on the plaintiffs.

As you know, a principal can be found liable for the acts of a party deemed to be an ostensible agent of the principal. It appears that plaintiffs' claims would survive any attacks on general pleading deficiencies, motions to strike, demurrer, as well as any motion for summary judgment. Liability under an ostensible agency theory is found when a party dealing with an agent has done so with the belief that the agent's authority to act on behalf of the principal is a reasonable one. Once this belief has been generated by some act on behalf of the agent or negligence on behalf of the principal, the only remaining factor which the plaintiff must show in order to recover would be that their damages were not due to their own negligence. (*Kaplan v. Coldwell Bank* (1997) 59 Cal.App.4th 741.)

The facts in this case bear striking resemblance to the *Kaplan* matter. Mr. Zeleznak relied upon the use of the Keller Williams name in order to conduct an advertising campaign, encourage investors to contribute to investment properties, and overall solicit business on behalf of both himself and the remaining defendants. Our clients' believed in Mr. Zeleznak's representations as a member of the Keller Williams family when conducting business. This belief resulted in damages to our clients. While Keller Williams did not make any specific representations to our clients personally, Mr. Zeleznak did on its behalf and Keller Williams allowed him to do so. Our clients relied on these representations. Just as the sophisticated real estate investor in the *Kaplan* matter believed Coldwell Banker stood behind its franchisee, our clients believed that Keller Williams stood behind Mr. Zeleznak.

RC1/5133674.1/MC2



Dion Cominos
June 26, 2008                                                                                      Page 3

        Whether liability exists under ostensible agency will depend upon a question of fact
which will be implied from the totality of the circumstances at the end of the discovery process.
For summary judgment purposes, it will be sufficient for the court to observe that a triable issue
of material fact was not presented in the *Cislaw v. Southland* matter. Nothing in *Cislaw*
compelled the court to find liability under an ostensible agency theory because the plaintiffs did
not present any facts to support the issue of ostensible agency. It is beyond argument that the
evidence in this matter clearly supports the existence of an ostensible agency theory and will
allow plaintiffs to survive any summary judgment motion.

        Thank you for your attention in this matter. We look forward to discussing with you any
further questions, problems, or concerns you may have.

                                        Very truly yours,

                                        Todd A. Roberts

TAR:mc

cc:     Julie Lane, General Counsel, KWRI: (via e-mail: Julie.Lane@kw.com)
        Kathleen McWilliams (via e-mail: Kathleen.McWilliams@kw.com)

RCI/5133674.1/MC2

**EXHIBIT "3"**

DION N. COMINOS
DCOMINOS@GORDONREES.COM
DIRECT FAX: 415-262-3714

# GORDON & REES LLP

ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
PHONE: (415) 986-5900
FAX:(415) 986-8054
WWW.GORDONREES.COM

July 2, 2008

**VIA FACSIMILE**

Todd A. Roberts, Esq.
Ropers, Majeski, Kohn & Bentley
1001 Marshall Street, Suite 300
Redwood City, CA 90463

      Re:    *Steve Trachsel, et al. v. Ronald Buchholz, et al.*
              U.S.D.C., No. Dist., San Jose Div., No. C08 02248

Dear Mr. Roberts:

      Thank you for your letter of June 26, 2008. While I appreciate your efforts at providing a rationale for maintaining the present litigation against KWRI, the reality is that no proper legal or factual bases exist to, such that an immediate dismissal is warranted.

      As a threshold matter, it is important to understand that KWRI is a wholly distinct and separate legal entity from the broker against whom a majority of plaintiffs' claims appear to be directed. Further, it is manifest that KWRI: (1) does not handle its franchisees' employment matters; (2) does not determine the rates of services charged by its franchisees to their customers; (3) does not select the lenders with whom its franchisees deal; (4) does not choose the third party vendors who work with the franchisees; (5) was not involved in franchisees' advertising other than specifying guidelines for use of its trademarks and logos; and (6) obtains no commissions from the franchisees' sales. Apart from this being the actual state of affairs, plaintiffs' complaint is itself devoid of any allegations that would suggest to the contrary.

      If you or your clients are in possession of any facts which suggest that KWRI itself (as opposed to Quanta or some other entity) is an appropriate party to this litigation, please provide same for our consideration. Otherwise, we will remain of the view that this litigation is being prosecuted against KWRI in bad faith and without probable cause. We therefore again

Todd A. Roberts, Esq.
July 2, 2008
Page 2

respectfully reiterate our request for a dismissal of KWRI failing which we will have no choice
but to proceed with dismissal motions and associated activities.

Very truly yours,

GORDON & REES LLP

Dion N Cominos

DNC:bls
cc:    Julie Lane, Esq.

1    :    <u>Steve Trachsel, et al. v. Ronald Buchholz, et al.</u>
         United States District Court Northern District of California, San Jose Division
2        Case No. No. C08 02248

3                        **PROOF OF SERVICE**

4        I am a citizen of the United States.  My business address is 275 Battery Street, San
     Francisco, CA    94111.  I am employed in the City and County of San Francisco where this
5    service occurs.  I am over the age of 18 years and not a party to the within action.

6        On July 30, 2008, following ordinary business practice, I served a true copy of the
     foregoing document(s) described as:
7
8        **DECLARATION OF MEAGEN E. LEARY IN SUPPORT OF MOTION TO DISMISS COUNTS 3,
         4, 5, 6, 11, 16 AND 18 [Fed. R. Civ. Pro. 12(b)(6)]**

9    ☒    **BY (CM/ECF) ELECTRONIC CASE FILE SYSTEM**: with the United States
         District Court, Northern District, to all parties listed on the court's proof of electronic
10        service.

