1  TODD A. ROBERTS (SBN 129722)
2  JESSHILL E. LOVE (SBN 208348)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 300
   Redwood City, CA 94063
   Telephone:    (650) 364-8200
4  Facsimile:    (650) 780-1701

5  Attorneys for Plaintiffs
6  STEVE TRACHSEL, an individual; SUN CITY
   TOWERS, LLC, a California corporation;
7  THOMAS CIRRITO, an individual; ATOCHA
   LAND, LLC, a Delaware limited liability company;
8  MICHAEL CIRRITO, an individual; and CIRRITO
   HOLDINGS, LLC, a Delaware limited liability
9  company

10        UNITED STATES DISTRICT COURT - NORTHERN DISTRICT OF CALIFORNIA

11                              SAN JOSE DIVISION

12

13  STEVE TRACHSEL, an individual; SUN          CASE NO.  C08 02248RMW
    CITY TOWERS, LLC, a California
14  corporation; THOMAS CIRRITO, an             **PLAINTIFFS' OPPOSITION TO**
    individual; ATOCHA LAND, LLC, a             **DEFENDANT KELLER WILLIAMS**
15  Delaware limited liability company;         **REALTY, INC.'S MOTION TO DISMISS**
    MICHAEL CIRRITO, an individual; and
16  CIRRITO HOLDINGS, LLC, a Delaware           **Date:       September 5, 2008**
    limited liability company,                  **Time:       9:00 a.m.**
17                                              **Ctrm:       6**
                Plaintiffs,                     **Judge:      Hon. Ronald M. Whyte**
18
    v.
19
    RONALD BUCHHOLZ; CHARICE
20  FISCHER; RDB DEVELOPMENT, LLC,
    a Nevada limited liability company;
21  SOLOMON CAPITAL, INC., a Nevada
    corporation; JONATHON VENTO;
22  GRACE CAPITAL, LLC, dba GRACE
    COMMUNITIES, an Arizona limited
23  liability company; DONALD ZELEZNAK;
    Z-LOFTS, LLC, an Arizona limited
24  liability company; ZELEZNAK
    PROPERTY MANAGEMENT, LLC dba
25  KELLER WILLIAMS REALTY, an
    Arizona limited liability company;
26  KELLER WILLIAMS REALTY, INC., a
    Texas corporation; and DOES 1-50,
27  inclusive,

28              Defendants.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RCI/5166643.1/BRL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF ISSUES TO BE DECIDED ....................................................... 1

III.  STATEMENT OF FACTS ......................................................................................... 2

    A.    Factual Overview of "Pump and Dump" Sales Transaction ................................ 2

    B.    Defendant Donald Zeleznak's Prominent Use of The Keller Williams Name ................................................................................................................... 3

    C.    Procedural History ............................................................................................ 4

IV.   STANDARD OF REVIEW ........................................................................................ 4

V.    LEGAL ARGUMENT ................................................................................................. 5

    A.    KWRI Is Vicariously Liable to Plaintiffs ........................................................ 5

        1.    Principal-Agency Liability Not the Sole Focus of Claims ........................ 5

        2.    Kaplan v. Coldwell Banker Directly On Point In This Case ..................... 6

        3.    KWRI Is Liable for Zeleznak's Actions Under An Ostensible Agency Theory ................................................................................................. 7

            a.    Plaintiffs Reasonably Believed Zeleznak Was Acting Under The Keller Williams Brand ................................................................ 7

            b.    Plaintiffs' Belief Was Generated by The Acts of KWRI in Promoting Zeleznak ........................................................................ 8

            c.    Plaintiffs Reasonably Relied on Zeleznak's Claim of Authority ........................................................................................... 9

    B.    There Is No Basis for Defendants' 12(b)(6) Motion to Counts 3, 4, 5, 6, 11, 16, and 18 .................................................................................................... 10

        1.    Plaintiffs' RICO Claims are Sufficiently Pled Against KWRI ................ 10

        2.    Plaintiffs' Securities Fraud Claims are Sufficiently Pled Against KWRI ........................................................................................................ 11

        3.    Plaintiffs' Unfair Business Practice Claim is Sufficiently Pled Against KWRI ........................................................................................... 12

        4.    Plaintiffs' Conspiracy Claim is Sufficiently Pled Against KWRI ........... 12

        5.    Plaintiffs' California Corporations Code Joint and Several Liability Claims are Sufficiently Pled Against KWRI .......................................... 13

VI.   CONCLUSION .......................................................................................................... 14

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

All World Prof'l Travel Servs. v. Am. Airlines, Inc. (9th Cir. 2003) 2003 U.S.
    Dist. LEXIS 14436.................................................................. 10

American Cas. Co. v. Krieger (9th Cir. 1999) 181 F.3d 1113 ),........................................ 8

C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc. (9th Cir. 2000)
213 F.3d 474 ...................................................................... 8

DSAM Global Value Fund v. Altris Software, Inc. (9th Cir. 2002) 288 F.3d 385........... 11

Forslund v. Rein (2003) U.S. Dist. LEXIS 16832. .............................................. 14

Gilligan v. Jamco Develop. Corp. (9th Cir. 1997) 108 F.3d 246........................................ 5

Graham v. S.E.C. (D.C. Cir. 2000) 222 F.3d 994 ...................................................... 11

H.J., Inc. v. Northwestern Bell Telephone Company (1987) 429 U.S. 229 ..................... 10

Howard v. S.E.C. (D.C. Cir. 2004) 376 F.3d 1136 .......................................... 11

Jenkins v. McKeithen (1969) 395 U.S. 411 ........................................................ 4

Lujan v. Defenders of Wildlife (1992) 504 U.S. 555 (citations omitted) ....................... 10

Polich v. Burlington N., Inc. (9th Cir. 1991) 942 F.2d 1476 ................................ 5

Rutman Wine Co. v. E. & J. Gallo Winery (9th Cir. 1987) 829 F.2d 729.................... 4

S.E.C. v. Fehn (1996) 97 F.3d 1276 .............................................................. 11

Swierkiewicz v. Sorema N.A. (2002) 534 U.S. 506 .................................................. 5

United States v. O'Hagan (1998) 521 U.S. 642 .................................................. 11

**STATE CASES**

Apollo Capital Fund, LLC v. Roth Capital Partners, LLC
    (2007) 158 Cal. App. 4th 226 ................................................................ 14

Associated Creditors' Agency v. Davis, (1975) 13 Cal. 3d 374, 399................................ 7

Barquis v. Merchants Collection Assn. (1972) 7 Cal. 3d 94............................................. 12

Doctors' Co. v. Superior Court (1989) 49 Cal. 3d 39........................................... 13

Grant v. California Bench Co. (1946) 76 Cal. App. 2d 706. ............................................ 12

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## TABLE OF AUTHORITIES
### (continued)

Page

Kaplan v. Coldwell Banker Residential Affiliates
(1997) 59 Cal. App. 4th 741, 747 ........................................................ 6, 7, 8

Kelley v. R.F. Jones Co. (1969) 272 Cal. App. 2d 113 ), .................................... 8

Klistoff v. Superior Court (2006) 157 Cal. App. 4th 469 ................................. 13

People v. Surety Ins. Co. (1982) 136 Cal. App. 3d 556............................................ 9

Preis v. American Indemnity Co. (1990) 220 Cal. App. 3d 752........................... 8

