**E-FILED on** 01/09/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVE TRACHSEL et al., <br><br> Plaintiffs, <br><br> v. <br><br> RONALD BUCHHOLZ et al., <br><br> Defendants. | No. C-08-02248 RMW <br><br> ORDER GRANTING BUCHHOLZ DEFENDANTS' MOTION TO DISMISS COUNTS 1, 2 AND 3 <br><br> **[Re Docket Nos. 103, 112, 114]** |

The operative complaint, the First Amended Complaint, has been filed by individuals Steve Trachsel, Thomas Cirrito, and Michael Cirrito and their three fictitious companies Sun City Towers, LLC, Atocha Land, LLC, and Cirrito Holdings, LLC (collectively "plaintiffs") against numerous defendants involving the purchase of a real estate investment. Defendants Ronald Buchholz, Charice Fisher, RDB Development, LLC and Solomon Capital, Inc. ("the Buchholz defendants") move to dismiss counts 1, 2 and 3 of the complaint, on the grounds that they fail to state a claim for relief under Fed. R. Civ. P. 12(b)(6) for three violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), and (d). For the reasons set forth below, the court grants defendants' motion.

# I. BACKGROUND

Plaintiffs are investors in a proposed high-rise condominium development in Phoenix, Arizona, known as Solomon Towers. The investment opportunity was offered to plaintiffs in early 2005 by defendants Ronald Buchholz and Charice Fisher as principals of defendant Solomon Capital, Inc. FAC ¶¶ 34–35, 45.

As part of the Solomon Towers project, the Buchholz defendants planned to purchase land using investors' funds and develop the land into upscale condominiums, with investors eventually receiving a return on the sale of the condominiums. In March 2005, plaintiffs and other investors executed an Operating Agreement with Solomon Towers, LLC. The Operating Agreement includes 18 initial equity members who contributed a total of $4,169,400.00. *Id.* ¶ 48. Together with loans set forth in the Operating Agreement, the total investment in the Solomon Towers project is allegedly $5,100,000.00. *Id.*

In July 2002, Soho Lofts, LLC, a company owned by defendant Donald Zeleznak, purchased property at 625–643 N. 2nd Avenue, Phoenix, Arizona ("the Property") for $14.00 per square foot. *Id.* ¶ 56. Soho Lofts changed its name to Z-Loft in August 2004. *Id.* ¶ 57. In April 2005, defendants Z-Loft and Grace Capital sold the Property to Solomon Towers at $178.75 per square foot. *Id.* ¶ 58. The Buchholz defendants paid for the Property using the investment funds contributed by investors. Plaintiffs allege Zeleznak received a commission of $1,000,000 for the sale and that Z-Loft, Zeleznak Property Management, Vento and Grace Capital all profited on the transaction to the detriment of investors. *Id.* ¶ 61. According to plaintiffs, the actual market rate for comparable land was $33.19 per square foot and Zeleznak's commission of approximately 20% of the sale price was well above the prevailing commission rate of 5–6%. *Id.* ¶¶ 58, 61.

To date the Solomon Towers project has not been built and plaintiffs argue the project is in severe financial distress and overleveraged. *Id.* ¶ 77. Plaintiffs allege that defendants have not applied the investment funds toward the development of the property but have divided the investment funds among themselves and left the investors holding the overleveraged property. They refer to this as a "pump and dump" scheme. Plaintiffs claim to have learned of defendants'

1 fraudulent scheme after July 2007, when authorities raided Solomon Capital's San Jose offices due
2 to allegations of fraudulent investment schemes. *Id.* ¶ 82–84.

3       On April 30, 2008, plaintiffs filed a complaint against the numerous individuals and
4 companies involved in Solomon Capital, Inc. and the transactions surrounding the Solomon Towers
5 project. Plaintiffs asserted eighteen causes of action including: three separate violations of the
6 Racketeer Influenced and Corrupt Organizations Act, two violations of federal securities law, breach
7 of fiduciary duty, breach of contract, negligent misrepresentation, intentional misrepresentation,
8 conspiracy, fraud, constructive fraud, alter ego liability, violation of Cal. Bus & Prof. Code § 17200,
9 and four claims seeking damages and rescission of sale under California securities laws, specifically
10 Cal. Corp. Code §§ 25102, 25110, 25501, 25503, 25401, and 25504.