11   ☐    **BY FACSIMILE**:  by transmitting by facsimile to the number(s) listed above to the
         fax number(s) set forth below, or as stated on the attached service list, on this date
12        before 5:00 p.m.

13   ☐    **PERSONAL SERVICE**:  I caused such envelope(s) to be delivered by hand this date
         to  the offices of the addressee(s).

14   ☐    **MAIL**: I caused such envelope(s) with postage thereon fully prepaid to be placed in
         the United States mail at Sacramento, California to the offices of the addressee(s)
15        listed   below:

16   ☐    **OVERNIGHT DELIVERY**: I caused such envelope(s) to be delivered to an
         overnight delivery carrier with delivery fees provided for, addressed to the person(s)
17        on whom it is to be served.

18
         I declare under penalty of perjury under the laws of the State of California that the
19   foregoing is true and correct.

20        Executed on July 30, 2008 at San Francisco, California.

21

22        _____
                    Sandra Sarmiento

23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

KWR1-1951542/5802734v.1



1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11    STEVE TRACHSEL, an individual, SUN CITY          )    CASE NO. C08 2248
      TOWERS, LLC, a California corporation, THOMAS    )
12    CIRRITO, and individual, ATOCHA LAND, LLC,       )    **[PROPOSED] ORDER GRANTING**
      a Delaware limited liability company, MICHAEL    )    **DEFENDANT KELLER WILLIAMS**
13    CIRRITO, and individual, and CIRRITO             )    **REALTY, INC.'S MOTION TO**
      HOLDINGS, LLC, a Delaware limited liability      )    **DISMISS COUNTS 3, 4, 5, 6, 11, 16**
14    company,                                         )    **AND 18**
                                                       )    **[Fed. R. Civ. Pro. 12(b)(6)]**
15                          Plaintiffs,                )
                                                       )
16                                                     )
             vs.                                       )    Hearing Date: September 5, 2008
17                                                     )    Time:          9:00 A.M.
      RONALD BUCHHOLZ, CHARICE FISCHER,                )    Location:      Courtroom 6
18    RDB DEVELOPMENT, LLC, a Nevada limited           )    Judge:         Hon. Ronald M. Whyte
      liability company, SOLOMON CAPITAL, LLC, a       )
19    Nevada limited liability company, JONATHON       )
      VENTO, GRACE CAPITAL, LLC, dba GRACE             )
20    COMMUNITIES, an Arizona limited liability        )
      company, DONALD ZELEZNAK, Z-LOFT, LLC,           )
21    an Arizona limited liability company, ZELEZNAK   )
      PROPERTY MANAGEMENT, LLC dba KELLER              )
22    WILLIAMS REALTY, INC., a Texas corporation,      )
      and DOES 1-50, inclusive,                        )
23                                                     )
                            Defendants.                )
24

25          Upon consideration of Defendant KELLER WILLIAMS REALTY, INC.'s Motion to

26    Dismiss, any opposition thereto, and for good cause shown, it is on this 5th day of September,

27    2008, hereby ORDERED that Defendant's Motion to Dismiss is GRANTED,

28

                                              -1-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    and it is FURTHER ORDERED that the Clerk of this Court shall dismiss defendant

2    KELLER WILLIAMS REALTY, INC. from this action.

3    **IT IS SO ORDERED.**

4

5    DATED: _____

6

7

8    HONORABLE RONALD M. WHYTE
     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-2-

1    :    Steve Trachsel, et al. v. Ronald Buchholz, et al.
          United States District Court Northern District of California, San Jose Division
2         Case No. No. C08 02248

3                                **PROOF OF SERVICE**

4         I am a citizen of the United States.  My business address is 275 Battery Street, San
     Francisco, CA    94111.  I am employed in the City and County of San Francisco where this
5    service occurs.  I am over the age of 18 years and not a party to the within action.

6         On July 30, 2008, following ordinary business practice, I served a true copy of the
     foregoing document(s) described as:
7
           **[PROPOSED] ORDER GRANTING DEFENDANT KELLER WILLIAMS REALTY, INC.'S**
8          **MOTION TO DISMISS COUNTS 3, 4, 5, 6, 11, 16 AND 18 [Fed. R. Civ. Pro. 12(b)(6)]**

9    ☒    **BY (CM/ECF) ELECTRONIC CASE FILE SYSTEM**: with the United States
           District Court, Northern District, to all parties listed on the court's proof of electronic
10         service.

11   ☐    **BY FACSIMILE**:  by transmitting by facsimile to the number(s) listed above to the
           fax number(s) set forth below, or as stated on the attached service list, on this date
12         before 5:00 p.m.

13   ☐    **PERSONAL SERVICE**:  I caused such envelope(s) to be delivered by hand this date
           to  the offices of the addressee(s).

14   ☐    **MAIL**: I caused such envelope(s) with postage thereon fully prepaid to be placed in
           the United States mail at Sacramento, California to the offices of the addressee(s)
15         listed   below:

16   ☐    **OVERNIGHT DELIVERY**: I caused such envelope(s) to be delivered to an
           overnight delivery carrier with delivery fees provided for, addressed to the person(s)
17         on whom it is to be served.

18
          I declare under penalty of perjury under the laws of the State of California that the
19   foregoing is true and correct.

20        Executed on July 30, 2008 at San Francisco, California.

21

22                                         _____
                                                   Sandra Sarmiento
23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

KWRI/1051542/5802734v 1