Rusheen v. Cohen (2006) 37 Cal. 4th 1048 ................................................... 13

Rutherford v. Rideout Bank (1938) 11 Cal. 2d 479.......................................... 5

Sherman v. Lloyd (1986) 181 Cal. App. 3d 693 ................................................ 13

South Bay Chevrolet v. General Motors Acceptance Corp.
(1999) 72 Cal. App. 4th 861 ................................................................ 12

Spahn v. Guild Industries Corp. (1979) 94 Cal. App. 3d 143........................... 5, 8

### FEDERAL STATUTES

18 U.S.C. §§ 1961(a) ............................................................................... 10

18 U.S.C. §§ 1962(a) ................................................................................. 2

18 U.S.C. § 1961(1). .................................................................................. 10

### STATE STATUTES

Cal. Corp. Code § 25504................................................................................ 13

California Business & Professions Code § 17200 .......................................... 2

California Civil Code § 2300 ....................................................................... 7

California Corporations Code §§ 25501, 25401, 25504, 25503, 25012(f) .................. 2, 13

Civ. Code § 2334 .......................................................................................... 7

Corp. Code § 25503 ..................................................................................... 13

Corp. Code § 25504 ..................................................................................... 14

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 1, 4

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

PLFS' OPPOSITION TO KWRI'S MTN TO
DISMISS- CASE NO. C0802248RMW

**I.**

**INTRODUCTION**

By its motion to dismiss the complaint filed by Plaintiffs Steve Trachsel, Sun City Towers, LLC, Thomas Cirrito, Atocha Land, LLC, Michael Cirrito, and Cirrito Holdings, LLC's (hereinafter, "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6), Defendant Keller Williams Realty, Inc. (hereinafter, "KWRI") attempts to distance itself from one of its top real estate agents, Donald Zeleznak, in order to escape its liability for his actions, as well as those of Jonathon Vento, Grace Communities, Z-Lofts, LLC, and Zeleznak Property Management, LLC (hereinafter, and including Donald Zeleznak, the "Grace Defendants") and Ronald Buchholz, Charice Fischer, RDB Development, LLC, and Solomon Capital, Inc. (hereinafter, the "Buchholz Defendants") in misleading and defrauding Plaintiffs. However, KWRI cannot avoid its connection to Zeleznak, who, with KWRI's permission and approval, has been using its name and relying on its reputation in order to advertise and sell real estate.

KWRI also attempts to gloss over the effect that their name and prestige had in encouraging and calming investors, including Plaintiffs. Based on a case cited in their own motion, KWRI cannot escape liability for Zeleznak's ostensible authority from the company. For this reason alone, KWRI is a proper party to this action and must not be dismissed.

In light of its ostensible agency liability, KWRI's arguments that the individual claims against it must be dismissed also ring hollow. Construing the allegations in favor of Plaintiffs, as courts must do in deciding on a motion to dismiss, Plaintiffs have passed the pleading threshold by putting KWRI on sufficient notice of the claims levied against them. Even if the Court determines that any of the claims pled against KWRI are insufficient, it must provide Plaintiffs leave to amend. In sum, KWRI cannot overcome their relationship with Donald Zeleznak, their sanction of his operations under their banner, or their contribution to and likely profits from the unlawful acts he perpetrated on the Plaintiffs.

**II.**

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether KWRI is liable for Defendants' acts under a theory of ostensible agency;

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

2.      Whether Plaintiffs' claims under 18 U.S.C. §§ 1962(a), (c), and (d) are sufficiently pled against KWRI;

3.      Whether Plaintiffs' claims under Section 10b and Rule 10-5 of the 1934 Securities Exchange Act and Plaintiffs' claim under Section 12(a) of the 1933 Securities Act are sufficiently pled against KWRI;

4.      Whether Plaintiffs' claim under California Business & Professions Code § 17200 et seq. is sufficiently pled against KWRI;

5.      Whether Plaintiffs' claim for conspiracy is sufficiently pled against KWRI; and

6.      Whether Plaintiffs' claims under California Corporations Code §§ 25501, 25401, 25504, 25503, 25012(f), and 25110 are sufficiently pled against KWRI.

### III.

### STATEMENT OF FACTS

**A.    Factual Overview of "Pump and Dump" Sales Transaction**

In or around February of 2005, the Buchholz Defendants presented the Solomon Towers, LLC high rise condominium investment ("Solomon Towers project") opportunity to investors, who included Plaintiffs. (See Declaration of Steve Trachsel in Opposition to Grace Defendants' Motion to Dismiss ("Trachsel Decl."), ¶ 2.)  In this investment scheme, the Buchholz Defendants would purchase raw land in downtown Phoenix, Arizona from Donald Zeleznak, a prominent franchisee of KWRI, using investors' funds, then develop the land into upscale condominiums, purporting to provide investors with significant returns upon the sale of the condominiums. (Id.)

On July 25, 2002, the predecessor company of Defendant Z-Lofts, which is owned by Defendant Zeleznak, purchased 625-643 N. 2nd Avenue, Phoenix, AZ (hereinafter referred to as "the Property") from Core Builders, Inc. for $392,000.00. (Trachsel Decl., ¶ 3.)  At 28,000 square feet, the cost of the land was $14.00 per square foot. (Id.)

On April 11, 2005, Zeleznak sold the Property to Solomon Towers, LLC for $5,004,929.00, which the Buchholz Defendants paid for using Plaintiffs' investment funds. (Trachsel Decl., ¶ 3.)  The cost of the property was approximately $178.75 per square foot. (Id.) Based on comparable lot sales in the region, the actual market rate for the land from February to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   March of 2005 was approximately $33.19 per square foot. (Id.) In addition, Zeleznak received a

2   commission of $1,000,000.00 on the sale, or approximately 20% of the sales price, far exceeding

3   the prevailing market rate of 5% to 6% for sales transactions involving raw land. (Id.) Rather

4   than applying the investment funds toward development of the Property, the Defendants divided

5   the investment funds among themselves and left the investors holding an overleveraged property.

6   (Trachsel Decl., ¶ 4.)

7        Plaintiffs did not learn of Defendants' fraudulent enterprise until after July 24, 2007, when

8   federal and state authorities raided Solomon Capital's offices in San Jose, California due to

9   allegations of fraudulent investment schemes. (Trachsel Decl., ¶ 7.) Solomon Capital, its

10  investments, and its affiliates remain the focus of an ongoing investigation by the state and

11  federal authorities, and the documents seized in the raid are being retained by the Santa Clara

12  County District Attorney's Office. (Id.) There are currently five lawsuits pending in the

13  Northern District alone against the Solomon Capital Defendants related to fraudulent investment

14  schemes. (Declaration of Jesshill E. Love in Opposition to KWRI's Motion to Dismiss ("Love

15  Decl."), ¶ 6.) In addition to the instant lawsuit, <u>Yen, et al. v. Vento Family Trust, et al.</u>, Northern

16  District Case No. 08-CV-03535 also names both Keller Williams Realty, Inc. and Donald

17  Zeleznak in their capacities as principal and agent. (Id.)

18  **B.    Defendant Donald Zeleznak's Prominent Use of The Keller Williams Name**

19       Plaintiffs believed that Keller Williams stood behind Defendant Donald Zeleznak.

20  (Declaration of Thomas Cirrito in Opposition to KWRI's Motion to Dismiss ("Cirrito Decl."), ¶

21  2.) This apparent seal of legitimacy encouraged Plaintiffs to go through with the investment. (Id.