11       On May 28, 2008, defendants Jonathon Vento, Grace Capital, LLC, Grace Capital dba Grace
12 Communities, Donald Zeleznak, Z-Loft, LLC, and Zeleznak Property Management, LLC dba Keller
13 Williams Realty ("the Grace defendants") filed a motion to dismiss for lack of personal jurisdiction,
14 improper venue and for failure to state claims against them under Fed. R. Civ. P. 12(b)(6).
15 Defendant Keller Williams Realty Inc. moved separately to dismiss for failure to state a claim. The
16 court granted the defendants' motions and permitted plaintiffs to amend their complaint to correct
17 the deficiencies in the initial pleading. On October 6, 2008, plaintiffs filed their First Amended
18 Complaint ("FAC"). The FAC eliminates the claims and damages for violation of federal securities
19 law and adds claims for breach of implied covenant of good faith and fair dealing, fraudulent
20 concealment, civil aiding and abetting, conversion, unjust enrichment and constructive trust, and
21 aidor/abettor joint and several liability for fraudulent securities transaction pursuant to California
22 Corp. Code § 25403. On November 4, 2008, the Buchholz defendants filed the instant motion to
23 dismiss counts 1, 2 and 3 of the FAC.

24         **II. ANALYSIS**

25 **A.**    **Standard for Motion to Dismiss**

26       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A
27 Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory" or "the
28 absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

ORDER GRANTING BUCHHOLZ DEFENDANTS' MOTION TO DISMISS—No. 5:08-cv-02248 RMW
ANK        3

*Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

Plaintiffs argue that the court cannot even reach substantive issues of law because defendants have already waived their Rule 12(b)(6) claims by failing to timely file a responsive pleading to the amended complaint and by failing to raise them in connection with the original complaint. Both of plaintiffs' arguments, however, are incorrect because the failure to state a claim defense can be brought after the close of pleadings under Rule 12(c). Fed. R. Civ. P. 12(h)(2). "Failure to state a claim is a nonwaivable defect and can be raised at any time." SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, 9TH CIRCUIT EDITION, § 9:199 (The Rutter Group 2008), citing Fed. R. Civ. P. 12(h)(2). *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988). Accordingly, the court will consider defendants' arguments.

## B. RICO Violations

Plaintiffs must satisfy the pleading requirements of RICO for each of their three claims. "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Defendants contend that plaintiffs have failed to state a claim for relief under RICO for three reasons: (1) a civil RICO claim cannot be based on acts that sound in securities fraud; (2) plaintiffs have not shown any "pattern" of racketeering activity; and (3) the mail and wire fraud allegations are not pled with the required particularity. Plaintiffs only respond in their written reply to the second and third arguments in their opposition.

### 1. Securities Fraud as Predicate Act

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), which amended the RICO statute to eliminate securities fraud as a predicate act upon which a RICO claim could be based. Private Securities Litigation Reform Act § 107, Pub. L. No. 104-67, 109 Stat. 737 (1995). Since the amendment, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18

**United States District Court** / For the Northern District of California

U.S.C. § 1964(c). "[T]he amendment was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area School Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-349, at 47 (1995)). This rule applies even if the RICO plaintiff herself cannot have asserted the securities fraud claim. *Howard v. America Online Inc.*, 208 F.3d 741, 749–50 (9th Cir. 2000), *cert. denied*, 531 U.S. 828, 121 (2000). Therefore, to the extent plaintiffs' RICO claim predicate acts would be actionable as securities fraud, those claims must be dismissed.

The Buchholz defendants first move to dismiss plaintiffs' RICO claims because they sound in securities fraud. The Buchholz defendants claim that their sale to plaintiffs of the interest in Solomon Tower, LLC constituted a sale of a security. FAC ¶ 51. As defendants point out, the FAC states in multiple places that the Buchholz defendants sold the plaintiffs "securities." *Id.* ¶¶ 2, 5, 16–22, 50–55, 319–327. And plaintiffs themselves claim that the investments qualify as securities under California Corporate Code § 25019. *Id.* ¶ 50. Accordingly, plaintiffs complaint and FAC clearly establish that plaintiffs bought membership interests in a limited liability company, which are considered securities under California law. Cal. Corp. Code. § 25019.