22  at ¶ 3.) Further, Plaintiffs' belief was reasonable given the numerous references to Keller

23  Williams on Zeleznak's real estate websites. (Love Decl., ¶¶ 2-5.)

24       For example, on the website for the Zelenak Group, which is a trade name of Zeleznak

25  Property Management, the top bar states: "Ranked the #1 Keller Williams Group Nationwide in

26  2001, 2003, 2004, 2005, 2006, & 2007." (Love Decl., Ex. "A".) The bottom of the page has the

27  Keller Williams logo prominently displayed. (Id.) The bio page for Zeleznak contains the

28  following statement: "Don currently directs the sales, marketing and development of residential

1  and commercial real estate under a Keller Williams franchise in Scottsdale, Arizona…He is also

2  an owner of the Keller Williams Southwest Region representing over 4,500 agents in 35 offices in

3  Arizona and Nevada." (Love Decl., Ex. "B".) Zeleznak's profile page on Grace Communities'

4  website contains the same language. (Love Decl., Ex. "C".)

5       Zeleznak traveled to California in June 2005 to make a presentation and encourage

6  potential investors to invest in another Solomon Capital scheme. (See Trachsel Decl., Ex. "A".)

7  He was introduced as a "key player" while working as a Keller Williams agent and spoke at

8  length about the benefits of the Arizona real estate market. (Id.) His duties as an agent for Keller

9  Williams involved acting as both the selling agent and buyer's broker for the Solomon Towers

10 project. (Id. at ¶ 3.) Zeleznak misrepresented that the project was being purchased for fair

11 market value, when in fact, the land had been valued at above-market rates in order to defraud

12 Plaintiffs and benefit Defendants. (Id.) KWRI's name and reputation facilitated the transactions

13 whereon Zeleznak received 20% commission rates, and the proceeds were used to continue to

14 perpetuate a fraud on Plaintiffs. (Id.; Cirrito Decl., ¶¶ 2-3.) It is presently unknown how much of

15 this commission was paid by Zeleznak, the agent, to KWRI, the principal.

16 **C.    Procedural History**

17      Plaintiffs filed their complaint on April 30, 2008, seeking rescission and damages arising

18 from the fraudulent investment transaction. Following repeated discussions between the parties

19 and several extensions of time to respond to the complaint (see Declaration of Meagen E. Leary,

20 Exhibits "A" through "C"), KWRI filed a motion to dismiss under Federal Rules of Civil

21 Procedure, Rule 12(b)(6) on July 30, 2008. The matter is set to be heard in conjunction with the

22 Grace Defendants' motion to dismiss on September 5, 2008.

23                                **IV.**

24                        **STANDARD OF REVIEW**

25      A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.

26 (Rutman Wine Co. v. E. & J. Gallo Winery (9th Cir. 1987) 829 F.2d 729, 738.) When the Court

27 reviews a complaint pursuant to a motion to dismiss, the pleadings are construed liberally in favor

28 of the pleader and all of its material allegations are taken as true. (Jenkins v. McKeithen (1969)

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   395 U.S. 411, 421; Gilligan v. Jamco Develop. Corp. (9th Cir. 1997) 108 F.3d 246, 249 (Rule 8

2   contains "a powerful presumption against rejecting pleadings for failure to state a claim").) A

3   complaint need not plead all elements of a prima facie case in order to survive a motion to

4   dismiss. (Swierkiewicz v. Sorema N.A. (2002) 534 U.S. 506, 510-512.) Fair notice of the

5   grounds for relief along with a short and plain statement of the claim are all that is required. (Id.

6   at 508.) Even if the Court determines that the complaint fails to adequately allege facts or

7   elements of a particular claim, absent unusual circumstances, the Court must provide plaintiffs

8   leave to amend unless it is clear that the complaint could not possibly be saved by any

9   amendment. (Polich v. Burlington N., Inc. (9th Cir. 1991) 942 F.2d 1476, 1472.)

V.

**LEGAL ARGUMENT**

**A.**   **KWRI Is Vicariously Liable to Plaintiffs**

   **1.**   **Principal-Agency Liability Not the Sole Focus of Claims**

   At the outset of their motion, KWRI argues that no principal-agency relationship exists

with Zeleznak or his companies, so no vicarious liability can exist. If the authority granted to an

agent puts the agent in a position to commit fraud while apparently acting within his authority, the

agent's knowledge of the falsity of his representations will be imputed to the principal even if the

agent is acting adversely to the principal. Therefore, the principal may be held liable for the fraud

of his agent against an innocent third-party, and it is immaterial that the principal received no

benefits from the transaction. (Spahn v. Guild Industries Corp. (1979) 94 Cal.App.3d 143, 155-

156.) The principal's liability is based on the fact that the agent's position facilitates the

commission of the fraud, since the third person views the transaction as regular on its face and the

agent appears to be acting in the ordinary course of the business confided to him. (Rutherford v.

Rideout Bank (1938) 11 Cal.2d 479, 484.)

   Plaintiffs have made it clear that the franchisee principal-agency relationship is not the

sole focus of their claims against KWRI. In a letter sent on July 2, 2008, nearly a month before

KWRI filed its motion to dismiss, Plaintiffs unmistakably informed KWRI that their relevant

claims were also premised on an ostensible agency theory. (See Declaration of Meagen E. Leary,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Exh. "B".)

2          **2.**   *Kaplan v. Coldwell Banker* **Directly On Point In This Case**

3         In support of its principal-agency argument, KWRI cites a California Court of Appeal

4    case, Kaplan v. Coldwell Banker Residential Affiliates, Inc. (1997) 59 Cal.App.4th 741. In

5    Kaplan, a sophisticated real estate investor invested with a franchisee broker from Coldwell

6    Banker based in part on the belief that Coldwell Banker stood behind the broker. Although

7    Coldwell Banker made no specific representations to the purchaser, it did make representations to

8    the public in general on which the purchaser reasonably relied. (Id.) [Emphasis added] The

9    investor believed he was dealing with the franchisor, invested based on this belief, and was

10    damaged as a result. (Id. at 747.) In that case, the Court stated:

11           Here Coldwell Banker made no specific representations to appellant

12           personally. It did, however, make representations to the public in
general, upon which appellant relied. We understand why appellant,

13           and members of the public generally, might believe that Coldwell
Banker "stood behind" Marsh's realty company. The venerable

14           name, Coldwell Banker, the advertising campaign, the logo, and the
use of the word "member" were and are designed to bring

15           customers into Coldwell Banker franchises. As appellant stated at
his deposition: Coldwell Banker's "outreach was successful. I

16           believed they [Marsh and Davidson] were Coldwell Banker. They
do a good job of that." (Kaplan, 59 Cal.App.4th at 747.)

17         In that case, the Court indicated that an ordinarily reasonable person might also think that

18    Marsh, the agent, was an ostensible agent of Coldwell Banker, the principal. The Court then held

19    that whether ostensible agency exists is a question of fact, and where the plaintiff raises a triable

20    issue of fact on an ostensible agency theory, it is sufficient to withstand summary judgment.

21    (Kaplan, 59 Cal.App.4th at 747-748.)