Plaintiffs allege that defendants violated RICO when they "conducted or participated in the affairs of the Enterprise through a pattern of racketeering activity, by fraudulently or negligently disclosing or failing to disclose material facts to investors and engaging in fraudulent land sales and transfers that involve use of investor funds for purchase of land at highly inflated and above-market prices" and that "plaintiffs [sic] received their own ill-gotten gains via the use of the U.S. mail and wires from the sale of the land . . . ." FAC ¶ 90.

Plaintiffs' original complaint shows that defendants' acts would be actionable as securities fraud. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, are directed at fraud "in connection with the purchase or sale" of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975) (emphasis added). All of the conduct alleged as predicate acts, such as misleading statements and omissions and kick-

backs during the plaintiffs' purchase of interest in Solomon Tower, LLC, would have been actionable as a securities fraud claim. This is further evidenced by plaintiffs' inclusion of securities fraud claims in their original complaint. In the complaint, plaintiffs brought claims under Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934 (17 C.F.R. § 240.10b-5) and Section 12(a) of the Securities Act (15 U.S.C. § 77l(a)). Compl. ¶ 1. Plaintiffs securities fraud claims (Compl. ¶¶ 117–125) incorporate by reference each allegation in paragraphs 1 through 116 of the complaint, relying largely on and re-alleging the same facts as the RICO claims (Compl. ¶¶ 84–116). In other words, the allegations on which the RICO claims are based are identical to those on which the securities fraud claim is based. Removing the federal securities causes of action does not change the nature of the underlying predicate acts.

Furthermore, plaintiffs cannot avoid the PSLRA's bar by alleging mail and wire fraud as predicate acts. The mail and wire fraud aspect of the charge alleges they used interstate mails and wires to communicate and receive the alleged kick-backs. However, the mail and wire fraud allegations are based on precisely the same series of misrepresentations and omissions that plaintiffs describe in their securities fraud claims. The alleged mail and wire transactions were undertaken "in connection with" the securities sale. That plaintiff describes them as mail or wire fraud in the complaint is irrelevant. *See Bald Eagle*, 189 F.3d at 330; *Javitch v. First Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 943 (N.D.Ohio 2003) (plaintiff "cannot avoid the RICO Amendment's bar by pleading mail fraud [and] wire fraud . . . as predicate offences . . . if the conduct giving rise to those predicate offenses amounts to securities fraud" (internal quotation marks omitted)).

At oral argument, plaintiffs' counsel presented two cases in support of the proposition that a RICO violation could be made out on the basis of real-estate fraud predicate acts. *See Southstar Funding v. Sprouse,* 2007 U.S.Dist. LEXIS 22585 (W.D.N.C. 2007); *Friedler v. Cole*, 2005 U.S.Dist. LEXIS 2994 (D.Md. 2005). *Southstar* and *Friedler* are not applicable because they deal with the sale of real property and not conduct that would have been actionable as securities fraud, whereas this case concerns the sale of securities.

Plaintiffs' attempt to distance their RICO claims from their securities fraud claims by removing their securities fraud allegations from the FAC is unavailing. Plaintiffs have apparently

chosen the RICO theory because it grants them the largest award. The PSLRA is clear that claims sounding in securities fraud cannot be predicate acts under RICO. Here, it appears plaintiffs cannot state a claim for RICO. The court accordingly grants Buchholz defendants' motion to dismiss as to claims 1, 2 and 3.[1]

### III.  ORDER

For the foregoing reasons, the court grants the Buchholz defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

DATED:      01/06/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[1] Because the court dismisses plaintiffs' RICO claims based on the PSLRA bar, it will not reach defendants' additional arguments.

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Jesshill E. Love          jlove@ropers.com
Todd Andrew Roberts       troberts@ropers.com

**Counsel for Defendants:**

Michael George Descalso   mgd@greenechauvel.com
Andrew A. August          aaugust@pinnaclelawgroup.com
Meagen Eileen Leary       mleary@gordonrees.com
Kevin Francis Rooney      krooney@pinnaclelawgroup.com
William W. Schofield      wschofield@pinnaclelawgroup.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      01/09/09                              JAS
                                              **Chambers of Judge Whyte**

ORDER GRANTING BUCHHOLZ DEFENDANTS' MOTION TO DISMISS—No. 5:08-cv-02248 RMW
ANK                                       8