22         The facts in this case bear a striking resemblance to the Kaplan matter. Just as in Kaplan,

23    Zeleznak relied upon the use of the Keller Williams name in order to conduct an advertising

24    campaign, encourage investors to contribute to investment properties, and overall solicit business

25    on behalf of both himself and the other Defendants. Plaintiffs believed in Zeleznak's

26    representations as a member of the Keller Williams family when conducting business. (Cirrito

27    Decl., ¶ 2.) This belief and Plaintiffs' subsequent action thereon resulted in damage to Plaintiffs.

28         While Keller Williams did not make any specific representations to Plaintiffs personally,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Zeleznak did make representations on its behalf and Keller Williams allowed him to do so.

2    Plaintiffs relied on these representations to make their investments. Just as the sophisticated real

3    estate investor in <u>Kaplan</u> believed that Coldwell Banker stood behind its franchisee, Plaintiffs

4    believed that Keller Williams stood behind Zeleznak. <u>Kaplan</u> is directly on point and is

5    controlling in this case. Just as in <u>Kaplan</u>, KWRI's liability to Plaintiffs under an ostensible

6    agency theory is a question of fact and cannot be foreclosed by summary judgment, much less a

7    motion to dismiss.

8        **3.    KWRI Is Liable for Zeleznak's Actions Under An Ostensible Agency Theory**

9        California Civil Code § 2300 states, "An agency is ostensible when the principal

10   intentionally, or by want of ordinary care, causes a third person to believe another to be his agent

11   who is not really employed by him." Under the ostensible agency theory, a principal is bound by

12   the acts of his agent to those persons who have in good faith and without want of ordinary care

13   incurred a liability or parted with value on the faith thereof. (Civ. Code § 2334.) In applying Civ.

14   Code § 2334, courts have held that a principal may be liable to a third party for the acts of an

15   agent under an ostensible agency theory where (1) the third party has a reasonable belief in the

16   agent's authority; (2) this belief is generated by some act or neglect of the principal sought to be

17   charged; and (3) in relying on the agent's apparent authority, the third party is not guilty of

18   negligence. (<u>Associated Creditors' Agency v. Davis</u> (1975) 13 Cal.3d 374, 399; see Civ. Code §

19   2334.) As discussed in the following paragraphs, the instant case meets all three requirements,

20   thereby giving rise to KWRI's ostensible liability to Plaintiffs. Therefore, KWRI should not be

21   dismissed from the case.

22       **a.    Plaintiffs Reasonably Believed Zeleznak Was Acting Under The Keller**
23              **Williams Brand**

24       To establish ostensible agency, a plaintiff must first show that it believed the agent had

25   authority to act in the principal's name or with its approval. (<u>Associated Creditors' Agency</u>, 13

26   Cal.3d at 399.) Here, Plaintiffs believed that Keller Williams stood behind Zeleznak. (Cirrito

27   Decl., ¶ 2.) Further, this belief was reasonable given the numerous references to Keller Williams

28   on Zeleznak's real estate websites. (Love Decl., ¶¶ 2-5.)

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

For example, on the website for the Zelenak Group, which is a trade name of Zeleznak Property Management, the top bar states: "Ranked the #1 Keller Williams Group Nationwide in 2001, 2003, 2004, 2005, 2006, & 2007." (Love Decl., Ex. "A".) The bottom of the page has the Keller Williams logo prominently displayed. (Id.) The bio page for Don Zeleznak has the following statement: "Don currently directs the sales, marketing and development of residential and commercial real estate under a Keller Williams franchise in Scottsdale, Arizona…He is also an owner of the Keller Williams Southwest Region representing over 4,500 agents in 35 offices in Arizona and Nevada." (Love Decl., Ex. "B".) Zeleznak's profile page on Grace Communities' website contains the same language. (Love Decl., Ex. "C".) Zeleznak is prominently touted as Keller Williams agent, so Plaintiffs' belief that Zeleznak was acting under the Keller Williams brand was reasonable.

**b.    Plaintiffs' Belief Was Generated by The Acts of KWRI in Promoting Zeleznak**

A principal's liability for an agent's acts includes responsibility for misrepresentations or other fraudulent acts perpetrated by the agent on a third party. (Spahn v. Guild Industries Corp. (1979) 94 Cal. App. 3d 143, 155-156.) It is not necessary that a principal be a party to the fraud or authorize an agent to make misrepresentations. (Id.) Further, while the ostensible authority of an agent cannot be based solely upon the agent's conduct, the principal need not make explicit representations regarding the agent's authority to the third party before ostensible agency can be found under California law. (C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc. (9th Cir. 2000) 213 F.3d 474, 480.) Ostensible authority may be proven through evidence of the principal transacting business solely through the agent (Kelley v. R.F. Jones Co. (1969) 272 Cal.App.2d 113, 120), the principal knowing that the agent holds himself out as clothed with certain authority but remaining silent (American Cas. Co. v. Krieger (9th Cir. 1999) 181 F.3d 1113, 1121), or based on the principal's representations to the public in general. (Kaplan, 59 Cal.App.4th at 747; cited in C.A.R., 213 F.3d at 480; see also Preis v. American Indemnity Co. (1990) 220 Cal.App.3d 752, 761.)

Zeleznak advertised himself as an agent with authority to act under the Keller Williams

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  brand and name. (Love Decl., Ex. "A".) KWRI knowingly permitted Zeleznak to use the Keller

2  Williams brand and name, as evidenced by Zeleznak's use of the KWRI logo on Zeleznak's

3  company websites. (Id.) KWRI allowed Zeleznak to promote himself as a Keller Williams agent

4  – indeed, they allowed him to promote himself as one of the top selling agents under the KWRI

5  brand. (Id.) Whether KWRI took any actions to explicitly promote Zeleznak is a subject for later

6  discovery. In either case, these actions gave rise to the belief that Zeleznak was acting as a

7  KWRI agent. (Cirrito Decl., ¶ 2.)

8         **c.**    **Plaintiffs Reasonably Relied on Zeleznak's Claim of Authority**

9       Implicit in the third requirement is the necessity of reliance by the third party on the

10  ostensible agency. Ostensible agency is based on a theory of estoppel, requiring that the third

11  party justifiably and without negligence rely on the representation, express or by conduct, of the

12  principal and either change position or suffer injury because of the reliance. (People v. Surety

13  Ins. Co. (1982) 136 Cal. App. 3d 556, 562.) Here, Plaintiffs were not negligent in relying on

14  Zeleznak's authority and investing in the fraudulent investment scheme because of Keller

15  Williams' status as a respected brand in real estate. The damage to Plaintiffs arose out of the

16  actions taken in reliance on the repeated representations that Zeleznak was acting as a KWRI

17  agent.

18       Zeleznak traveled to California in June 2005 to make a presentation and encourage

19  potential investors to invest in another Solomon Capital scheme. (See Trachsel Decl., Ex. "A".)

20  He was introduced as a "key player" while working as a Keller Williams agent and spoke at

21  length about the benefits of the Arizona real estate market. (Id.) His duties as an agent for Keller

22  Williams involved acting as both the selling agent and buyer's broker for the Solomon Towers

23  project. (Id. at ¶ 3.) Zeleznak misrepresented that the project was being purchased for fair

24  market value, when in fact, the land had been valued at above-market rates in order to defraud

25  Plaintiffs and benefit Defendants. (Id.) KWRI's name and reputation facilitated the transactions

26  whereon Zeleznak received 20% commission rates, and the proceeds were used to continue to

27  perpetuate a fraud on Plaintiffs. (Id.; Cirrito Decl., ¶¶ 2-3.) It is presently unknown how much of

28  this commission was paid by Zeleznak, the agent, to KWRI, the principal.

1    Because KWRI caused the public to believe that they stood behind Zeleznak, and did

2  nothing to stop his use of their name, logo, or other descriptive indicia in advertising, KWRI is

3  liable to Plaintiffs under a theory of ostensible liability and must not be dismissed from this case.

4  **B.    There Is No Basis for Defendants' 12(b)(6) Motion to Counts 3, 4, 5, 6, 11, 16, and 18**

5      **1.    Plaintiffs' RICO Claims are Sufficiently Pled Against KWRI**

6      KWRI first argues that Plaintiffs' RICO claims are not properly pled against it and should

7  be dismissed. "Racketeering activity" under RICO is defined as any act "chargeable" or

8  "indictable" under a number of enumerated state and federal offenses ("predicate" offenses),

9  including extortion and mail fraud. (See 18 U.S.C. § 1961(1).) A "pattern" of racketeering

10  activity requires at least two predicate acts. (All World Prof'l Travel Servs. v. Am. Airlines, Inc.

11  (9th Cir. 2003) 2003 U.S. Dist. LEXIS 14436.) As KWRI points out in its motion, these acts

12  must occur repeatedly over a closed period, or over a period projecting into the future. (H.J., Inc.

13  v. Northwestern Bell Telephone Company (1987) 429 U.S. 229, 241-242.) With regard to RICO

14  claims, at the pleading stage, general factual allegations of injury resulting from the defendant's

15  conduct may suffice, "for on a motion to dismiss we presume that general allegations embrace

16  those specific facts that are necessary to support the claim." (Lujan v. Defenders of Wildlife

17  (1992) 504 U.S. 555, 561 (citations omitted).) Plaintiffs' allegations under 18 U.S.C. §§ 1961(a),

18  (c), and (d) are sufficient to give Defendants notice of the particular misconduct involved.

19      Here, Plaintiffs have alleged at least three distinct predicate acts in their complaint, along

20  with an implication of countless other acts during this period. First, Plaintiffs allege that

21  Zeleznak, acting under the Keller Williams name and with its sanction, sold the subject property

22  to the Buchholz Defendants for nearly five times the market price as part of a conspiracy.

23  (Declaration of Steve Trachsel in Opposition to Grace Defendants' Motion to Dismiss, ¶¶ 3-4.)

24  Next, Plaintiffs allege that buyer and seller split the proceeds from the sale, which came entirely

25  from investors' funds, including Plaintiffs and other California residents. (Id. at ¶ 4.) Finally,

26  Plaintiffs allege that Defendant Zeleznak took a commission of $1,000,000, nearly four times the

27  standard rate for commissions on a commercial real estate transaction. (Id. at ¶ 3.) It is implied

28  that for this conspiracy and enterprise to take place, Defendants must have corresponded

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    repeatedly by telephone and/or email, which triggers the continuity element KWRI raised in their

2    motion.  Moreover, there is evidence to support the Grace Defendants' complicity in at least ten

3    other transactions with the Buchholz Defendants.  (See Declaration of Jesshill E. Love in

4    Opposition to Grace Defendants' Motion to Dismiss, Ex. "A", Nos. 1-10.)  Based on the charged

5    offense, the separate predicate acts, and the continuity of these acts, Plaintiffs have sufficiently

6    alleged a RICO claim against Defendants, which extends to KWRI under the aforementioned

7    ostensible agency liability theory.

8         **2.    Plaintiffs' Securities Fraud Claims are Sufficiently Pled Against KWRI**

9         KWRI's motion next claims that Plaintiffs' claims under Section 10b and Rule 10-5 of the

10    1934 Securities Exchange Act and Plaintiffs' claim under Section 12(a) of the 1933 Securities

11    Act do not apply to them because they did not sell the securities to Plaintiffs.  To plead securities

12    fraud under Section 10b of the 1934 Act or Rule 10b-5, Plaintiff must allege: "(1) a misstatement

13    or omission (2) of material fact (3) made with scienter (4) on which [plaintiffs] relied (5) which

14    proximately caused [the plaintiff's] injury." (DSAM Global Value Fund v. Altris Software, Inc.

15    (9th Cir. 2002) 288 F.3d 385, 388.)

16         Courts also assess liability for securities fraud actions against aiders and abettors of the

17    fraud.  (United States v. O'Hagan (1998) 521 U.S. 642, 663.)  Three principal elements are

18    required to establish liability for aiding and abetting a violation of section 10(b) and Rule 10b-5:

19    (1) that a principal committed a primary violation; (2) that the aider and abettor provided

20    substantial assistance to the primary violator; and (3) that the aider and abettor had the necessary

21    "scienter"—i.e., that she rendered such assistance knowingly or recklessly. (S.E.C. v. Fehn

22    (1996) 97 F.3d 1276, 1288; Graham v. S.E.C. (D.C. Cir. 2000) 222 F.3d 994, 1000; Howard v.

23    S.E.C. (D.C. Cir. 2004) 376 F.3d 1136, 1151.)

24         Here, KWRI may be correct when they claim that they did not make any direct

25    misrepresentations in connection with the sale of securities to Plaintiffs.  This is yet to be

26    determined and will be the subject of discovery.  Presently, Plaintiffs have alleged only that the

27    Buchholz Defendants directly made misrepresentations to them in connection with the sale of

28    these securities, and that the Grace Defendants aided and abetted these misrepresentations.  In

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

PLFS' OPPOSITION TO KWRI'S MTN TO
DISMISS- CASE NO. C0802248RMW

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    addition, however, KWRI provided substantial assistance to the Buchholz Defendants in that their

2    well-established name offered Zeleznak a sense of legitimacy, which encouraged the investors by

3    implying that Keller Williams was backing up Zeleznak.  (Cirrito Decl., ¶¶ 2-3.)  Accordingly,

4    KWRI's name and involvement in the transaction provided a seal of authority to cover the

5    remaining Defendants' misrepresentations to Plaintiffs in connection with the sale of these

6    securities, and KWRI's motion to dismiss should be denied as to these claims.

7         **3.    Plaintiffs' Unfair Business Practice Claim is Sufficiently Pled Against KWRI**

8              KWRI further claim that Plaintiffs have failed to state a cause of action for a violation of

9    California Business and Professions Code section 17200 et seq. because KWRI did not have any

10   relationship with Plaintiffs.  "Section 17200 'is not confined to anticompetitive business

11   practices, but is also directed toward the public's right to protection from fraud, deceit, and

12   unlawful conduct. [Citation.]  Thus, California courts have consistently interpreted the language

13   of section 17200 broadly.' [Citation.]"  (South Bay Chevrolet v. General Motors Acceptance

14   Corp. (1999) 72 Cal.App.4th 861, 877-878.)  The statute prohibits "wrongful business conduct in

15   whatever context such activity might occur."  (Barquis v. Merchants Collection Assn. (1972) 7

16   Cal.3d 94, 111, fn. omitted.)  In sum, the universal test under the statute is whether the public is

17   likely to be deceived.  (Grant v. California Bench Co. (1946) 76 Cal.App.2d 706.)

18             Under the theory of ostensible agency described above, KWRI is liable for the acts of

19   Defendant Zeleznak and his franchise.  The question of whether KWRI profited from the

20   transaction or the full extent to which they profited is a subject for later discovery.  Certainly, the

21   public was deceived in this case, as Plaintiffs were given the impression that KWRI would back

22   up Zeleznak's dealings based on its prominent name and approval of him.  Accordingly,

23   Plaintiffs' unfair business practices claim against KWRI is sufficiently pled and should not be

24   dismissed.

25        **4.    Plaintiffs' Conspiracy Claim is Sufficiently Pled Against KWRI**

26             KWRI also argues that Plaintiffs' conspiracy claim is not properly alleged against it.  The

27   elements of an action for civil conspiracy are (1) formation and operation of the conspiracy, and

28   (2) damage to the plaintiff resulting from an act or acts done in furtherance of the common

design. (<u>Rusheen v. Cohen</u> (2006) 37 Cal.4th 1048, 1062; <u>Doctors' Co. v. Superior Court</u> (1989) 49 Cal.3d 39, 44.)  The existence of a civil conspiracy makes each participant in the wrongful act responsible as a joint tortfeasor for all damages resulting from the wrong, whether or not a participant was a direct actor and regardless of the degree of his activity.  (<u>Klistoff v. Superior Court</u> (2006) 157 Cal.App.4th 469, 479.)

Plaintiffs have not alleged that KWRI was a direct actor or that it was the primary actor in the conspiracy.  However, KWRI's allowance of Zeleznak to use its name and its prestige in order to attract, pacify, and encourage investors culminated in damage to the Plaintiffs in that their investment funds were dissipated by fraudulent means.  Accordingly, Plaintiffs have sufficiently pled the necessary elements of a conspiracy claim, and KWRI's motion to dismiss this claim should be denied.

### 5.    Plaintiffs' California Corporations Code Joint and Several Liability Claims are Sufficiently Pled Against KWRI

Finally, KWRI argues that Plaintiffs' claims under California Corporations Code §§ 25501, 25401, 25504, 25503, 25012(f), and 25110 are not properly pled because KWRI did not participate in the sale of securities to Plaintiffs, and that they do not have privity with the Plaintiffs.  As before, Plaintiffs have not alleged that KWRI directly sold them securities.

Sections 25504 and 25504.1 focus on joint and several liability of those who materially aid in the violation of the other listed sections.  Section 25504 states, in relevant part:

> Every … broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.  (Cal. Corp. Code § 25504.)

In the case of <u>Sherman v. Lloyd</u> (1986) 181 Cal.App.3d 693, which was an action for rescission and restitution based on allegations that the investment that plaintiff purchased was a security and was not qualified under California law, a partnership that failed to qualify the security plaintiff purchased from it was liable under Corp. Code, § 25503 (sale of securities in violation of specified statutes).  A second partnership that was formed at the same time and for

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   the same purpose and was thus appropriately regarded as part of the same entity was also liable

2   under that section.  Liability under Corp. Code, § 25504 (persons jointly and severally liable with

3   violator), applied to the general partner of the first partnership, to the general partner of the

4   second partnership, and to an individual who was a shareholder, officer, and director of the

5   corporation that was the general partner of the second partnership.

6       Similarly, in an action brought against a broker-dealer by investors, the complaint alleged

7   facts supporting the broker-dealer's liability for materially assisting an internet services company

8   in selling the securities at issue by means of untrue or misleading statements in the offering

9   documents within the ambit of section 25504.  (Apollo Capital Fund, LLC v. Roth Capital

10  Partners, LLC (2007) 158 Cal.App.4th 226, 249.)  Privity is not required under Sections 25504 or

11  25504.1, and would in fact be "incompatible with the language" of these sections.  (Forslund v.

12  Rein (2003) U.S. Dist. LEXIS 16832.)

13      Here, Plaintiffs' claims under the California Corporations Code have been sufficiently

14  pled against the Buchholz Defendants, who directly violated the Corporations Code, and the

15  Grace Defendants, who aided and abetted this conduct and are therefore jointly liable.  In

16  addition, KWRI provided substantial assistance to the Buchholz Defendants in that their well-

17  established name offered Zeleznak a sense of legitimacy, which encouraged the investors by

18  implying that Keller Williams was backing up Zeleznak. (Cirrito Decl., ¶¶ 2-3.)  KWRI's name

19  and involvement in the transaction provided a seal of authority to cover the remaining

20  Defendants' misrepresentations to Plaintiffs in connection with the sale of these securities.

21  KWRI is therefore liable to Plaintiffs for the acts of its franchisee under an agency or ostensible

22  agency theory.  Thus, Plaintiffs' complaint is sufficient to state a cause of action against KWRI

23  for violations of the California Corporations Code, and should not be dismissed.

**VI.**

**CONCLUSION**

26      Despite its claims to the contrary, KWRI is a proper party in this case based on the

27  ostensible agency of Defendant Zeleznak to act on its behalf in participating with the remaining

28  Defendants in the scheme to defraud Plaintiffs.  Further, each of the allegations involving KWRI

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    have been sufficiently pled to allow them to formulate a meaningful response, and should not be

2    dismissed.  Even if the Court determines that any of these claims do require additional

3    information, it should allow Plaintiffs leave to amend their complaint.  For the foregoing reasons,

4    this Court should deny KWRI's motion to dismiss.

5    Dated: August 15, 2008                              ROPERS, MAJESKI, KOHN & BENTLEY

6

7                                                        By: _____

8                                                        TODD A. ROBERTS
                                                         JESSHILL E. LOVE
9                                                        Attorneys for Plaintiffs
                                                         STEVE TRACHSEL, an individual; SUN
10                                                       CITY TOWERS, LLC, a California
                                                         corporation; THOMAS CIRRITO, an
11                                                       individual; ATOCHA LAND, LLC, a
                                                         Delaware limited liability company;
12                                                       MICHAEL CIRRITO, an individual; and
                                                         CIRRITO HOLDINGS, LLC, a Delaware
13                                                       limited liability company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5166643.1/BRL                           - 15 -                    PLFS' OPPOSITION TO KWRI'S MTN TO
                                                                     DISMISS- CASE NO. C0802248RMW

1  TODD A. ROBERTS (SBN 129722)
   JESSHILL E. LOVE (SBN 208348)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   1001 Marshall Street, Suite 300
3  Redwood City, CA 94063
   Telephone:  (650) 364-8200
4  Facsimile:  (650) 780-1701

5  Attorneys for Plaintiffs
   STEVE TRACHSEL, an individual, SUN CITY
6  TOWERS, LLC, a California limited liability
   company, THOMAS CIRRITO, an individual,
7  ATOCHA LAND, LLC, a Delaware limited
   liability company, MICHAEL CIRRITO, an
8  individual, and CIRRITO HOLDINGS, LLC, a
   Delaware limited liability company

9

10        UNITED STATES DISTRICT COURT - NORTHERN DISTRICT OF CALIFORNIA

11                              SAN JOSE DIVISION

12

13  STEVE TRACHSEL, an individual; SUN        CASE NO:  C08 02248RMW
    CITY TOWERS, LLC, a California limited
14  liability company; THOMAS CIRRITO, an     **DECLARATION OF THOMAS**
    individual; ATOCHA LAND, LLC, a           **CIRRITO IN SUPPORT OF**
15  Delaware limited liability company;       **PLAINTIFFS' OPPOSITION TO**
    MICHAEL CIRRITO, an individual; and       **KWRI'S MOTION TO DISMISS**
16  CIRRITO HOLDINGS, LLC, a Delaware
    limited liability company,                **Date:**   **September 5, 2008**
17                                            **Time:**   **9:00 a.m.**
                  Plaintiffs,                 **Ctrm:**   **6**
18                                            **Judge:**  **Hon. Ronald M. Whyte**
    v.
19
    RONALD BUCHHOLZ; CHARICE
20  FISCHER; RDB DEVELOPMENT, LLC, a
    Nevada limited liability company;
21  SOLOMON CAPITAL, INC., a Nevada
    corporation; JONATHON VENTO; GRACE
22  CAPITAL, LLC, dba GRACE
    COMMUNITIES, an Arizona limited liability
23  company; DONALD ZELEZNAK;
    Z-LOFTS, LLC, an Arizona limited liability
24  company; ZELEZNAK PROPERTY
    MANAGEMENT, LLC dba KELLER
25  WILLIAMS REALTY, an Arizona limited
    liability company; KELLER WILLIAMS
26  REALTY, INC., a Texas corporation; and
    DOES 1-50, inclusive,
27
                  Defendants.
28
    RC1/5167517.1/BRL                        - 1 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

I, THOMAS CIRRITO, declare:

1.    I am a Plaintiff in the above-titled action.  The facts set forth herein are personally known to me or are set forth on the basis of information and belief.  If called upon as a witness, I could and would competently testify to these facts.

2.    Based on Donald Zeleznak's use of the Keller Williams name on his advertising and in his communications, I believed that Keller Williams stood behind his realty company.

3.    Based in part on this belief, I was encouraged to invest in Solomon Capital as he recommended and with whom he had business dealings.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and if called as a witness I could and would testify thereto.

Executed on August 15, 2008, in _McLean_, _Virginia_.

_____
THOMAS CIRRITO

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    TODD A. ROBERTS (SBN 129722)
     JESSHILL E. LOVE (SBN 208348)
2    ROPERS, MAJESKI, KOHN & BENTLEY
     1001 Marshall Street, Suite 300
3    Redwood City, CA 94063
     Telephone:    (650) 364-8200
4    Facsimile:    (650) 780-1701

5    Attorneys for Plaintiffs
     STEVE TRACHSEL, an individual, SUN CITY
6    TOWERS, LLC, a California limited liability
     company, THOMAS CIRRITO, an individual,
7    ATOCHA LAND, LLC, a Delaware limited
     liability company, MICHAEL CIRRITO, an
8    individual, and CIRRITO HOLDINGS, LLC, a
     Delaware limited liability company

9

10        UNITED STATES DISTRICT COURT - NORTHERN DISTRICT OF CALIFORNIA

11                              SAN JOSE DIVISION

12
     STEVE TRACHSEL, an individual; SUN         CASE NO: C08 02248RMW
13   CITY TOWERS, LLC, a California limited
     liability company; THOMAS CIRRITO, an      DECLARATION OF JESSHILL E.
14   individual; ATOCHA LAND, LLC, a            LOVE IN SUPPORT OF PLAINTIFFS'
     Delaware limited liability company;        OPPOSITION TO KWRI'S MOTION
15   MICHAEL CIRRITO, an individual; and        TO DISMISS
     CIRRITO HOLDINGS, LLC, a Delaware
16   limited liability company,                 Date:    September 5, 2008
                                                Time:    9:00 a.m.
17                  Plaintiffs,                 Ctrm:    6
                                                Judge:   Hon. Ronald M. Whyte
18   v.

19   RONALD BUCHHOLZ; CHARICE
     FISCHER; RDB DEVELOPMENT, LLC, a
20   Nevada limited liability company;
     SOLOMON CAPITAL, INC., a Nevada
21   corporation; JONATHON VENTO; GRACE
     CAPITAL, LLC, dba GRACE
22   COMMUNITIES, an Arizona limited liability
     company; DONALD ZELEZNAK;
23   Z-LOFTS, LLC, an Arizona limited liability
     company; ZELEZNAK PROPERTY
24   MANAGEMENT, LLC dba KELLER
     WILLIAMS REALTY, an Arizona limited
25   liability company; KELLER WILLIAMS
     REALTY, INC., a Texas corporation; and
26   DOES 1-50, inclusive,

27                  Defendants.

28
     RCI/5167531.1/BRL                  - 1 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    I, JESSHILL E. LOVE, declare:

2        1.        I am a shareholder with the law firm of Ropers, Majeski, Kohn & Bentley,

3    attorneys of record for Plaintiffs STEVE TRACHSEL, SUN CITY TOWERS, LLC, THOMAS

4    CIRRITO, ATOCHA LAND, LLC, MICHAEL CIRRITO, and CIRRITO HOLDINGS, LLC.

5    The facts set forth herein are personally known to me or are set forth on the basis of information

6    and belief.  If called upon as a witness, I could and would competently testify to these facts.

7        2.        Attached hereto as Exhibit "A" is a true and correct copy of the Zeleznak Group's

8    webpage, located at http://www.thezeleznakgroup.com, prominently displaying mentions of

9    Keller Williams on both the top and the bottom.

10        3.        Attached hereto as Exhibit "B" is a true and correct copy of Donald Zeleznak's

11    biography, located at http://www.thezeleznakgroup.com/about.php, prominently mentioning his

12    involvement with and recognition from Keller Williams.

13        4.        Attached hereto as Exhibit "C" is a true and correct copy of Donald Zeleznak's

14    biography webpage from the Grace Communities website, located at

15    http://www.gracecommunities.com/about_donald.html, again prominently mentioning his

16    involvement with and recognition from Keller Williams.

17        5.        There are currently five lawsuits pending in the Northern District alone against the

18    Solomon Capital Defendants related to fraudulent investment schemes.  In addition to the instant

19    lawsuit, Yen, et al. v. Vento Family Trust, et al., Northern District Case No. 08-CV-03535 also

20    names both Keller Williams Realty, Inc. and Donald Zeleznak in their capacities as principal and

21    agent.

22        I declare under penalty of perjury that the foregoing is true and correct to the best of my

23    knowledge, and if called as a witness I could and would testify thereto.

24        Executed on August 15, 2008, in Redwood City, California.

25

26

27    JESSHILL E. LOVE

28

RCI/5167531.1/BRL                                    - 2 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# Exhibit A

http://www.thezeleznakgroup.com/

© Copyright 2007 The Zeleznak Group. All rights reserved.



For Carefree, AZ Homes for Sale, Cavecreek, AZ Real Estate, and Scottsdale, AZ Properties, go to the expert: The Zeleznak G...    Page 2 of 2

Design by Agent Image - Real Estate Web Design. LOGIN



# Exhibit B

http://www.thezeleznakgroup.com/about.php

Phoenix, AZ Homes, Tempe, AZ Realtor, Chandler, AZ Homes for Sale

ABOUT US    PROPERTY SEARCH    BUYERS / SELLERS    DEVELOPER SERVICES    INVESTMENTS    CONTACT US

## About Us

Calculators

Real Estate News

The Zeleznak Group
9500 E. Ironwood Square Drive
Suite #201
Scottsdale, AZ 85258
(480) 860-5431
michaelwilliamson@cox.net

NEED ASSISTANCE?

Find My Dream Home!

What is My Home Worth?

Help Me Relocate!



### Don Zeleznak

Donald has been married to his wife, Shirl, for 37 years and they have two children. Their son, Ryan, works with Don running their real estate sales division. Their daughter, Kristine, is a licensed marriage and family therapist.

Don graduated from Morningside College in Sioux City, Iowa, in 1969. He received his master's degree in business from Winona State University in 1971. He has been recognized on a local, state and national level for his high sales volume and closed transactions in the residential real estate industry.

Zeleznak brings over thirty years of commercial and residential real estate sales and development experience to the Southwest--Arizona, being his central focus.

Don currently directs the sales, marketing and development of residential and commercial real estate under a Keller Williams franchise in Scottsdale, Arizona. He has sold more than 1,400 homes using creative financing. Over the last two years Don has closed over $500,000,000 of residential property. Don was ranked 17th Top Realtor in the Nation by Realtor Magazine in 2001, the last time the magazine recognized individual production. He is also an owner of the Keller Williams Southwest Region representing over 4,500 agents

Phoenix, AZ Homes, Tempe, AZ Realtor, Chandler, AZ Homes for Sale

in 35 offices in Arizona and Nevada.

Don extends widely into the commercial arena. He has developed and completed ten office condo projects with over 1,500,000 square feet in the past 4 years, and currently has ten additional projects under development in metropolitan Chicago.

He and his partner won three awards in 2002 from the Arizona Chapter of the National Association of Industrial and Office Properties (NAIOP) including Developer of the year, Low-Rise Office Building of the Year and Impact Developer of the Year. Their office condo project in Las Vegas was named NAIOP office building of the year for 2003.

Don assembled and planned a 1,200 acre 3,500-unit master planned golf community in Kingman, Arizona. He currently is building a 34 story residential tower (44Monroe) in downtown Phoenix with over 200 residences. Also, under construction is an 82 resident project (X Lofts), which is scheduled for completion in early 2008.

He is on the Board of Directors of Morningside College, Sioux City, Iowa. Don and Shirl are strongly involved in church and community. Every month Don and Shirl seek out a family or individual that needs help in some way (food, clothing, rent) and help them with whatever need it might be.

Don has a passion for real estate, but in his spare time he enjoys golf, tennis, and spending time at their home on Lake Tahoe in Crystal Bay, Nevada.



**Ryan Zeleznak**

Ryan Zeleznak attended Northern Arizona University, Flagstaff, Arizona where he majored in Criminal Justice and was on the Board for the Sigma Alpha Epsilon Fraternity.

Ryan obtained his Arizona Real Estate License in 1998 and immediately began a career with Keller Williams. As principal/owner of The Zeleznak

Phoenix, AZ Homes, Tempe, AZ Realtor, Chandler, AZ Homes for Sale

http://www.thezeleznakgroup.com/about.php

© Copyright 2007 The Zeleznak Group. All rights reserved.

Group with Keller Williams, he specializes in residential sales and has led an eighteen person team to national recognition. Sales volume was $77,000,000 in 2001; $82,000,000 in 2002; $120,000,000 in 2003; $185,000,000 in 2004 and $360,000,000 in 2005. Keller Williams has over 78,000 agents nationally. The Zeleznak Group ranked #1 in the nation with Keller Williams in 2001, 2003, 2004, 2005 and 2006.

Zeleznak has been ranked #1 by the Phoenix "The Business Journal" for 2001, 2002, 2003, 2004 and 2005. Ryan recently was recognized by Montclair's "Who's Who in Real Estate" as an honored lifetime member.

As owner he is currently overseeing the Sales and Marketing for The Zeleznak Group. Current projects involve the sales and marketing of eight residential subdivisions for multiple developers/builders in the Phoenix metropolitan area.

He has also been instrumental in raising money for development projects for Grace Capital. Ryan was responsible for raising $25,000,000 in equity for office condo and residential projects (2001 – 2006).

In 2002, Ryan co-founded IPN (Integrated Professional Networks), a Qwest master agent telecommunications company. He is also a partner in several office condos in Arizona, Nevada and Chicago. In 2007, Ryan founded Homehelper Consultants, a consulting firm in Scottsdale, Arizona.

In 2004 he became a partner of Grace Capital and is involved in many aspects including residential land acquisition on behalf of Grace Capital.

Ryan Zeleznak was recently accepted for inclusion to Montclair's "Who's Who in Real Estate" as an honored lifetime member and was selected as an honored member of The Heritage of Registry's Who's Who for 2007-2008.

Ryan has resided in Arizona for the past 22 years and has actively supported various charities throughout the Valley.

Design by Agent Image - Real Estate Web Site Design

Page 3 of 3

8/14/2008

# Exhibit C

http://www.gracecommunities.com/about_donald.html



RESIDENTIAL | COMMERCIAL | ABOUT US | CONTACT | PRESS

LOGIN

GRACECOMMUNITIES

Grace Communities



COMPANY PROFILE
PORTFOLIO
▶ DONALD ZELEZNAK
JONATHON VENTO
RYAN ZELEZNAK

## DONALD ZELEZNAK

Donald has been married to his wife Shirl for 35 years and they have two children. Their son Ryan works with Don, running their new home sales division. Their daughter Kristine is a licensed psychologist.

Don graduated from Morningside College in Sioux City, Iowa in 1969. He received his master's degree in business from Winona State University in 1971. He has been recognized

http://www.gracecommunities.com/about_donald.html

on a local, state and national level for his high sales volume and closed transactions in the residential real estate industry.

Don brings over thirty years of commercial and residential real estate sales and development experience to the Southwest-Arizona, being his central focus.

Don currently directs the sales, marketing and development of residential and commercial real estate under a Keller Williams franchise in Scottsdale, Arizona. He has sold more than 1,000 homes using creative financing. Over the last two years Don has closed over $300,000,000 of residential property. He was ranked 17th Top Realtor in the Nation by Realtor Magazine. He is also an owner of the Keller Williams Southwest Region representing over 3,000 agents in 30 offices in Arizona, Nevada and Utah.

Don extends widely into the commercial arena. He has developed and completed ten office condo projects with over 1,500,000 square feet in the past 4 years, and currently has fifteen additional projects under development in metropolitan Phoenix, Las Vegas and Chicago.

Don and his partner won three awards in 2002 from the Arizona Chapter of the National Association of Industrial and Office Properties (NAIOP) including Developer of the year, Low-Rise Office Building of the Year and Impact Developer of the Year. Their most recent office condo project in Las Vegas was named NAIOP office building of the year for 2003.

He assembled and planned a 1,200 acre 2,500-unit master planned golf community in Kingman, Arizona. He currently is developing 3 tower residential projects in downtown with over 320 residences, 2 residential projects in downtown Scottsdale representing over $190,000,000 of condos. His suburban division represents an additional 525 homes/condos.

He was recently named to the Board of Directors of Morningside College. Don and Shirl are strongly involved in church and community. Don is on his church board and gives to charities such as Barrows Neurological Institute, Andre House, Habitat for Humanity, and others. Every month Don and Shirl seek out a family or individual that needs help in some way (food, clothing, rent) and help them with whatever need it might be.

Grace Communities

Page 4 of 4

**Don has a passion for real estate but in his spare time he enjoys golf, tennis, and spending time with family.**

- **Jonathon Vento**
- **Ryan Zeleznak**

Copyright © Grace Communities

Disclaimer